```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X
Vadim Mikhlyn, Inga Mikhlyn, and
ABC All Consulting, Inc.

                         Plaintiffs

         -against-                          __ CV._____( )

Ana Bove, Polina Dolginov                   COMPLAINT
Anna Bove Company, LLC, Anna
Bove Collections, Inc.
and Anna Bove Embroidery Supplies, Inc.

                         Defendants.
-----------------------------------------X
```

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 18 2008 ★
BROOKLYN OFFICE

08 3367

SIFTON, J

REYES, M.J

Plaintiffs Vadim Mikhlyn, Inga Mikhlyn, and ABC All Consulting, Inc., by their attorneys, as and for their Complaint against Defendants Ana Bove, Polina Dolginov, Anna Bove Company, LLC, Anna Bove Collections, Inc., and Anna Bove Embroidery Supplies, Inc. , allege as follows:

**JURISDICTION AND VENUE**

1. This is a complaint for Trademark Infringement, Unfair Competition and False Description arising under § 43 of the Lanham Act, state law unfair competition, conversion, libel, and tortiuous interference with contract and prospective economic advantage.

2. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. §

1121. This Court has related claim jurisdiction over the state law claim pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

3.  This Court has personal jurisdiction over defendants Ana Bove because she is a resident of this district.

4.  This Court has personal jurisdiction over defendants Anna Bove Company, LLC, AnnaBove Collections, Inc., and Anna Bove Embroidery Supplies, Inc. because each is a resident of New York State and, upon information and belief, each is operated by defendant Ana Bove in this district.

5.  This Court has personal jurisdiction over defendant Polina Dolginov pursuant to C.P.L.R. § 302(a).

6.  Venue is proper in this district under 28 U.S.C. §1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district, a substantial part of the property that is the subject of the action is situated in this district

**THE PARTIES**

7.  Plaintiff Vadim Mikhlyn is an individual who resides in Brooklyn, New York.

8.  Plaintiff Inga Mikhlyn is an individual who resides in Brooklyn, New York.

9.  Plaintiff ABC All Consulting, Inc. is a corporation organized and existing under the laws of the State of New York.

Plaintiffs Vadim and Inga Mikhlyn are ABC All Consulting, Inc.'s only officers and shareholders.

10. Upon information and belief, defendant Ana Bove resides in Brooklyn, New York.

11. Upon information and belief, defendant Polina Dolginov resides in Israel.

12. Upon information and belief, defendant Anna Above Company, LLC is a limited liability company organized and existing under the laws of the State of New York.

13. Upon information and belief, defendant Anna Bove Collections, Inc. is a corporation organized and existing under the laws of the State of New York.

14. Upon information and belief, defendant Anna Bove Embroidery Supplies, Inc. is a corporation organized and existing under the laws of the State of New York.

FACTUAL BACKGROUND

15. In 2004, Vadim, Inga, Ana and Polina agreed to become partners in a web-based business selling embroidery designs.

16. The business operated through two web sites, ABC-Cross-Stitch-Patterns.com and ABC-Embroidery-Designs.com (the "ABC Domain Names"), which were set up by Ana and Polina in the summer of 2002 and registered to Polina.

17. The partners agreed that the business would be centered in and managed from the United States.

18. Plaintiffs Inga and Vadim incorporated ABC All Consulting, Inc. ("ABC Inc.") in New York State to be used as the business vehicle for the new partnership. Inga and Vadim each received 100 shares of ABC Inc. No other shares were issued or authorized. Vadim is the sole director and President of ABC Inc. and Inga is Secretary.

19. By October of 2005, almost all of the income of the partnership flowed through ABC Inc.'s bank account, for which only Inga and Vadim had signing authority.

20. Credit card payments from customers were forwarded to the ABC Inc. bank account.

21. No one partner acted like, or was, the employer or boss of any other partner with regard to any aspect of the business. Each partner had a principal area of responsibility and worked cooperatively with the other partners.

22. The partnership succeeded and grew dramatically, and established a very favorable reputation and loyal following.

23. The partnership spent over $41,000 in the last four years on advertising the ABC Domain Names, and sales tripled between 2004 and 2008. The business has more than 250,000 registered users in its database.

24. Upon information and belief, most of these registered users have become accustomed to accessing the business through the ABC Domain Names. In recommending the business to others, users also use the ABC Domain Names (for example, on embroidery forums). Based on a search of the U.S. Patent and Trademark Office database, there are no registrations or applications for trademarks or service marks with the words "abc-embroidery" or "abc-cross-stitch." The ABC Domain Names have acquired secondary meaning in the minds of the consuming public and have become associated with the business.

