```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
Vadim Mikhlyn, Inga Mikhlyn, and         :
ABC All Consulting, Inc.                 :
                                         :
                    Plaintiffs           :
                                         :
           -against-                     : 08 CV. 03367(CPS)
                                         :
Ana Bove, Polina Dolginov                : DECLARATION OF
Anna Bove Company, LLC,                  : VADIM MIKHLYN
Anna Bove Collections, Inc.              :
and Anna Bove Embroidery Supplies, Inc.  :
                                         :
                    Defendants.          :
                                         :
----------------------------------------X
```

Vadim Mikhlyn declares the following to be true under penalty of perjury:

1. I am a plaintiff in this action along with my wife, Inga, and our corporation ABC All Consulting, Inc. I submit this Declaration in support of plaintiffs' motion for a preliminary injunction.

2. This case involves the naked theft and ongoing destruction of a family operated web-based business by one member of the family, defendant Ana Bove ("Ana") and her friend Polina Dolginov.

3. Without prompt court intervention, Ana and Polina will cause irreparable damage to the business.

### The Beginning of the ABC Embroidery Business

4.  Defendant Ana Bove is my cousin. Ana is a citizen of Israel and resided there until 2006. Defendant Polina Dolginov is Ana's friend and was her neighbor in Israel.

5.  According to Ana and Polina, they were enrolled in an E-Commerce Course in Israel, where they became aware of a web-based business that sold embroidery designs. Ana and Polina decided to establish the same kind of business, so they registered two domain names, ABC-Cross-Stitch-Patterns.Com and ABC-Embroidery-Designs.Com, for that purpose. They set up web sites under those names in, respectively, July 2002 and October 2003. (the "ABC sites"). Polina was the registered owner of both domain names.

6.  The business then, and now, operated by "digitizing" public domain artwork and incorporating it in embroidery designs sold on the ABC sites.

7.  In 1998, I became a professional web and database programmer. My wife and co-plaintiff, Inga Mikhlyn, is a professional bookkeeper and office manager. Before we became partners with Ana and Polina in the ABC sites, Inga and I helped Ana and Polina with technical, programming, translating and other matters.

2

### Inga and I Join the Business

8. Around January of 2004, Ana suggested that Inga and I set up an embroidery design business with her, based in the United States, separate from her existing business with Polina. Soon after, Ana had a change of heart about a side business and suggested that there be one embroidery design business, including Polina, centered in the United States, owned and operated by the four of us as partners, with the right to share in profits and the obligation to share in losses. All of us agreed.

9. In June 2004, Inga and I incorporated ABC All Consulting, Inc. ("ABC Inc.") in New York State to be used as the business entity for the new partnership. Inga and I each received 100 shares of ABC Inc. See Exhibit A annexed hereto. No other shares were issued or authorized. I am the sole director and President of ABC Inc. and Inga is Secretary.

10. By October of 2005, almost all of the money from the embroidery business flowed through ABC Inc.'s bank account, for which only Inga and I had signing authority. When customers paid for purchases with credit cards, the payments were forwarded to the ABC Inc. bank account. All four of us had access to the sites and to the related PayPal and merchant accounts set up to receive payments from customers.

11.     I want to be absolutely clear that while Inga and I were the sole owners and officers of record of all outstanding shares of ABC Inc. and the partnership business was operated through ABC Inc., we do not claim that we are the exclusive owners of the ABC sites and business.  From the time Inga and I joined with Ana and Polina in 2004, the ABC business was owned and operated by the four of us as equals.

12.     Most of the sales proceeds were reinvested in the business for expenses and advertising, but when Inga and I took money, we wrote checks to ourselves from the company bank account.  We sometimes wired money to Ana and Polina, and they sometimes took money directly from PayPal.  Ana, however, never paid us, although she now describes us as her "staff."

13.     No one partner acted like, or was, the employer or boss of any other partner with regard to any aspect of the business.  Each partner had a principal area of responsibility and worked cooperatively with the other partners.  Polina was responsible for issuing weekly newsletters to the customers and submitting our websites to search engines.  Ana was responsible for finding public domain designs and arranging for them to be digitized by outside contractors.  Inga was responsible for bookkeeping, customer support, shipping, tracking inventory, and html website tune-up.  I was responsible for all computers, technical and programming issues, dealing with Customs, and

arranging the transportation and delivery of imported embroidery supplies.

