Peter L. Berger (PB-0121)
Jonathan Berger (JB-6448)
LEVISOHN BERGER LLP
Attorneys for Defendants/Counter-Plaintiffs
61 Broadway, 32nd Floor
New York, NY 10006
Phone (212) 486-7272 / Fax (212) 486-0323

Boris Kogan (BK 9135)
BORIS KOGAN & ASSOCIATES
277 Broadway, Suite 701
New York, NY 10007
Phone (212) 625) 8910 / Fax (212) 219-2728

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VADIM MIKHLYN, INGA MIKHLYN, AND ABC ALL CONSULTING, INC., )<br><br>Plaintiffs, )<br><br>v. )<br><br>ANA BOVE, POLINA DOLGINOV, ANNA BOVE COMPANY, LLC, ANNA BOVE COLLECTIONSM INC., AND ANNA BOVE EMBROIDERY SUPPLIES, INC, )<br><br>Defendants. )<br><br>ANA BOVE, ANNA BOVE COMPANY, LLC, AND ANNA BOVE EMBROIDERY SUPPLIES, INC, )<br><br>Counter-Plaintiffs, )<br><br>v. )<br><br>VADIM MIKHLYN, INGA MIKHLYN, AND ABC ALL CONSULTING, INC., Counter-Defendants. ) | Index No. CV 08 3367<br><br>J. SIFTON<br>M.J REYES<br><br>DEFENDANTS-COUNTERPLAINTIFFS' (COUNTERCLAIMANTS') MEMORANDUM IN SUPPORT OF THE MOTION FOR A PRELIMINARY INJUNCTION |

Mikhlyn et al v. Bove et al          Doc. 25

## TABLE OF CONTENTS

1. COUNTERCLAIMANTS' BRIEF STATEMENT OF FACTS     2

ARGUMENT -- POINT I.     5

    A PRELIMINARY INJUNCTION SHOULD BE ENTERED TO
    PROTECT ANNA BOVE'S NAME, TRADEMARKS, COPYRIGHT
    REGISTRATION AND ASSETS FROM MISAPPROPRIATION     5

A.     STANDARD FOR ISSUANCE OF PRELIMINARY INJUNCTION     6

    1.     BOVE IS LIKELY TO PREVAIL ON THE MERITS
       OF ITS COPYRIGHT INFRINGEMENT CLAIMS     7

    2.     COUNTERCLAIMANTS ARE LIKELY TO
       PREVAIL ON THE MERITS OF THE
       LANHAM ACT CLAIMS TO "abc" AND "ANA BOVE"     11

    3     THE EQUITIES OVERWHELMINGLY FAVOR BOVE     15

    4.     THE COUNTERDEFENDANTS MUST CANCEL
       THEIR ABC DOMAIN NAMES OR BE FORCED TO
       TURN THEM OVER TO COUNTERCLAIMANTS     17

POINT 2.     21

COUNTERCLAIMANTS ARE
ENTITLED TO AN ORDER OF ATTACHMENT     21

A) COUNTERCLAIMANTS HAVE DEMANDED AND ARE ENTITLED
TO A MONEY JUDGMENT IN THE SUM OF AT LEAST $1,300,000 ON
THE CAUSES OF ACTION FOR BAILMENT, CONVERSION, BREACH
OF CONTRACT, UNJUST ENRICHMENT, MONEY HAD AND
RECEIVED, BREACH OF FIDUCIARY DUTIES, VIOLATION OF
GBL §349, FRAUD AND RESCISSION     23

B) THERE IS A LIKELIHOOD OF SUCCESS ON THE MERITS IN
FAVOR OF THE COUNTERCLAIMANTS BECAUSE PLAINTIFFS
BREACHED THE AGREEMENT WITH THE COUNTERCLAIMANTS
AND THUS CANNOT CONTINUE TO ENJOY THE
BENEFITS OF THAT AGREEMENT     23

1. BY THEIR OWN ADMISSION, PLAINTIFFS OWE MONEY TO
ANA BOVE, WHICH THEY HAVE FAILED TO PAY     23

2. PLAINTIFFS HAVE STILL NOT ACCOUNTED TO ANA BOVE    24

C) PLAINTIFFS HAVE, OR ARE ABOUT TO, ASSIGN, DISPOSE OF,
ENCUMBER OR SECRET PROPERTY TO FRUSTRATE THE
ENFORCEMENT OF A JUDGMENT THAT MIGHT BE RENDERED
IN FAVOR OF THE COUNTERCLAIMANTS    24

D) THE AMOUNT DEMANDED FROM PLAINTIFFS EXCEEDS ALL
CLAIMS AGAINST THE COUNTERCLAIMANTS    26

CONCLUSION    27

## 1. **COUNTERCLAIMANTS' BRIEF STATEMENT OF FACTS**

Counterclaimants' incorporate the statement of facts, memorandum and declarations contained in the Memorandum in Opposition to Plaintiffs' Request for a Preliminary Injunction submitted on September 9, 2008. Further, Counterclaimants incorporate the accompanying supplemental declaration and exhibits of Ana Bove.

Counterclaimants restate in brief form the salient facts relating to Counterclaimants' pending motion for a Preliminary Injunction regarding copyright and trademark infringement as well as their request for relief recapturing misappropriated assets of defendants' business.[1]

The essential facts in this matter are largely not in dispute.

