Peter L. Berger (PB-0121)
Jonathan Berger (JB-6448)
LEVISOHN BERGER LLP
Attorneys for Defendants/Counter-Plaintiffs
61 Broadway, 32nd Floor
New York, NY 100006
Phone (212) 486-7272 / Fax (212) 486-0323

Boris Kogan, Esq.
BORIS KOGAN & ASSOCIATES
277 Broadway, Suite 701
New York, NY 10007
Phone (212) 625) 8910 / Fax (212) 219-2728

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VADIM MIKHLYN, INGA MIKHLYN, AND ABC ALL CONSULTING, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ANA BOVE, POLINA DOLGINOV, ANNA BOVE COMPANY, LLC, ANNA BOVE COLLECTIONS, INC., AND ANNA BOVE EMBROIDERY SUPPLIES, INC, <br><br> Defendants. <br><br> ANA BOVE, ANNA BOVE COMPANY, LLC, AND ANNA BOVE EMBROIDERY SUPPLIES, INC, <br><br> Counter-Plaintiffs, <br><br> v. <br><br> VADIM MIKHLYN, INGA MIKHLYN, AND ABC ALL CONSULTING, INC., <br><br> Counter-Defendants. | Index No. CV 08 3367 <br><br> JUDGE SIFTON <br> M.J. REYES <br><br> SUPPLEMENTAL DECLARATION OF ANA BOVE IN SUPPORT OF A MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER |

Mikhlyn et al v. Bove et al     Doc. 26

Anna Bove, hereby declares and states:

1. I am a defendant and counter-claimant in the above-captioned action and I have submitted a Declaration to this Court on September 9, 2008 stating the factual bases in opposition to Plaintiff's motion for a preliminary injunction.

2. I submit this supplemental Declaration to submit additional evidence of financial contributions that Polina and I made to the business and to submit additional evidence and clarity concerning the misleading documents submitted by the Mikhlyns in support of their motion for a preliminary injunction.

## **MISLEADING QUICKREPORT IN EXHIBIT D TO THE DECLARATION OF VADIM MIKHLYN**

3. In Exhibit D to the Declaration of Vadim Mikhlyn, a QuickReport is shown, which purports to report various payments made from "ABC All Consulting, Inc." The QuickReport is reproduced in Exhibit A hereto. There are numerous errors, misrepresentations and inaccuracies in the listed Report – errors that an experienced bookkeeper such as my cousin-in-law Inga would not have made in the course of keeping accurate records. This leads me to believe that the QuickReport was composed for the purpose of the current lawsuit. The evidence and explanations submitted here will not only highlight these errors, but importantly also will support the fact that Polina and I ran the business contrary to Vadim Mikhlyns' statement that "no one partner acted like, or was, the employer or boss of any other partner with regard to any aspect of the business."

4. The Report heading states "ABC All Consulting, Inc Vendor QuickReport January 1, 2004 through June 29, 2008."

5. As an initial comment, the supposed start date of the Report is January 1, 2004. However, ABC All Consulting, Inc. did not exist as of that stated date of January 1, 2004. ABC All Consulting, Inc. was first incorporated in the summer of 2004.

6. The payments reported are misleadingly shown to be made from an "ABC All Consulting, Inc." account. However, in reality, all payments and transfers shown in the report were made from an "Anna Bove Collections, Inc." PayPal account. (As previously mentioned, I asked my cousins to incorporate "Anna Bove Collections, Inc." on my behalf. They assured me that they had done so, but I later learned that they had registered "Anna Bove Collections" as a d/b/a of ABC All Consulting, Inc., misleading me into believing that it was in fact a corporation owned by me.)

7. The transaction "type" for all listed transactions is a transfer by check (see "check" consistently in the "Type" column of the Report). However, as explained below, the overwhelming majority of the listed transactions were by way of electronic transfers of funds. For some transactions, check numbers were even provided where in fact the transactions were electronic transfers – not payments by check.