25. In June 2004, the partnership expanded the business to include the sale of embroidery supplies in addition to designs.

26. In connection with this new line of business, the partnership filed for an obtained the trademark "ThreaDelight," registering all four partners as joint owners. Embroidery supplies now represent about 70% of the partnership's gross income.

27. "ABC" was used for the ABC Domain Names because common series like "ABC" (or "AAA" or "123") are often employed by internet users in search engine queries and, therefore, the use of such a common series was likely to steer potential customers to the sites.

28. As the business obtained a higher profile and greater recognition, the partners wanted to come up with another, more

distinctive trade name but at the same time, one that would maintain an association and connection with the established and popular "ABC" name.

29. The partners quickly realized that "ABC" was Defendant Ana's initials. The partners decided to use the name "Anna Bove Collections," adding an "n" to "Anna" because they thought it was the more common spelling in their market and therefore more appealing and "normal" sounding to customers. The partnership then registered two new domain names, AnnaBoveCollections.com and AnnaBoveCollection.com, and began to advertise and promote the business and its products under the name "Anna Bove Collections." Vadim also registered "Anna Bove Collections" as a d/b/a name for the corporation, ABC Inc.

30. Although, going forward, the partnership used the name "Anna Bove Collections" for the business and its products, the partnership kept the two "ABC" web sites open because of their popularity and, at least until recent actions by defendants, they were the largest source of partnership business.

31. In June of 2007, Polina decided to leave the partnership and start a new business with her mother, unrelated to embroidery. The partners agreed on a buyout amount for Polina, $30,000, and a payment schedule of $1,000 per month.

32. As part of the deal, Polina agreed to transfer the ABC Domain Names registrations to Vadim.

33. Ana's parents, who are citizens of Israel, lived in Vadim and Inga's house from 2004 to May of 2008. Ana moved in with Vadim and Inga in March 2006 and, except for occasional trips abroad, lived there until April 2008 of this year.

34. Beginning in 2006, Inga, Vadim and their children began to notice that Ana was using illegal drugs. She was asked to stop but she did not.

35. Ana's physical appearance and behavior changed dramatically as a result, upon information and belief, of her drug use. Ana lost a lot of weight and became very thin. She was also prone to periods of rage and paranoia that frightened everyone in the house. In addition, she became less productive and involved in the business.

36. In February of 2008, Ana was warned that if she did not stop her drug use, she would have to leave the house.

37. In late March of 2008, Ana abruptly announced that she was quitting the partnership to start her own line of embroidery monogramming, which would not be competitive with the partnership business. As compensation for her share of the partnership, Ana demanded 50% of all gross design sales in perpetuity.

38. Ana's demand was exorbitant and unrealistic, although Vadim and Inga never disputed that Ana was entitled to compensation for her share of the business.

39. Vadim and Inga suggested to Ana that they go to a third party to mediate the terms of Ana's departure but she refused.

40. On March 29, 2008, Vadim received an email from Polina in which she reported learning from Ana that Ana left the company. In the same email, Polina demanded that Vadim and Inga speed up her buyout payments.

41. On the night of March 31, Vadim discovered that Ana changed the password on the company's eBay account. Vadim had to call customer service to restore it. Ana's actions disrupted service to customers for a whole day.

42. Ana also registered a new domain name, Anabove.com, on March 31.

43. On April 1, the Mikhlyns asked Ana to move out of their house.

44. In May, Ana registered another domain name, AnnaBoveEmbroidery.com, and also created two New York business entities, defendants Anna Above Company, LLC and Anna Bove Collections, Inc. The later is exactly the same as the "d/b/a" name the partnership had registered with the state in June 2005. In July, Ana created one more New York corporation, Anna Bove Embroidery Supplies, Inc.

45. On May 14, the Mikhlyns received a "cease and desist" letter from an attorney, Alexey Bakman, Esq., on behalf of Ana

demanding, basically, the cessation of all activities of the business, payment to Ana of "at least one million dollars ($1,000,000)," and an accounting of ABC Inc.

46. On June 27, the Mikhlyns received notice that Ana commenced arbitration against "Domains By Proxy, Inc.," seeking control of the ABC Domain Names. Domains By Proxy, Inc. is essentially a web site privacy service that works by substituting itself as the registered domain name owner for its client, the true owner, to protect the client from spammers, hackers and other intruders.