14. By 2006, Inga and I worked full time in the partnership. This became our only source of income.

### Success of the Business

15. The business succeeded and grew dramatically, and established a very favorable reputation and loyal following. We spent over $41,000 in the last four years advertising the business. Sales tripled between 2004 and 2008. The business has more than 250,000 registered users in its database. As an example of our reputation, annexed hereto as <u>Exhibit B</u> are one hundred messages about our business posted on an Internet embroidery forum between 2004 and 2008.

16. In June 2004 we came up with the idea of expanding the business to include the sale of embroidery supplies in addition to designs.

17. Inga and I took all of the steps necessary to set up this new line of business, from sourcing the supply, to warehousing, transportation, packaging and shipping.

18. In connection with this new line of business, we filed for an obtained the trademark "ThreaDelight," registering all four of us as joint owners. Until the events giving rise to

5

this lawsuit, embroidery supplies represented about 70% of the gross income of the partnership.

### Why "Anna Bove" and "ABC"

19. The use of "ABC" in the first domain names registered for the business was not arbitrary. Names like "ABC" or "AAA" or "123" are popular for web-based businesses because such common series are likely to be part of search engine queries and, therefore, likely to steer potential customers to the sites.

20. As the business obtained a higher profile and greater recognition, however, we became concerned about the potential for legal conflicts with other "ABC" businesses or web sites.

21. As a safety measure, we wanted to come up with a more distinctive and defensible trade name but at the same time, a name that would have an association with our existing and popular "ABC" brand.

22. We quickly realized that "ABC" was Ana's initials. At first, Ana was reluctant to have her name associated with the web site but she eventually agreed. We decided, however, to change the first name slightly to "Anna" with two "n"s because we thought it was the more common spelling of the name in our market and therefore more appealing and "normal" sounding.

23.     We then registered two new domain names, AnnaBoveCollections.com and AnnaBoveCollection.com, and began to advertise and promote the business and its products under the name "Anna Bove Collections." I am the registered owner of the two "AnnaBove" domain names. I also registered "Anna Bove Collections" as a d/b/a name for the corporation, ABC Inc. See <u>Exhibit C</u>.

24.     Although, going forward, we used the name "Anna Bove Collections" for the business and its products, we kept the two "ABC" web sites open because of their popularity and, at least until Ana's recent actions, they remained the largest sources of our business.

### Polina Leaves the Company

25.     In June of 2007, Polina decided to leave the company and start a new business with her mother, unrelated to embroidery. We all agreed on a buyout amount, $30,000, and a payment schedule of $1,000 per month. Our agreement with Polina is reflected in an invoice, payment records, and e-mail from that time annexed hereto, collectively, as <u>Exhibit D</u>.

26.     As part of the deal, Polina agreed to transfer the ABC domain name registrations to me. She gave Ana the user names and passwords necessary to transfer the domain names to my control, and Ana passed them on to me. Annexed hereto as

Exhibit E is a log of MSN Messenger Conversations between Ana and me in 2007, which confirm the transfer of the domain names to me.

27. With the passwords and usernames provided by Polina, I transferred the ABC sites to my account with the domain registrar and web hosting company, GoDaddy.com. AnnaBoveCollections.com and AnnaBoveCollection.com also are registered in my account with GoDaddy.com. I also use the services of Domains By Proxy, Inc., for all of the partnership web sites. Domains By Proxy works by substituting itself as the registered domain name owner for its client, to protect the client (i.e. me) from spammers, hackers and other intruders.

28. As with ABC Inc., I want to be clear that while the domain names were being transferred to my control, they were the property of the partnership, which after Polina's departure consisted of Ana, Inga, and me.

### Ana's Behavior and Attitude Changes

29. Ana's parents, who are citizens of Israel, lived in our house from 2004 to May of 2008. Ana moved in with us in March 2006 and, except for occasional trips abroad, lived in our house until April 2008 of this year.

30. In 2006, my wife began to notice the smell of marijuana in the bathroom. I spoke to Ana who admitted that she smoked there and agreed to stop.

31. In 2007, we became aware that Ana was using cocaine and other illegal drugs like ecstasy. My stepdaughter, who was 22 years old by that time, saw Ana taking ecstasy, and both of our children told us that Ana was promoting drug use to them. At the time my stepson was 16 years old and we were most concerned about the influence Ana's habits would have on him.