In approximately 2002, defendants Ana Bove and Polina Dolginov began a business in which they offered embroidery designs on the Internet as well as software programs to produce those designs on various computer controlled embroidery machines. That business began in and was conducted from Israel and used a website containing pages of designs much as a catalog in offering such goods. The internet website designations used the letters "abc" in association with various suffixes, and Bove and Dolginov registered a family of "abc" websites. ABC is an acronym for Anna Bove Collections, and the "abc" has been continuously used by Ana Bove and/or Polina Dolginov in association with their web based embroidery design business since 2002.

Additionally, Ana Bove, as the creative leader and designer of the various abc embroidery businesses and designs has been so identified on the websites. Her name has

---

[1] Polina Dolginov is not a counterclaimant – only Ana Bove and Anna Bove Company, LLC are.

been carried as a stand-alone on the websites, and Ana Bove has always been identified as the designer.

In 2004, Ana Bove hired her cousin Vadim Mikhlyn's wife, Inga Mikhlyn, to assist her in the United States with various bookkeeping and other administrative chores because the American business was growing.

The business continued to grow, and Ana Bove gave her relatives direction to control the financial aspects of the business within the United States, and they did. They set up a PayPal account and other accounts to handle the money generated in the United States. That money was used to pay salaries of various employees in the United States and Israel, including the salary of Inga Mikhlyn. Neither Ana Bove nor Polina Dolginov drew regular salaries since they were the founders. They did take money occasionally when it was available, although their first obligation was to pay the employees, including Inga Mikhlyn.

In 2007 it was decided that Polina Dolginov would convey some of her administrative duties to Vadim Mikhlyn, who was thought to be more skilled in certain computer areas. To that end, Vadim was entrusted with the passwords. Thereafter, Ana instructed Vadim to consolidate all the company's domains into one account. Instead, he changed the passwords, thereby taking control of the domains. He was supposed to be doing this for Ana Bove's business, but instead he took control of the unified abc account and excluded Ana Bove, Polina Dolginov and anyone else associated with Ana Bove's business from access to the website. Essentially, he hijacked the business.

In approximately April 2008, when the Mikhlyns asked Ana Bove to leave their home, Ana Bove became aware that the Mikhlyns' had commandeered the entirety of her

business to the exclusion of Ana Bove, Polina Dolginov and anyone else in the business. The Mikhlyns gained control of the websites, had control of the passwords of which they were the only persons having knowledge, and they continued to run the abc businesses selling Ana Bove's designs using websites created by her, containing pages created by her, using her name without her authority and misappropriating the money, inventory, customer list and other goodwill associated with the business.

In May of 2008 Ana Bove sent a letter to the Mikhlyns demanding that they cease and desist their infringing activities and return all assets.

The Mikhlyns refused to do so and Ana Bove and Polina Dolginov then turned to the UDRP to gain back control of their websites. Since Polina Dolginov was still the registrant on the websites, she was able to do so directly through the domain Registrar, and in approximately July of 2008, Ana Bove and Polina Dolginov regained two of the abc websites on which the majority of the abc embroidery business had been run.

Days thereafter, to Ana Bove and Polina Dolginov's great shock, they discovered that the Mikhyln's had already established alternative abc embroidery websites to which they were redirecting all communicators with those abc websites that they had misappropriated so that the Mikhlyns were continuing the abc business that was misappropriated by them. At that point, Ana Bove realized that she had no alternative but to turn to the courts to regain control of her business, stop the infringement by the Mikhlyns of Ana Bove's copyright rights and terminate their infringement of the abc trademarks as well as misappropriating and misusing her name.

Ana Bove is also asking this Court to immediately terminate any activity by the Mikhlyns of any embroidery business which makes use of Bove's ABC family of marks

or any of her copyright designs and to turn over either to Bove, the court, or to some third party, all assets and inventory as well as control of PayPal accounts pending this litigation so that the Mikhlyns will not have the benefit of using Ana Bove's assets to conduct this litigation. Additionally, Counterclaimants have asked that this Court require all persons in privity with the Mikhlyns to turn over and return to the court any and all payments received by such recipients which were directly or indirectly related to the assets of the misappropriated abc businesses.

The Mikhlyns' reply to all of this is that they somehow became partners and have the right to control the business to the exclusion of Ana Bove and Polina Dolginov. There is not one scintilla of evidence to support this false claim of partnership which has been used by the Mikhlyns' to provide some cover for their misappropriation of Ana Bove's business.

There is absolutely no defense to the copyright infringement by the Mikhlyns nor to their trademark infringement. Additionally, the balance of equities clearly favors Bove, the victim of the Mikhlyns' dishonorable and improper activities.

## ARGUMENT – POINT I.

### A PRELIMINARY INJUNCTION SHOULD BE ENTERED TO PROTECT ANNA BOVE'S NAME, TRADEMARKS, COPYRIGHT REGISTRATION AND ASSETS FROM MISAPPROPRIATION

Defendants' request for a preliminary injunction is essential and just due to CounterDefendant/Plaintiffs' blatant infringement of CounterPlaintiff/Defendants'

rights.[2]  First, the Mikhlyns deliberately used Bove's name, her family of trademarks and the abc domain names to capitalize on Bove's goodwill.  Second, the Mikhlyns deliberately infringed Bove's copyrighted works to profit from Bove's website containing popular embroidery and cross-stitch designs.  Finally, through the Mikhlyns abuse of Bove's trust, the Mikhlyns exploited Bove's successful business to misappropriate assets and money for their personal benefit.