8. Since I wanted to control payment of salaries and other business expenses, Inga, as an accountant, suggested and implemented the following system: Inga would transfer a specified amount of money from my business PayPal account "Anna Bove Collections, Inc." to my PayPal account, which I shared with Polina Dolginov and which was registered in her name. Each transfer was accompanied by a note stating what the funds are intended to be used for. After Polina and I would receive the funds in our account, we would transfer it to where it was needed. (Note, in this document I will refer to the account as "Polina's" account as the supporting documents all refer to the

registered name on the account – Polina Dolginov. However, in reality, the account was a joint account, which the two of us used jointly.) Thus, for example, in order to pay Inga's weekly salary of $1,000, a transfer of $1,000 would be made to Polina's account, and we would then transfer it to Inga's account. Accordingly, for every such transactions at least two different payment confirmations are generated: one confirming that funds have been transferred from the "Anna Bove Collections, Inc." account into Polina's account, and another confirming that the funds have been transferred to an intended payee.

9. Consistently, in <u>Exhibit A</u>, these two confirmations are shown for a number of transactions. The confirmations are shown by way of example and are not repeated for every transaction listed in the report.

10. Referring to page 1 of the QuickReport (<u>Exhibit A</u>), seven consecutive transactions are labeled "1-7." Beginning with number "1" on November 7, 2005, a transfer of $150.00 is made to Polina's account. "Document 1A" confirms that the $150.00 was received in Polina's account. "Document 1B" shows that Polina then transferred the $150.00 to Olga Plyushchay (oplyushchay@yahoo.com) for her customer service work. Note that the subject states "from Ann" – i.e. from Anna Bove.

11. The same pattern is repeated for the remaining examples and need not be repeated. However, transactions 5-7 are particularly noteworthy. In transaction "5" $1,000 is transferred from to Polina's account (see "5A"), which is then transferred to Inga's account (see "5B"). The transfer of $1,000 is her weekly salary. In transactions "6" and "7" there are more $1,000 payments to Inga roughly one week apart (see "6C" and "7C"). These exemplary transactions contradict the Mikhlyns' claim of a partnership since the Mikhlyns' received a regular consistent salary, whereas Polina and I withdrew

money on an irregular basis – preferring to reinvest any profits in our business.

## **MISLEADING QUICKREPORT IN EXHIBIT J TO THE DECLARATION OF VADIM MIKHLYN**

12. In Exhibit J to the Declaration of Vadim Mikhlyn, a QuickReport is shown, which purports to report various payments made from "ABC All Consulting, Inc." for digitizing services. The QuickReport is reproduced in <u>Exhibit B</u> hereto. Once again, there are numerous errors, misrepresentations and inaccuracies in the listed Report – errors that an experienced bookkeeper such as my cousin-in-law Inga would not have made in the course of keeping accurate records. This leads me to believe that the QuickReport was composed for the purpose of the current lawsuit.

13. The Report conveys the impression that funds are disbursed from an ABC All Consulting account when they are in reality being disbursed from the "Anna Bove Collections, Inc." account. Additionally, the report contains an erroneous start date of January 1, 2004 – a date that precedes the existence of ABC All Consulting. Finally, as demonstrated below, the majority of payments are electronic transfers – not check payments as indicated in the Report.

14. Referring to page 2 of the Report, five different payments are labeled "1-5." The first labeled payment ("1") is for a payment made on February 13, 2006 for $573.68. The payment confirmation that corresponds to that particular transaction is listed as "Document A." "Document A" shows that, in fact, the payment was made as a transfer of funds from the "Anna Bove Collections, Inc." account – and not from ABC All Consulting. Furthermore, it is not a check payment as indicated in the report. The

5

same pattern is repeated for the remaining examples and need not be repeated. Documents "A-E" correspond to transactions "1-5."

## **COPYRIGHT-PROTECTED WORKS**

15. The Mikhlyns contend that my works are not copyright protected since they are digitized versions of public domain works. That assertion only highlights their lack of understanding of the process of creating design patterns and arranging them into sets for display on the Internet.