47. Upon receipt of the arbitration petition, Domains By Proxy, Inc. cancelled Vadim's privacy agreement allowing Ana to discover, apparently, that Polina remained as the registered owner of the two ABC Domain Names. It seems that after taking all other steps necessary to assume control of the ABC domains pursuant to Polina's buy-out agreement, Vadim forgot to substitute himself as the registered owner. Armed with the knowledge of Polina's status as registered owner of the ABC Domain NAmes, Ana quickly filed an amended arbitration petition with the NAF naming Polina as the Respondent.

48. The second arbitration petition was quickly withdrawn by Ana but, in the interim, Ana must have struck a deal with Polina because Ana has obtained control of the ABC Domain Names with Polina's cooperation. Ana or Polina promptly changed the e-

mail address of record from Vadim's to Polina's and both of the ABC Domain Names were transferred to Polina's account with the domain registrar and web hosting company, GoDaddy.com.

49. Ana, with Polina's cooperation, has taken over the ABC Domain Names and is using her power to defame the Mikhlyns, and to destroy the good will and reputation of the ABC sites and the partners' business by "re-directing" all would-be visitors to the ABC sites to Ana's new web sites.

50. Ana's new website describes the Mikhlyns as her:

> ex staff who attempted to grasp the sites and business, and it has been under their full control for several months. If any other web sites will appear, offering my designs (e.g. designs like those ones listed on this site) WITHOUT carrying my name AND being listed as an official dealer on this site, it would mean that they don't have any rights to distribute those designs. At this moment the only other company that has a license for selling designs that were created by Anna Bove is The Sewphisticated Stitcher, Inc

51. In an email Ana circulated to ABC's customers, Ana alleges that we attempted to "take illegal control of [her] websites and businesses" and are distributing her designs "illegally." Ana's patently false claims that she owns everything including "ABC All Consulting, Inc." have caused significant confusion among ABC customers.

52. As reflected in guestbook entries on her new web sites, Ana has persuaded many ABC customers that the Mikhlyns are "bad guys" who tried to steal Ana's business.

53. On July 24 wrote a letter to Vadim, and sent a copy to Vadim's stepdaughter, which included statements about the Mikhlyn's "dirty scam" and suggesting that Vadim "hang" himself.

FIRST CLAIM TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT

54. Plaintiffs repeat and hereby incorporate herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 53.

55. Defendants' use of the name "Anna Bove Collection" is an infringement of plaintiffs' trademark "Anna Bove Collection" and is likely to cause confusion, mistake and deception of the public as to the affiliation, connection and association of Ana's new sites with ABC Domain Names, the ABC sites and the business, causing irreparable harm to plaintiffs for which there is no adequate remedy at law. By reason of the foregoing acts, defendants are liable to plaintiffs for trademark infringement under 15 U.S.C. § 1125(a).

56. Defendants' use of the ABC Domain Names to redirect customers who are trying to access the ABC sites to defendants' own websites is likely to cause confusion, mistake and deception of the public as to the affiliation, connection and association of Ana's new sites with the ABC Domain Names, ABC sites and the business, causing irreparable harm to plaintiffs for which there is no adequate remedy at law. By reason of the foregoing acts,

11

defendants are liable to plaintiffs for trademark infringement under 15 U.S.C. § 1125(a).

SECOND CLAIM FOR UNFAIR COMPETITION UNDER THE LANHAM ACT

57. Plaintiffs repeat and hereby incorporate reference the allegations of paragraphs 1 through 56.

58. Defendants' (a) use of the ABC Domain Names to redirect customers to their websites; and (b) representations about plaintiffs on defendants' websites constitutes Unfair Competition pursuant to 15 U.S.C. § 1125(a). Defendants' actions and misstatements are likely to cause confusion, mistake, and deception among consumers. Defendants' unfair competition has caused and will continue to cause damage to plaintiffs, and is causing irreparable harm to plaintiffs for which there is no adequate remedy at law.

THIRD CLAIM FOR UNFAIR COMPETITION UNDER NY GBL 349

59. Plaintiffs repeat and hereby incorporate reference the allegations of paragraphs 1 through 58.

60. Defendants engaged in conduct that is 1) deceptive and misleading in a material way; 2) the deceptive conduct was 'consumer oriented,' and 3) plaintiffs have been injured 'by reason of defendants' conduct.