32. During this time Ana's appearance and behavior changed dramatically. Ana looked like she lost about thirty pounds from the time she moved in with us and became extremely thin. She was not, to my knowledge, working out or dieting. Worse, she was prone to periods of rage and paranoia that frightened everyone in the house including her own parents. She also became less productive and involved in the business.

33. In February of this year, we laid the law down with Ana. She had to stop her drug use or leave the house. She promised to stop but did not.

34. In late March of this year, Ana abruptly announced that she was quitting the business to start her own line of embroidery monogramming, which would not be competitive with the partnership business. As compensation for her share of the

9

business, Ana demanded 50% of all gross design sales indefinitely.

35. Ana's demand was exorbitant and unrealistic. We never disputed, however, that Ana was entitled to a buy-out and suggested to Ana that we go to a third party to mediate the dispute but she refused.

36. On March 29, 2008, we received an email from Polina in which she reports learning (from Ana herself) that Ana left the company. In the same email, she demands that we speed up her buyout payments. Polina's March 29 email is annexed hereto as <u>Exhibit F</u>.

### Ana and Polina Seize the ABC Sites

37. On the night of March 31, I discovered that Ana changed the password on the company's eBay account. I had to call customer service to restore it. Ana's actions disrupted service to our customers for a whole day.

38. I soon learned that Ana registered a new domain name, Anabove.com, that same day.

39. On April 1, we asked Ana to move out of our house.

40. On April 2, we hired a law firm to represent us in negotiations with Ana about her departure from the business. We invited her to hire a lawyer to represent her and we attempted

to schedule a settlement meeting. Ana agreed to meet but later changed her mind and refused to show up for a scheduled meeting.

41. In May, Ana registered another domain name, AnnaBoveEmbroidery.com, and also created two New York business entities, Anna Above Company, LLC and Anna Bove Collections, Inc. The later is exactly the same as the "d/b/a" name we had registered with the state in June 2005. In July she created one more New York corporation, Anna Bove Embroidery Supplies, Inc.

42. On May 14, I received a "cease and desist" letter from an attorney, Alexey Bakman, on behalf of Ana demanding, basically, the cessation of all activities of the business, payment to Ana of "at least one million dollars ($1,000,000)," and an accounting of ABC Inc., which was created by my wife and myself and of which we are the only record shareholders.

43. I replied to Mr. Bakman, in writing, that all further communications should be with our attorney. Mr. Bakman acknowledged my request but never followed up on his letter.

44. On June 27, I received notice that Ana commenced arbitration before the National Arbitration Forum ("NAF"), the arbitration venue for domain name disputes, against "Domains By Proxy, Inc.," seeking control of the ABC sites. Ana's petition was quickly dismissed but her filing of the arbitration petition led Ana to a key discovery that allowed her to take over the ABC business.

45. Upon receipt of the arbitration petition, Domains By Proxy, Inc. cancelled my privacy agreement allowing Ana to discover, apparently, that Polina was still the owner of record of the two ABC domain names. It seems that after taking all other steps necessary to assume control of the ABC domains pursuant to Polina's buy-out agreement, I forgot to substitute my name for Polina's as the registered owner. Armed with the knowledge of Polina's status as registered owner of the ABC sites, Ana quickly filed an amended arbitration petition with the NAF naming Polina as the Respondent.

46. The second arbitration petition was quickly withdrawn by Ana but, in the interim, Ana must have struck a deal with Polina because Ana has obtained control of the ABC sites. Ana and/or Polina promptly changed the e-mail address of record from mine to Polina's and both domains were transferred, without my prior knowledge, to Polina's account with the domain registrar and web hosting company, GoDaddy.com. See <u>Exhibit G</u>.

47. Ana, with Polina's cooperation, not only has taken over the ABC sites but is using her power to defame Inga and myself, and to destroy the ABC sites' good will by "re-directing" all would be visitors to the ABC sites to Ana's new web sites. Ana's new website describes us as her:

> ex staff who attempted to grasp the sites and business, and it has been under their full control for several

> months. If any other web sites will appear, offering my designs (e.g. designs like those ones listed on this site) WITHOUT carrying my name AND being listed as an official dealer on this site, it would mean that they don't have any rights to distribute those designs. At this moment the only other company that has a license for selling designs that were created by Anna Bove is The Sewphisticated Stitcher, Inc

Ana is even more strident in an email she circulated to customers. She says that we attempted to "take illegal control of [her] websites and businesses" and are distributing her designs "illegally." Annexed hereto as <u>Exhibit H</u> is a copy of the first page of the "Anna Bove Embroidery Website" that ABC customers are redirected to. Annexed hereto as <u>Exhibit I</u> is the above-mentioned email from AnnaBoveEmbrodiery.com, dated July 29, 2008. Anna posts new attacks every few days.