The Mikhlyns take the position in their earlier preliminary injunction request that they have the exclusive right to use Bove's name and ABC trademarks on their websites, that they have the right to sell Bove's embroidery and cross stitch designs since the designs are public domain, and that since a partnership existed, they have the right to appropriate the assets of Bove's business as they deem appropriate and exclude Bove. The Mikhlyns do not cite to any permission Ana Bove gave to them for them to appropriate Ana Bove's registered copyright to her website design and the designs contained thereon, which the Mikhlyns copied to their websites.  Bove's prior memorandum and supporting declarations and her supplemental declaration herein demonstrate the Mikhlyns' claim to partnership is phony.

## A.  **Standard for Issuance of Preliminary Injunction**

The test for the issuance of a preliminary injunction is well settled.  A preliminary injunction should be granted where the moving party demonstrates (1) irreparable harm, and (2) either (a) probability of success on the merits, or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships

---

[2]  Defendant and CounterPlaintiff will be referred to as "Bove" and Plaintiff and CounterDefendant will be referred to as Mikhlyn.

tipping decidedly in the moving party's favor. Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979); Wright v. Giuliani, 230 F.3d 543, 547 (2d Cir. 2000).

## 1. BOVE IS LIKELY TO PREVAIL ON THE MERITS OF ITS COPYRIGHT INFRINGEMENT CLAIMS

The Copyright Act protects the works of an author. Bove is the author or assignee of the Copyrighted Works.

A prima facie case of copyright infringement will give rise to a presumption of irreparable harm, which may be effectively demonstrated by proof of success on the merits. ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d 60, 64 (2d Cir. 1996). In order to establish a *prima facie* case of copyright infringement, the movant must show (1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work. Feist Publications, Inc. v. Rural Tel. Serv. Co.,, 499 U.S. 340, 361 (1991).

It is required that to start a copyright lawsuit, the movant's work must be registered. 17 U.S.C. §411(a). Hence, the issuance of a certificate of registration for a copyright is *prima facie* evidence of the validity of the copyright. Hasbro Bradley, Inc. v. Sparkle Toys, Inc., 780 F.2d 189, 192 (2d Cir. 1985). Counterclaimant Bove has already been issued a copyright registration for the Work. (Exhibit 1 of Counterclaimants' Answer and Counterclaim).

The second element of the copyright claim focuses on unlawful copying. In order to establish unlawful copying, the movant must show that (1) the infringer's accused work is copied from movants' copyrighted work, and that (2) the infringer's work

improperly appropriated the elements of the protected work. Gaste v. Kaiserman, 863 F.2d 1061, 1069 (2d Cir. 1988).

In instances based on a comparison between the copyrighted work and the accused work, where the similarities between the copyrighted design and the accused infringer's designs are striking, this would justify an inference of copying and prove improper appropriation. Gaste v. Kaiserman, 863 F.2d at 1068-1069; Sanrio Company, Ltd v. Ann Artic, Inc., U.S. DIST LEXIS 19384, at *14-15 (E.D.N.Y. May 12, 1998).

Based on the Mikhlyns' admission that they appropriated the website of Ana Bove which is the subject of the Copyright Registration, the Mikhlyns' do not deny copying and infringement. They cite no permission from Bove to copy such website. This is not surprising since the Mikhlyns' have openly admitted appropriating the copyrighted work of Bove and incorporating such work on the Mikhlyn website.

For instance, the Mikhlyns' home page on some of their websites (see Exhibit 6 of Complaint) are substantially identical to the home page of Ana Bove's 2003 embroidery design website at www.abc-embroidery-designs.com. (See Exhibit G of Supplemental Decl. Of Ana Bove). Bove's 2003 home page website contains numerous elements, such as a one large butterfly on the upper right-hand side of the page, three smaller butterflies close to each other in the form of a triangle adjacent to the large butterfly. The upper right hand side of the page contains three small blocks, one on top of another, and each block contains a symbol within it. The Mikhlyns' website contains the same exact features.

The Mikhlyns claim that the designs are public domain. "In fact, all of the designs were obtained from public domain sources. . . Ana did not design anything." (Mikhlyns'

Memo-randum of Law, p. 18.) The Mikhlyns' only detail provided was that "after the partnership selected public domain designs, they were then 'digitized' into downloadable files for sale." Mikhlyns' Memorandum of Law, p. 18. However, while the Mikhlyns make this public domain claim, they themselves assert copyright protection for the same Work because the Mikhlyns use the copyright designation "Copyright 2003-2007 ABC All Consulting" on each of the website pages they copied from Bove and her business (see Exhibit H of Supplemental Decl. of Ana Bove.).

Bove submitted its website as the deposit copy for the Copyright Registration. The website is like a catalog containing individual pages, which themselves contain individual designs. Organizing a catalog, by itself, is copyrightable even if the individual designs were not. Feist Publications, Inc., v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991); Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F. 3d 1999 (3rd Cir. 2005); Yurman Studio, Inc., et al. v. Elena Castaneda, et al., U.S. Dist., Lexis 63158 (S.D.N.Y. Aug. 19, 2008). Organizing the individual pages, by itself, is copyrightable even if the individual designs were not (Feist, ibid). Still further, the individual designs themselves are copyrightable as either being original or modified public domain images, so modified to be able to produce embroidery designs comprising different threads combined together by software designed to run computer controlled embroidery machines. id

Nevertheless, the Mikhlyns appear to be missing the point about using public domain designs. For one, the registration is to the website, which itself is an original work as a "catalog" - the Mikhlyns' copied that.