16. As an initial comment, all of my works are arranged into sets of designs. I selected the different designs that are to be included in a set based on my artistic preferences. Moreover, I specifically create the sets to reflect a common theme or mood and I display them accordingly. The Mikhlyns have reproduced these sets and are displaying them on their numerous websites. The arrangement of my works is in itself copyrightable and is in fact the subject of my registered copyright VA1-639-284. (Exhibit C).

17. The above notwithstanding, each of the designs that I have created is independently copyright protected. There are three categories of such works, (examples of which are provided in Exhibit D hereto) that contain original authorship and are therefore protected. One category of works is those that I have created independently – without reference to a pre-existing work. These works do not warrant any further discussion as they are certainly protected. Other categories of works include those that were inspired by, but are not similar to, pre-existing works and those that are similar to pre-existing, public domain works. An example of a work that was inspired by a public

domain work (but is not similar thereto) is shown in the first example in <u>Exhibit D</u>. The flower pattern on the left-hand column is a public domain design. The accompanying design to the right is my creation. Although my creation was inspired by the public domain design, my design is original and therefore protected. My design contains sufficient authorship to be protected by copyright since the differences between the original and my work are easily discernable. The next pair of designs is a public domain Christmas card shown alongside my rendition thereof. Although there are similarities between the two works, I think it will be clear to the Court that there are substantial original elements, which warrant copyright protection. First, the original is merely an image whereas my work is an embroidery design or a cross stitch pattern. At a minimum the changes I made to produce an embroidery pattern constitute authorship. In addition, my work shown on the right required artistic input and creativity. Numerous choices were made in selecting the threads, thread colors, how to shade the image and how to ensure the quality of the reproducibility of the image. It should be noted that the side-by-side works in <u>Exhibit D</u> are merely a sampling of the designs in my collection. All works in the collection which are derived from public domain works consist of similar creativity and authorship.

18. The Mikhlyns claim that I do not own the rights since the work was contracted out to third parties in China. With this assertion, the Mikhlyns once again demonstrate a complete lack of understanding of the process of creating designs for embroidery. When contracting out any digitizing work, I start with the image to be digitized and plan the colors, size, texture and the overall look I intend to achieve. Based on these factors, I prepare detailed instructions to the digitizer who strictly follows my

instructions without inputting any creativity whatsoever. After the digitizer completes a first pass on a design, I then test it to see how well it works to produce an embroidery pattern. Thereafter, I make modifications that are necessary to achieve my desired look and I send those modifications back to the digitizer for implementation. As described above, I contribute all of the creativity and authorship – with the manual implementation contracted out to others.

19. As an aside, the Mikhlyns are free to use any public domain image as a basis to create new embroidery patterns. Their inability to do this suggests the "authorship" I contribute is more than a mere trivial contribution.

20. Any work that was not entirely authored by me has been assigned to me.

21. The Mikhlyns' cannot claim any rights to my original designs, nor to the ones that have been assigned to me.

22. In 2007, upon the insistence of the Mikhlyns we converted our websites from Linux based platform to a Microsoft platform. At that time the Mikhlyns were given access to the username/passwords for the domains – which they then later used to lock me out of the domains.

23. To the extent that any software had to be re-written when switching the platforms – such re-writing was done by Vadim Mikhlyn. However, any adjustments that may have been made were not visible in any of the webpages and the image content protected remained consistent.

24. From the period in which the Mikhlyns began surreptitiously transferring our domains to their exclusive control (around June 2007) until I was thrown out of their house (March 2008) – neither Polina nor I was aware of the fact that we were no longer

8

in control of the websites and the business. During this period, the Mikhlyns were working for us, and we had no reason to suspect that they had any nefarious intentions.