61. The foregoing constitutes a violation of Section 349 of New York's General Business Law

FOURTH CLAIM FOR LIBEL PER SE

62. Plaintiffs repeat and reallege Paragraphs 1 to 61 as if fully set forth herein.

63. The statements described in Paragraphs 50, 51 and 52 of the Complaint constitute libel per se.

64. Plaintiffs haves been damaged by those statements.

FIFTH CLAIM FOR CONVERSION

65. The ABC sites are property of the plaintiffs. Defendants' actions constitute conversion of the ABC Domain Names, which has damaged plaintiffs in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray:

a) On the First Claim, that defendants and their agents, officers, employees, representatives, successors, assigns, attorneys and all other persons acting for, with, by, through or under authority from defendants, and each of them, be preliminarily and permanently enjoined from:

(i) using or claiming exclusive ownership of the "Anna Bove Collections" name;

(ii) using the "Anna Bove Collections" name or any of the ABC Domain Names, or any names, marks, symbols or devices (including, without limitation, domain names or search keywords) that are confusingly similar therewith, in connection with marketing, advertising, promoting, or otherwise directing Internet traffic to any websites, other on-line stores or e-commerce operations engaged in, or proposing to engage in, the business of, or relating to, offering, distributing, selling, promoting or advertising machine or hand embroidery patterns, supplies, information or advice;

(iii) offering designs for sale that were misappropriated from the ABC sites;

(iv) redirecting potential visitors to the ABC sites to the Defendants' websites or any other website; and

That the Court order defendants to transfer registration and control of the ABC Domain Names to Plaintiff Vadim Mikhlyn; That, pursuant to 15 U.S.C. § 1117, defendants be held liable for all damages suffered by plaintiffs resulting from the acts alleged herein; That due to defendants' willful, intentional and deliberate acts in violation of 15 U.S.C. §1125, such damages be

trebled and awarded to plaintiffs; That, pursuant to 15 U.S.C. § 1117, defendants be compelled to account to plaintiffs for any and all profits derived by them from their illegal acts complained of herein; that the defendants be ordered pursuant to 15 U.S.C. § 1118 to deliver up for destruction all containers, labels, signs, prints, packages, wrappers, receptacles, advertising, promotional material or the like in their possession, custody or under the control of defendants bearing a trademark found to infringe plaintiffs' trademark rights; that the Court declare this to be an exceptional case and award plaintiffs their full costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117; that the Court grant plaintiff any other remedy to which it may be entitled as provided for in 15 U.S.C. §1117 or under state law; and For such and other further relief that the court deems just and proper.

b) On the Second Claim, that defendants and their agents, officers, employees, representatives, successors, assigns, attorneys and all other persons acting for, with, by, through or under authority from defendant, and each of them, be preliminarily and permanently enjoined from:

(i) using or claiming exclusive ownership of the "Anna Bove Collections" name;

(ii) claiming that plaintiffs were Ana Bove's employees or "staff", or accusing plaintiffs of unlawfully seizing, or attempting to seize, the ABC sites or business and/or unlawfully selling designs belonging to Ana Bove, or otherwise making or inducing others to make any false, misleading or deceptive statements of fact, or representations of fact regarding Plaintiffs, ABC Domain Names, the ABC sites or the business in connection with the promoting, advertising, or offering for sale of any products or services through Defendants' websites;

(iii) redirecting potential visitors to the ABC sites to the Defendants' websites or any other website;

(iv) directly or indirectly engaging in false or misleading advertising of defendants' websites; That defendants be ordered to correct any erroneous impression persons may have regarding any of the plaintiffs, ABC Domain Names, the ABC sites and the business.

c) On the Third Claim, awarding judgment to plaintiffs against defendants for compensatory damages in an amount to be determined by the Court; for attorneys' fees and costs of the suit; and for such other and further relief as the Court may deem just and proper.

d) On the Fourth Claim, awarding judgment to plaintiffs against defendants for compensatory and punitive damages in an amount to be determined by the Court; for attorneys' fees and costs of the suit; and for such other and further relief as the Court may deem just and proper.

e) On the Fifth Claim, imposing a constructive trust on the defendants' interest in the ABC Domain Names and directing an accounting of such assets.

Dated: New York, New York
August 1*f*, 2008

*/s/ Daniel Akselrod*
Daniel Akselrod, Esq. (DA-2569)
Eric Wertheim, Esq. (EW-3049)
VAL MANDEL, P.C.
80 Wall Street, Suite 1115
New York, New York 10005
(212) 668-1700
*Attorneys for Plaintiff*