48. Ana's claimed ownership of the ABC designs is conclusively contradicted by the records of ABC Inc., which show that the all of the business' design work was contracted out by ABC Inc. to third parties in China and paid for by ABC Inc. See <u>Exhibit J</u> hereto.

49. Ana's claimed ownership of the entire business is perhaps most conclusively proven by the absence of evidence. Until her recent coup, there was not a single document of any kind in the four year history of the partnership – not one corporate filing, tax return, web site message, or e-mail – that

supports the idea of Ana as the sole owner of the business much less the idea of Inga and myself as her "staff."

50. Contrary to Ana's statement to customers that "the staff" seized control of the business for several months, the only thing that changed in the last several months was our eviction of Ana from our home and Ana and Polina's surreptitious and unlawful seizure of the ABC sites.

51. Ana's patently false claims that she owns everything including "ABC All Consulting, Inc." have caused significant confusion among ABC customers. The following is a sampling of the expressions of confusion we have received from customers since Ana started redirecting people to her new website:

"The links included in your email does do not work for me can you tell me why?"

"Hi I received an e-mail saying that my subscription was transferred to another site? And they want me to pay to continue my subscription. Is this correct?...

"I received this email today regarding your new web site, is this you? Or not?"

"I came across this at [Ana's new site] and the stuff looks like yours. Is this part of you? Or is it taken from you?"

See Exhibit K, annexed hereto. New messages of confusion and anger come in every day.

52. Ana's new site also posts a guestbook in which customers congratulate her for getting control of "her" business

14

back and wish her good luck in the battle against the "bad guys." See Exhibit L hereto.

53. As an example of Ana's sheer malice against us, she wrote a vicious letter to me on July 24 and sent an email and hard copy to my stepdaughter, who has nothing to do with this dispute. The letter includes hate filled statements about our "dirty scam" and suggesting that I "hang myself." Ana is attempting to cause as much hurt and embarrassment in the family as possible. The letter is annexed hereto as Exhibit M.

54. If Ana and Polina are not stopped immediately, they will destroy the ABC sites' good will, our personal good will with customers, and our rights in the business, before this dispute can be resolved by the Court.

### Changing our Business Name during this Lawsuit would be a Great Burden if not a Practical Impossibility

56. Changing our trade name and mark to avoid confusion during the pendency of this lawsuit would be disastrous, if not impossible. The changes would be extremely time consuming and expensive. We would have to change all of our informational files for customers, flyers and catalogs which now use the names ABC-embroidery-designs.com and/or annabovecollections.com.

57. Our catalog includes 232 designs "sets." There are approximately eight individual embroidery designs in each set, for a total of 1,856 designs. Each design has an informational

15

file labeled "abc-embroidery-designs.com" or "abc-cross-stitch-patterns.com." It would take approximately thirty minutes to recreate each downloadable design file. That translates into about 116 full workdays to change all of the informational files. The labor for that effort, at a cost of at least ten dollars per hour would be $9,280.00. That time consuming and expensive change would not address the problems and confusion being experienced by the large number of customers who already have design files linked to abc-embroidery-designs.com.

58. We also have the problem of over $40,000 worth of inventory, consisting of catalogs and boxes labeled as abc-"embroidery-designs.com" and "annabovecollections.com." To re-label and re-package the entire existing inventory would require three to four people working full time for approximately two months.

59. At this stage, we are not asking the Court to resolve all issues in our favor. Our separation from Ana will have to be worked out, hopefully by agreement but if necessary at trial. We only ask the Court to return the parties to the status quo before Ana seized the business. The Court should (a) direct that the most recent transfer of the ABC sites be cancelled, and that the web sites be returned to my control for the benefit of the partnership, (b) defendants be enjoined from using or claiming exclusive ownership of the "Anna Bove Collections"

16

name, (c) enjoin defendants from using the ABC Site names as keywords in search engines to steer customers to their new sites, and (c) enjoin defendants from selling design files that were taken from the ABC sites, and paid for by ABC, Inc., pending the trial of this action.

Dated:   New York, New York
         August 18, 2008

_____
VADIM MIKHLYN