As to the individual designs, a work will still be considered original in the framework of the Copyright Act if its expression originated from the author and not have

been copied from another source. Feist, *supra*. It is not required for originality to consist of great artistry. In fact, it is well settled that the copyright law protects copies of works that were themselves in the public domain. All that is needed ... is that the 'author' contributed something more than a 'merely trivial' variation, something recognizably 'his own.' Originality in this context 'means little more than a prohibition of actual copying No matter how poor artistically the 'author's addition, it is enough if it be his own.'" Alfred Bell & Co. v. Catalda Fine Arts, Inc., 191 F 2d 99, 102-103 (2d Cir. 1951) (holding that mezzotint engravings of old masters paintings were entitled to copyright because the engraver added contributed sufficient originality.) Thus, even though the requisite level of creativity is extremely low, a vast majority of works make the grade quite easily as they possess some creative spark." Feist Publications Inc. v. Rural Tel. Serv. Co, 499 U.S. at 340

Therefore, as to the individual designs themselves, apart from the website or individual pages as long as a derivative work consists of a contribution of original material to a pre-existing work so as to recast, transform or adapt the pre-existing work, the derivative work would be protected. The accompanying supplemental declaration of Ana Bove shows in detail how she creates and designs the embroidery designs. Some designs are entirely original and some derive from public domain patterns. Her declaration demonstrates her authorship for those works which easily reaches that required for copyrightability which is more than a minimal contribution. Bove's supplemental declaration states that while the Mikhlyns are free to create their own embroidery patterns from public domain images, they have not been able to successfully do so, further underscoring the authorship of Bove in creating the embroidery designs.

Adapting a public domain embroidery design to a print fabric design falls within this rubric of originality. See <u>Millworth Convering Corp. v. Slifka</u>, 276 F. 2d 443 (2d Cir. 1960). In that case, Millworth had seen a design embroidered on a dress. The design was in the public domain, and Millworth worked with a fabric printer to develop an arrangement of varying colors that would give something of the three-dimensional effect of embroidery on a flat surface. The *Millworth* Court explained that Millworth's efforts and skill to create the three dimensional effect constitutes originality within the framework of the <u>Alfred Bell</u> case.

In this case, the Mikhlyns display the same website, the same individual pages and the same collection of embroidery designs as does Bove and as is contained in the Bove Copyright Registration. The Mikhlyns have no substantive defense to their copyright infringement.

## 2. COUNTERCLAIMANTS ARE LIKELY TO PREVAIL ON THE MERITS OF THE <u>LANHAM ACT CLAIMS TO "abc" AND "ANA BOVE"</u>

The Lanham Act provides protection for the goodwill invested by an owner of a trade-mark in a business and ensures that consumers are able to distinguish among competing products. 15 USC 1127. In essence, the Lanham Act has several goals: (1) to protect the interest of the public from being misled by confusingly similar marks, (2) to protect the goodwill in-vest-ed by the owner of a trademark so that he/she can reap the financial, reputation-related rewards associated with a desirable product and not be tarnished by inferior product of a junior user.

To request an injunction on the basis of the Lanham Act including but not limited to common law trademark infringement and unfair competition claims, likelihood of confusion is the core standard. If likelihood of confusion is demonstrated, then irreparable injury is presumed. Taylor Wine Co. v. Bully Hill Vineyards, Inc., 569 F.2d 731, 735-36 (2d Cir. 1978).

The courts usually considers eight factors laid out in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir. 1961), cert denied, 368 U.S. 820 (1961). The eight factors are: (1) the strength of the mark, (2) the degree of similarity between the two marks, (3) the competitive proximity of the products or services, (4) the existence of actual confusion, (5) the likelihood that Bove will bridge the gap between the two markets, (6) Mikhlyns' good faith in adopting the mark, (7) the quality of Mikhlyns' product, and (8) the sophistication of the purchasers.

Since Counterclaimants and Counterdefendants both seek the same relief regarding the abc and Anna Bove trademarks, namely a preliminary injunction, they both agree that there is consumer confusion as to the source of the goods sold by the Parties. Thus the conventional eight factor analysis is unnecessary

The Mikhlyns' arguments that they should have exclusive rights to "abc" and Anna Bove are founded on their claim to being partners in the business and claiming that Polina Dolginov and Ana Bove abandoned their interests and somehow transferred these trademarks to the Mikhlyns' sole control.

Such claims of abandonment and partnership are entirely fabrications. Ana Bove has continuously since 2002 been conducting the embroidery business on the Internet under the "abc" family of names and has used her name since the beginning. She was

forced to stop conducting the business sometime in April 2008 when the Mikhlyns' hijacked the website and prevented Ana Bove from access thereto. She regained two of her websites in July 2008 and continues the business. In 2007, Dolginov decided to spend less time on the business administration in favor of other work such as writing newsletters and the like. She never left the business, abandoned any assets nor sold any ownership rights to the Mikhlyns. The only document offered by the Mikhlyns is fabricated.[3]

Most of the factors are not in dispute to having been addressed in the Mikhlyns' Request for a Preliminary Injunction and Bove's reply.

Since the Mikhlyns can offer no valid basis for their misappropriation of abc or Anna Bove, Counterclaimants' request for a preliminary injunction should be granted.