25. In the Mikhlyns' complaint and in their memorandum of law it is stated that Vadim "used Domains by Proxy, Inc. for all of the partnership's websites." Domains By Proxy is a service that blocks out the identity of domain owners. However, this statement is not supported by the facts. A registrant search turns up 31 domains that are owned by ABC All Consulting, Inc. – many of which were misappropriated from Polina and me. See Exhibit E. Interestingly, not one of the domains are protected by Domains By Proxy. Apparently, when Vadim transferred two of our most important websites to his sole control – he saw it fit to protect himself from "spammers, hackers and other intruders" (as is claimed in the complaint) – but for the rest of his domains he is not similarly concerned. In Exhibit E, numerous examples of "whois" reports for the Mikhlyns' domains are shown – all of which listing "ABC All Consulting, Inc." as the Registrant and not "Domains by Proxy, Inc."

26. Referring to the Registrant report in Exhibit E, it should be noted that most of the listed domains contain copies of my registered work. In Exhibit G, a print out of my website is shown as of 2003. The website, including the layout of the webpages and the web design was registered and used before the Mikhlyns began working with me. The various websites that they have stolen from us, or subsequently registered on their own copy the content of my original website. Exhibit H shows examples of some of numerous websites carrying my copyright protected content.

27. On the issue of contribution of capital into the business, I have stated previously that Polina and I have regularly contributed our funds, whereas the Mikhlyns

9

did not contribute any funds at all. Polina and I have contributed funds to purchase inventory, advertising and for other business-related expenses. In Exhibit F hereto, a spread sheet is shown which tracks $146,566.32 that was contributed by Polina and I. Following the spread sheet are payment confirmations and banking records confirming every transaction (with the exception of the last item) listed on the spread sheet. The first group of confirmations reflect contributions from our personal (joint) PayPal account and the latter records are from a personal Spanish bank account which Polina and I shared.

28. During the course of my dealings with the Mikhlyns I have repeatedly asked them to report to me on the business' financials and for an accounting. My requests were consistently rebuffed. The Mikhlyns have always maintained that the business has not yet turned a profit and Polina and I therefore only drew minimal funds from the business – all the while continuing to compensate the Mikhlyns as per our agreement. In the meantime the Mikhlyns bought homes in Brooklyn and in the Poconos values over $7,000.

29. A significant portion of the monies listed in Exhibit F were used for the purchase of threads. The sale of threads was a substantial part of our business and by the Mikhlyns' own admission – it accounted for 70% of our profits. The Mikhlyns are now in total control of our entire inventory of threads and they continue to sell our threads through their numerous websites. Every day that the Mikhlyns are allowed to sell our threads they are depleting my inventory, and they must be stopped immediately.

30. Furthermore, because the Mikhlyns have no viable claim to my copyrighted works – they must be stopped from reproducing, displaying and selling such works, including the website, the individual pages therefrom as well as the individual

designs. They are free to start their own business with their own designs.

31. Finally, as the senior user of the ABC family of marks – marks that the Mikhlyns admit to having acquired secondary meaning – I should be allowed to make exclusive use of such marks. The Mikhlyns must be immediately stopped from using such marks as related to embroidery products. The same applies to my name Ana Bove or the version Anna Bove.

I declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true, and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under §1001 of Title 18 of the United States Code.

_____

Ana Bove

Dated: 09.17.2008

## EXHIBIT LIST

**EXHIBIT A** QuickReport shown in an Exhibit to the Declaration of Vadim Mikhlyn

**EXHIBIT B** QuickReport shown in an Exhibit to the Declaration of Vadim Mikhlyn

**EXHIBIT C** Copy of the copyright registration to Ana Bove's catalogue

**EXHIBIT D** Side-by-side comparisons of public domain works and Ana Bove's designs

**EXHIBIT E** Registrant report showing 31 domains owned by ABC All Consulting – the majority of which carry Ana Bove's copyrighted content

**EXHIBIT F** Spread sheet, payment confirmations and banking records showing Polina and Ana's contributions to the embroidery business

**EXHIBIT G** Print-out of one of Ana Bove's websites from 2003 – prior to any work with the Mikhlyns

**EXHIBIT H** Print-outs of many of the Mikhlyns' infringing websites