The only factors in dispute regarding the name ANNA BOVE in the context of the Lanham Act and the Anti-Cybersquatting Consumer Protection Act ("ACPA") is whether Ana Bove owns the mark, and whether the Mikhlyns had a bad faith intent to profit from Ana Bove's mark.

The Mikhlyns contend that the partnership owns the mark ANNA BOVE since they claim that "Anna Bove Collections" was adopted by the parties for their partnership in 2005, and that Anna Bove never exploited her actual name in commerce except in connection with the partnership.

However, Bove was the one who started publicizing her name as the designer for the embroidery and cross stitch designs on the abc websites since 2002-2003, before the Mikhlyns were employed by Bove.

---

[3] Anna Bove's supplemental declaration of September 17, 2008 identifies more misleading information about financial transactions contained in Vadim Mikhlyn's declaration as well as numerous additional unlawful domain names operated by the Mikhlyns.

After the Mikhlyns joined Bove's business in the middle of 2004, Anna Bove's name continued to be exploited in connection with her embroidery designs and cross stitch designs on her websites.

The websites were later changed, and Anna Bove's name continued to be exploited along with another mark, "Anna Bove Collections, Inc" when they were shown on the same page (Exhibit O to the Declaration of Ana Bove in Opposition to Plaintiffs' Request for Preliminary Injunction). Thus, there was continued use by Bove of the Anna Bove name.

The Mikhlyns claim that they were partners of Anna Bove has been dealt with above and in Bove's reply papers submitted on September 9, 2008.

There is strong, compelling evidence that the Mikhlyns' actions were done in bad faith to confuse the customers and steal Bove's business. "Bad faith generally refers to an attempt by a junior user to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." Lang, *ibid*; Star Industries, Inc. v. Bacardi & Company, 412 F.3d 373 (2d Cir. 2005).

Generally, the Court examines several factors to determine the good faith of the junior user, but these factors are not relevant. Not only did the Mikhlyns start websites using Ana Bove's name, but their websites were copies of Counterclaimants' websites that existed before the Mikhlyns joined the company. See Exhibit G of Supplemental Declaration of Anna Bove. "Evidence of intentional copying raises a presumption that a second comer intended to create a confusing similarity of appearance and succeeded . . ." Warner Bros. v. American Broadcasting Co., 720 F.2d 231, 246-47)(2d Cir. 1983);

Centaur Communications v. A/S/M Communications, Inc., 830 F.2d 1217, 1228 (2d Cir. 1987).

The Mikhlyns have no valid basis to misappropriate Ana Bove's name, and their continuing infringement thereof should be immediately stopped.

The Mikhlyns also claim that they have the contractual right to control and own the ABC Domains due to the transfer of the administration of the websites from Polina Dolginov to Vadim Mikhlyn. They argue that since control of the passwords was transferred to Vadim Mikhlyn, he essentially owns the ABC Domains. However, as explained above and in the initial response to Counterdefendants' request for preliminary injunction, Polina Dolginov maintained the registrations for the ABC Domains since 2002 until the middle of 2007 and continued to use the ABC Domains as trademarks. Vadim Mikhlyn's control of the passwords was to administer the websites as part of his employment by Bove. It was not to enable him to hijack the website for his personal benefit.

### 3. **THE EQUITIES OVERWHELMINGLY FAVOR BOVE**

Without an injunction, Bove faces a substantial risk that the great goodwill it has developed in the abc trademarks and her name will be reduced by association with the Mikhlyns (Warner Bros. Inc. v. Gay Toys Inc., 658 F.2d 76 at 79, 1981 U.S. App. LEXIS 18261, 211 U.S.P.Q. (BN) 1017 (2d Cir. N.Y. 1981) "[i]f the injunction is denied, Warner Bros. and its licensees will suffer substantial lost sales, and its licensing program will lose much of the confidence reposed in it by the licensees . .").

Counterdefendants have been on notice of Counterclaimants' position since May 2008. Counterdefendants have continued to use the offending marks, Bove's copyrights and Bove's assets. This is not a case where an injunction will unfairly disadvantage a second user who has expended considerable sums before the first user raised the issue of infringement. Accordingly, defendants are in no position to complain of any hardship caused by the injunction.

The injury to a trademark owner from the loss of control over the good will and reputation represented by its mark constitutes irreparable injury. Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190, 1195 (2d Cir. 1971). Without an injunction, Defendant will be able to continue to sell in violation of Plaintiff's trademark. Miller Brewing Co. v. Caroling O'Keefe Breweries, 452 F. Supp. 429, 437 (W.D.N.Y. 1978) ("[w]hen a trademark is infringed, the owner's business reputation and good will are placed in jeopardy due to his inability to exercise any control over the nature and quality of goods being sold or advertised under the infringing trademark"). The injury to Bove's goodwill in its abc and Anna Bove trademarks is irreparable and cannot be remedied by monetary damages alone.

One of the principal purposes of the Lanham Act is to protect consumers from being misled or confused as to the source or sponsorship of goods, (see 15 U.S.C. §1127) Estee Lauder, Inc. v. Watsky, 323 F. Supp. 1064, 1068 (S.D.N.Y. 1970).

The purposes of the Lanham Act would be well served by enjoining the Mikhlyns from use of the Bove marks and from use of the other Bove assets

## 4. THE COUNTERDEFENDANTS MUST CANCEL THEIR ABC DOMAIN NAMES OR BE FORCED TO TURN THEM OVER TO COUNTERCLAIMANTS

The Anti-Cybersquatting Consumer Protection Act ("ACPA") shares many of the same goals as the Lanham Act, that is to protect consumers and businesses from confusing domain names and to provide protection for trademark owners by stopping the bad faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks, an act known as cybersquatting. Hence, to find liability under the ACPA, the movant must show that (1) the person has a bad faith intent to profit from that mark, and (2) registers, traffics in, or uses a domain name that ... in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark. 15 U.S.C. § 1125(D).

The Court then examines additional factors to determine whether the accused either registered, used or trafficked in the domain name with a bad faith intent to profit from the movant's mark. These factors include: (1) whether the domain name registrant has trademark or other intellectual property rights in the name; (2) the extent to which the domain name is the same as the registrant's legal name or nickname; (3) the registrant's prior use of the domain name in connection with the bona fide offering of goods or services; (4) the registrant's bona fide intent noncommercial or fair use of the mark to identify its website; (5) whether the registrant intended to divert consumers away from the trademark owner's website; (6) whether the registrant offered to sell or transfer the domain name;(7) whether the registrant provided material and misleading contact information; (8) whether the registrant has acquired multiple domain names similar to

others' marks, and (9) the distinctiveness and fame of the mark incorporated in the domain name registration. 15 U.S.C. 1125(d)(1)(B)(i); Mattel v. Internet Dimensions, Inc., U.S. Dist. LEXIS 9747, *9-10 (S.D.N.Y. July 13, 2000)

The question is whether the Counterdefendants' "abc" domain names are "identical or confusingly similar" to Anna Bove's "abc" trademarks and domain names. "Confusingly similar" is different than the likelihood of confusion standard under the Polaroid factors adopted by this Circuit. Sporty's Farm LLC v. Sportman's Market, Inc., 202 F.3d 489, 498, n. 11 (2d Cir. 2000).

Based on an examination of Defendants' domain names and Anna Bove's trademarks, there are numerous similarities for both the abc marks and the Anna Bove marks. For instance, Counterclaimants' family of abc domains copies the distinctive and unique "abc" letters of Anna Bove's two well-known trademarks and domain names, www.abc-cross-stitch-patterns.com and www.abc-embroidery-designs.com. In addition, the words immediately after Defendants' abc marks contain standard terms used in the embroidery field. Hence, Defendants abc domains are confusingly similar, though not identical to Anna Bove's abc trademarks and domains. Mattel v. Internet Dimensions, Inc., 2000 U.S. Dist. LEXIS 9747, *9-10 (S.D.N.Y. July 13, 2000) (The Court held that the marks BARBIE and BARBIESPLAYPEN.COM are confusingly similar because both contain the word BARBIE, the name and the appearance of BARBIE is identical on the accused's website, and both BARBIE and BARBIEPLAYPEN.Com are associated with the word 'play' in the broad sense).

In addition, there is clear evidence that the Mihklyns registered, used or trafficked in the domain name with a bad faith intent to profit from Anna Bove's mark and

goodwill. With regard to the first factor, it is quite clear that the Mihklyns do not have any intellectual property rights in the mark ABC in conjunction with the embroidery field and coupled with their initial hijacking of Countclaimants' abc websites, the intent was in bad faith because they switched to the new abc websites after Counterclaimants gained access to their legitimate websites.

The second factor is irrelevant since it focuses on the use of a legal name.

The third factor focuses on whether the registrant used the domain name in connection with the bona fide offering of goods or services before. Once again, it is quite clear that the Mihklyns never used the accused ABC marks until after they became involved in Anna Bove's embroidery and cross stitch design business.

The fourth factor focuses on the defendants' use of the accused domain names, and it is quite clear that Defendants not only used the confusingly similar domain names to sell embroidery and cross stitch designs, but their web pages contain the same exact web designs and the same exact embroidery and cross stitch designs belonging to Anna Bove.

The fifth factor focuses on the intent of the accused to divert consumers away from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the site. Here, that was the Counterdefendants' only goal.

The sixth factor focuses on the intent of the person to transfer, sell or otherwise assign the domain name to the mark owner or to a third party. In this case, this factor is

not applicable since the Mihklyns are still using the domain names to sell embroidery and cross stitch designs.

Both the seventh and eight factors favor the Mihklyns since the registration information that they provided accurately lists the business address of ABC All Consulting, and that they did not register multiple domain names that are identical or confusingly similar to marks of others. Lastly, the ninth factor, there is insufficient information regarding this except that Counterclaimants had garnered over 250,000 customers to her abc websites for her embroidery designs.

As to the Anna Bove mark, there is also clear evidence that the Counterdefendants registered, used or trafficked in the domain name with a bad faith intent to profit from Anna Bove's mark and goodwill.

With regard to the first factor, it is quite clear that the Mihklyns do not have any intellectual property rights in the name Anna Bove in conjunction with the embroidery field. Anna Bove started using her name identifying herself as the designer before the Mihklyns got involved. After the Mihklyns joined her business, under Anna Bove's direction, they continued to exploit her name.

The second factor is relevant since the Mihklyns are not known as Anna Bove or have any connection to Anna Bove's name other than their joining her business.

With regards to the third factor, it is quite clear that the Mihklyns never used the Anna Bove name or mark until after they became involved in Anna Bove's embroidery and cross stitch design business.

The fourth factor clearly shows that the Mikhlyns not only used the confusingly similar domain names to sell embroidery and cross stitch designs, but their web pages

contain the same exact web designs and the same exact embroidery and cross stitch designs belonging to Anna Bove.

The fifth factor focuses on the intent of the accused to divert consumers away from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the site. Here, it was the Mikhlyns' clear intention to steal business.

The sixth factor is not applicable since the Mihklyns are still using Anna Bove's name to sell embroidery and cross stitch designs.

Both the seventh and eight factors favor the Mihklyns since the registration information that they provided accurately lists the business address of ABC All Consulting, and that they did not register multiple domain names that are identical or confusingly similar to marks of others. Finally, the ninth factor favors Anna Bove because her mark has acquired distinctivenss and fame as conceded by the Mikhlyns.

Based on the above factual analysis, this court should immediately cancel or order the transfer of the abc websites adopted by the Mikhlyns pursuant to 15 USC §1125(D).

## POINT 2.

## COUNTERCLAIMANTS ARE
## ENTITLED TO AN ORDER OF ATTACHMENT

Pursuant to Rule 64 of the Federal Rules of Civil Procedure, the laws of the State of New York are applicable to attachment of assets to secure satisfaction of a potential judgment. Fed. R. Civ. P. 64.

CPLR §6201 provides the following in relevant part:

An order of attachment may be granted in any action, except a
matrimonial action, where the plaintiff has demanded and would be
entitled, in whole or in part, or in the alternative, to a money judgment
against one or more defendants, when:

\*\*\*

3. The defendant, with intent to defraud his creditors or frustrate the enforcement
of a judgment that might be rendered in plaintiff's favor, has assigned, disposed
of, encumbered or secreted property, or removed it from the state or is about to do
any of these acts. CPLR §6201(3) (McKinney's 2005).

Thus, pursuant to CPLR §6201(3), a party is entitled to an order of attachment when it

establishes:

(1) that the defendant has, or is about to conceal his or her property in one
of the enumerated ways, and (2) that the defendant has acted or will act
with the intent to defraud his or her creditors or to frustrate the
enforcement of a judgment for the plaintiff. Societe Generale Alsacienne
de Banque, Zurich v. Flemingdon Dev. Corp., 118 A.D.2d 769, 772, 500
N.Y.S.2d 278, 281 (2nd Dept 1986) (granting order of attachment).

In addition, to obtain an order of attachment pursuant to CPLR §6212, the movant

must show:

that there is a cause of action, that it is probable that the plaintiff will
succeed on the merits, that one or more grounds for attachment provided
in [CPLR] section 6201 exist, and that the amount demanded from the
defendant exceeds all counterclaims known to the plaintiff. CPLR §
6212(a) (McKinney's 2004).

In the instant case, as demonstrated below, Counterclaimants are entitled to an

order of attachment because they have established the following: a) Counterclaimants

have demanded and are entitled to a money judgment; b) There is a likelihood of success

on the merits in favor of the Counterclaimants; c) Counterdefendants have assigned,

disposed of, encumbered or secreted property to frustrate the enforcement of a judgment

in favor of the Counterclaimants; and d) The amount demanded from Plaintiffs exceeds

all claims known to Counterclaimants.

**A) COUNTERCLAIMANTS HAVE DEMANDED AND ARE ENTITLED
TO A MONEY JUDGMENT IN THE SUM OF AT LEAST $1,300,000 ON
THE CAUSES OF ACTION FOR BAILMENT, CONVERSION, BREACH
OF CONTRACT, UNJUST ENRICHMENT, MONEY HAD AND
RECEIVED, BREACH OF FIDUCIARY DUTIES, VIOLATION OF GBL
§349, FRAUD AND RESCISSION**

The Counterclaimants have causes of action against the Plaintiffs for bailment,

conversion, breach of contract, unjust enrichment, money had and received, Violation of

GBL §349, rescission.

As explained below, Counterclaimants are entitled to a money judgment in an

amount no less than $1,300,000.

**B) THERE IS A LIKELIHOOD OF SUCCESS ON THE MERITS IN
FAVOR OF THE COUNTERCLAIMANTS BECAUSE PLAINTIFFS
BREACHED THE AGREEMENT WITH THE COUNTERCLAIMANTS
AND THUS CANNOT CONTINUE TO ENJOY THE BENEFITS OF THAT
AGREEMENT**

**1. By Their Own Admission, Plaintiffs Owe Money to Ana Bove, Which They
Have Failed To Pay**

Taking Plaintiffs' claims at face value, Plaintiffs do not deny that they have

materially breached whatever agreement they had with Ana Bove, to help her run her

business. While Plaintiffs do not acknowledge that Ana was the owner of the business

which they were hired to manage, Plaintiffs concede that Ana has at least a 50% interest

in the business, as a partner, although of course, there was no partnership.

Moreover, according to Paragraph 38 of the Complaint, "Vadim and Inga never

disputed that Ana was entitled to compensation for her share of the business." Yet,

plaintiffs cannot deny that they have failed to pay to Ana her "share" of profits from the business, while they admit that "By 2006 [the business] became [Plaintiffs'] only source of income. See Paragraph 14 of Vadim Mikhlyn's Declaration. Also, as stated in the Declaration of Ana Bove in support of this motion, in 2006, the Mikhlyns bought homes in the Poconos and in Brooklyn valued at over $700,000

As set forth in the accompanying Declaration of Ana Bove, she received a pittance from her business while the Mikhlyns feigned poverty and claimed the business has not turned a profit sufficient for Ana to take a draw from her own business. Thus there is no dispute that the Counterclaimants have long been owed a substantial sum.

### 2. Plaintiffs Have Still Not Accounted To Ana Bove

From 2005 through the present, Ana repeatedly requested financial information and an accounting from Plaintiffs, which was not forthcoming. The Plaintiffs' continuing refusal to account is another material breach which Plaintiffs do not and cannot controvert.

Thus, the Counterclaimants have demonstrated a likelihood of success on the merits of their counterclaims.

### C) PLAINTIFFS HAVE, OR ARE ABOUT TO, ASSIGN, DISPOSE OF, ENCUMBER OR SECRET PROPERTY TO FRUSTRATE THE ENFORCEMENT OF A JUDGMENT THAT MIGHT BE RENDERED IN FAVOR OF THE COUNTERCLAIMANTS

The Counterclaimants have demonstrated that Plaintiffs have, or are about to, assign, dispose of, encumber or secrete property to frustrate the enforcement of a judgment that might be rendered in favor of the Counterclaimants by establishing that:

a) Plaintiffs have dissipated and encumbered Counterclaimants' property by paying themselves and taking whatever they wanted from the business from 2006 and on and spending business proceeds as if they Plaintiffs'; b) Plaintiffs disposed of Counterclaimants assets by engaging in fire sales, giving away Ana Bove's copyrighted designs; and c) Plaintiffs will dispose of inventory to convert it to cash in the same manner they disposed of Ana Bove's copyrighted designs.

As can be seen from Paragraph 14 of Vadim Mikhlyn declaration, Plaintiffs concede that they have no other source of income, and, among other things, in 2006, bought a house in Brooklyn, valued at $670,000, and a vacation home in the Poconos.

Indeed, Counterclaimants believe that the Plaintiffs have or will dissipate and or abscond with the approximately $1,300,000 to which Counterclaimants are entitled and that Plaintiffs failed to turn over to Counterclaimants. More importantly, Counterdefendants continue to sell Ana Bove's threads thereby depleting her inventory daily.

As the Counterclaimants allege in their Counterclaims and demonstrate in their moving papers, Plaintiffs engage in fire sales where Counterclaimants' assets are given away for free, Plaintiffs have failed to account for the business they were hired to manage and, while Plaintiffs' complaint concedes that Ana Bove was at least a 50% partner in the business, Plaintiffs urge the Court to believe the incredulous claim that Ana Bove abandoned all interest in her brain child.

In fact, as can be seen from Ana Bove's Declaration, when asked to account for the business, Plaintiffs stated to Ana Bove that the business was not making any money indicating that the proceeds from the business were dissipated

Moreover, in Paragraph 58 of his declaration, Plaintiff Vadim Mikhlyn admits that Plaintiffs are in possession of inventory comprised of boxes and catalogues with a value of $40,000. In reality, Plaintiffs have in their possession and control an additional inventory of thread and other embroidery supplies valued at over $100,000 at cost.

## D) THE AMOUNT DEMANDED FROM PLAINTIFFS EXCEEDS ALL CLAIMS AGAINST THE COUNTERCLAIMANTS.

The amount demanded by Counterclaimants far exceeds any alleged damages sought by Plaintiffs. The Counterclaimants seek to regain control of the entire business, have Plaintiffs disgorge all profits and proceeds held by Plaintiffs plus punitive and exemplary damages from 2004 through the present.

In contrast, the Plaintiffs only seek purported damages for part of the business, not the entire business.

The instant case is the exact situation that CPLR § 6201(3) was intended to address and remedy. The Plaintiffs have not and will not account for the proceeds of business. As stated above, the Plaintiffs give away Counterclaimants' assets for free and claim that there are no proceeds from the business. *See* Mishkin v. Kenney & Branisel, Inc., 609 F.Supp. 1254, 1256 (S.D.N.Y 1985), *aff'd*, 779 F.2d 35 (2d Cir. 1985) (granting an application for an order of attachment as to such property of the defendant that would satisfy the movant's demand for judgment where there was a risk that assets might be dissipated).

The same relief is warranted here. Indeed, the requested relief is the only effective way to ensure that any judgment the Counterclaimants ultimately obtain against

the Plaintiffs will be collectible. Accordingly, Counterclaimants' motion for an order of attachment should be granted.

## CONCLUSION

Bove is entitled to a preliminary injunction immediately stopping the Mikhlyns from infringing her copyrights, trademarks and name, transferring to Bove the various abc websites registered by them, transferring to Bove the assets of her business commandeered by the Mikhlyns, including the inventory of threads and entering the order of attachment requested above.

LEVISOHN BERGER LLP

By: _[signature]_ 9/17/2008

Peter L. Berger (PB-0121)
Jonathan Berger (JB-6448)
LEVISOHN BERGER LLP
Attorneys for Defendants/Counter-Plaintiffs
61 Broadway, 32nd Floor
New York, NY 100006
Phone (212) 486-7272 / Fax (212) 486-0323

Boris Kogan (BK-9135)
BORIS KOGAN & ASSOCIATES
277 Broadway, Suite 701
New York, NY 10007
Phone (212) 625) 8910 / Fax (212) 219-2728