UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
Vadim Mikhlyn, Inga Mikhlyn, and        :
ABC All Consulting, Inc.                :
                                        :
                      Plaintiffs        :
                                        :
        -against-                       : 08 CV. 03367(CPS)
                                        :
Ana Bove, Polina Dolginov               :
Anna Bove Company, LLC, Anna            :
Bove Collections, Inc.                  :
and Anna Bove Embroidery Supplies, Inc. :
                                        :
                      Defendants.       :
                                        :
----------------------------------------X

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION FOR A PRELIMINARY INJUNCTION AND IN OPPOSITION
TO DEFENDANTS' CROSS-MOTION FOR A PRELIMINARY INJUNCTION**

Dockets.Justia.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT................................................................... 1

ARGUMENT.......................................................................................... 2

I.    PLAINTIFFS ARE LIKELY TO ESTABLISH THAT THEY ARE THE SOLE
      REMAINING PARTNERS IN THE EMBROIDERY BUSINESS ...................... 3

      A. Parties' Intent ...................................................................... 3

      B. Contribution, Profits, Losses, and Compensation .................... 4

      C. Ownership, Management and Control ..................................... 5

II.   DEFENDANTS HAVE NOT DEMONSTRATED ANY GROUNDS FOR INJUNCTIVE
      RELIEF .................................................................................... 5

      A.  Ana's Business "Theft" Story is Incredible ........................... 5

      B.  Defendants' Extreme Delay and Abandonment of Prior Legal
          Action Show no bona fide Threat of Irreparable Injury ......... 6

III.  DEFENDANTS ARE NOT LIKELY TO SUCCEED ON THE MERITS ............... 8

      A.  Ana's Copyright Registration and Copyright Claims are
          Invalid ............................................................................ 8

          1.   The Copyright Registration Should be Cancelled
               Because it was Obtained by Knowingly False
               Representations and Omissions of Material Fact ........... 9

          2.   The Evidence Rebuts the Presumptive Validity of
               Ana's Copyright ........................................................ 12

          3.   Ana Fails to Make Out a Prima Facie case of a
               Copyright Violation ................................................... 12

      B.  The Trademark Claims ...................................................... 13

IV.   THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN PLAINTIFFS'
      FAVOR .................................................................................... 13

V.    ANA's REQUEST FOR ATTACHEMENT IS FRIVOLOUS ......................... 14

CONCLUSION ...................................................................................... 17

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

Acli Government Securities, Inc., Plaintiff, V. Daniel Rhoades,
813 F. Supp. 255, 256 (S.D.N.Y. 1993)........................................................ 3

Advanced Commun. Design, Inc. v. Premier Retail Networks, Inc.,
46 Fed. Appx. 964, 979 (Fed. Cir. 2002)...................................................... 2

Citibank, N.A. v. Citytrust,
756 F.2d 273, 276-77 (2d Cir. 1985) ........................................................... 6

Durham Industries, Inc. v. Tomy Corp.,
630 F.2d 905, 910 (2d Cir. 1980) ............................................................... 10

Entm't Research Group v. Genesis Creative Group,
122 F.3d 1211, 1217 (9th Cir. 1997)........................................................... 12

Funrise Canada (Hk) Limited V. Zauder Bros., Inc.,
1999 U.S. Dist. LEXIS 22431 (E.D.N.Y. 1999)............................................ 13

Gestetner Holdings, PLC v. Nashua Corporation,
784 F. Supp. 78, 83 (S.D.N.Y. 1992) .......................................................... 2

ImOn, Inc. v. ImaginOn, Inc.,
90 F. Supp. 2d 345, 350 (S.D.N.Y. 2000)................................................... 7

JSC Foreign Economic Association Technostroyexport v. International
Development and Trad Services, Inc.,
306 F. Supp. 2d 482, 484-85 (S.D.N.Y. 2004)....................................... 14, 17

Langham Fabrics v. Samsung America, Inc.,
997 F.Supp. 479 (S.D.N.Y. 1998) .............................................................. 12

Magnet Communications LLC v. Magnet Communications, Inc.,
2001 U.S. Dist. LEXIS 14460, (S.D.N.Y. Sept. 19, 2001))........................... 7

Markowitz Jewelry Co. v. Chapal/Zenray, Inc.,
988 F. Supp. 404, 407 (S.D.N.Y. 1997)...................................................... 2

Masquerade Novelty v. Unique Industries, Inc.,
912 F.2d 663, 667 (3d Cir. 1990)............................................................... 11

Nanjing Textiles Imp/Exp Corp. v. NCC Sportswear Corp.,
2006 U.S. Dist. LEXIS 56111 (S.D.N.Y. August 11, 2006)......................... 15

Russ Berrie & Co. v. Jerry Elsner Co.,
482 F.Supp. 980, 988 (S.D.N.Y. 1980) .................................................................. 9

The Comic Strip, Inc. v. Fox Television Stations, Inc.,
710 F. Supp. 976, 981 (S.D.N.Y. 1989) ............................................................... 7

Viacom International, Inc. v. Lorimar Productions, Inc.,
486 F. Supp. 95, 98 & n.3 (S.D.N.Y. 1980) .......................................................... 2

Weissmann v. Freeman,
868 F.2d 1313, 1317-18 (2d Cir. 1989) ................................................................ 11

## STATE CASES

Eaton Factors Co., Inc. v. Double Eagle Corp. and Miriam Meltzer,
232 N.Y.S.2d 901, 903 (1st Dep't 1962) ........................................................... 15

## PRELIMINARY STATEMENT

The Court can get to the bottom of the vastly different accounts of events offered by the parties by following several well-established rules. First, the Court should give great if not exclusive weight to what the parties did and said (and did not do or say) before this dispute erupted. Second, the Court should discredit testimony that is too vague and conclusory to justify the extraordinary relief of an injunction. Finally, the Court should credit material allegations that have not been disputed or have been affirmatively conceded by one side or the other.

Applying these principles reveals defendants' story about plaintiffs' theft of Ana Bove's business to be just that – a story. The documentary and creditable evidence shows that plaintiffs are telling the truth. After purporting to quit the partnership in March of 2008, Ana, with the assistance of defendant Polina Dolginov (who quit the year before), seized the partnership business from plaintiffs.

Ana Bove's copyright claims fail for three different reasons: Ana's copyright registration is invalid because she omitted or misrepresented material facts to the Copyright Office, any presumption of validity of Ana's copyright registrations has been rebutted, and Ana has failed to make out a *prima facie* case of infringement.

Finally, even if there were colorable merit to any of Ana Bove's counterclaims, her extraordinary delay and pre-litigation tactics demonstrate the absence of imminent (or any) irreparable harm.

## ARGUMENT

Well established principles of law will help the Court cut through the great volume of paper that has been filed on these motions to determine the nature of the individual parties' business relationship and the events that lead to this dispute.

On the question of whether there was a partnership or merely an employer/employee relationship between the individual parties, their course of dealing is far more relevant than their *post hoc* conclusions and stated subjective intentions. The practical interpretation of a contract by the parties for any considerable period of time before it comes to be the subject of controversy is of great, if not controlling, influence. Gestetner Holdings, PLC v. Nashua Corporation, 784 F. Supp. 78, 83 (S.D.N.Y. 1992); Viacom International, Inc. v. Lorimar Productions, Inc., 486 F. Supp. 95, 98 & n.3 (S.D.N.Y. 1980). Second, vague and conclusory affidavits should be discredited in considering the entry of an injunction under Rule 65. Advanced Commun. Design, Inc. v. Premier Retail Networks, Inc., 46 Fed. Appx. 964, 979 (Fed. Cir. 2002); Markowitz Jewelry Co. v. Chapal/Zenray, Inc., 988 F. Supp. 404, 407 (S.D.N.Y. 1997).

Finally, and logically, material assertions that have not been disputed should be accepted as true.

## I. PLAINTIFFS ARE LIKELY TO ESTABLISH THAT THEY ARE THE SOLE REMAINING PARTNERS IN THE EMBROIDERY BUSINESS

Applying these principles, we will briefly recap the evidence supporting plaintiffs' claims that they were partners in the embroidery design business and not mere employees. At the outset, however, it should be noted that defendants misstate the applicable burden of proof. The burden is one of a fair preponderance, not clear and convincing as defendants contend. Acli Government Securities, Inc., Plaintiff, V. Daniel Rhoades, 813 F. Supp. 255, 256 (S.D.N.Y. 1993).

### A.    The Parties' Intent

The most telling two sentences in the record are in Polina's August 15, 2008 email to Inga, in which Polina requests an acceleration of her buyout payments:

> **"Now Anna told me that she's leaving the business. Therefore, you are the ones I should be taking to now and, indeed, there are things we need to discuss."**

Vadim Decl. I, Exhibit F.

If Ana was a sole proprietor, these sentences make no sense. Sole proprietors do not leave their businesses. They may close them, sell them, dissolve them, assign them, or bankrupt them but they do not leave. Nor would Polina describe

Inga and Vadim as the "ones to talk to" and act as if they had
the authority to make payment decisions if they were merely
employees left behind by a departed sole proprietor.  That
defendants make no effort to deny or explain away these two
sentences confirms what plaintiffs have said all along.  Ana
quit the partnership, leaving Vadim and Inga as the remaining
owners of the business.[1]

### B.  Contributions, Profits, Losses, and Compensation

Ana is wrong when she says plaintiffs did not contribute
capital to the business.  Vadim and Inga invested nearly
*$200,000* of their own money in the business. Inga Decl. II,
Exhibit E.  From the time they joined the business until October
2005, plaintiffs' took no money out.  During that same period
they paid for $5,401.49 in company expenses with their personal
credit cards.  Vadim Decl. II, Exhibit E.  These are not the
actions of mere employees.

If plaintiffs were paid $1000 per week in salary, as Ana
contends, there would be records of hundreds of such payments
between 2004 and 2008.  Yet defendants have produced only a
handful of thousand dollar payments and they were not salary

---

[1] In an attempt to discredit the evidence that Polina received a
"separation" buyout deal in June 2007, Ana suggests that the Russian word "
" in an email from Inga to Polina can mean "spending" as well  "separation."
Apart from the fact that defendants' own interpreter used the word
"separation" in the text of her translation, the email was written by Inga to
Polina, not Ana.  Ana's self-serving interpretation lacks any foundation.

payments, as explained in the accompanying Vadim Decl. II and the Inga Decl. II. Ana also has failed to show (or even claim) that there withholdings from plaintiffs' alleged salary, W2 forms, or any of the other tax and labor law documents that employers are supposed to prepare and file.[2]

### C. Ownership, Management and Control

Every business account was controlled by plaintiffs in the name of ABC Inc., their corporation. The records of Vadim's June 22, 2007 chat with Ana show that Vadim was given control of the two main ABC sites, with Ana's full knowledge and cooperation, after Polina was bought out. Vadim I, Exhibit D.

The chat also confirms that the transfer of control to Vadim was part of the deal to buyout Polina. What else but Polina's buyout could Ana have been referring to when she tells Vadim that they "[a]greed on everything and split"?

## II. DEFENDANTS HAVE NOT DEMONSTRATED ANY GROUNDS FOR INJUNCTIVE RELIEF

### A. Ana's Business "Theft" Story is Incredible

Ana's conclusory assertions that plaintiffs "stole" her business in June 2007 are the least enlightening and the least creditable in the record. These assertions cry out for detail and documentary substantiation, but it is impossible for Ana to

---

[2] Defendants also have greatly exaggerated the extent of their own capital contributions. Inga Decl. II, ¶ 10.

do so because the assertions make no sense. If Ana experienced some loss of power or control over business operations or finances in June of 2007, surely she would have done something or at least said something. Yet there is no hint of it in the hundreds, perhaps thousands, of emails and internet chats that document the parties' dealings right up until the time Ana was evicted form the Mikhlyn home for abusing drugs.

The Court should dismiss Ana's conclusory accusation about being frozen out of her business by the Mikhlyns because (a) it lacks sufficient detail - any detail - to justify the serious matter of injunctive relief and (b) the documented communications between and among Ana, Polina, Vadim and Inga prove that no such theft ever happened.

### B. Defendants' Extreme Delay and Abandonment of Prior Legal Actions Show no bona fide Threat of Irreparable Injury

If Ana is to be believed, plaintiffs hijacked her business and froze her out of the business in April of 2007 - seventeen months ago - but she did not get around to seeking an injunction until plaintiffs happened to file this lawsuit and seek an injunction of their own.

It has long been the law that a failure to act promptly "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Citibank, N.A. v. Citytrust, 756

F.2d 273, 276-77 (2d Cir. 1985). Courts have refused to grant preliminary injunctive relief where a party's delay was a fraction of the delay exhibit by Ana. See Magnet Communications LLC v. Magnet Communications, Inc., 2001 U.S. Dist. LEXIS 14460, (S.D.N.Y. Sept. 19, 2001), (a delay of twelve weeks weighed against a finding of irreparable harm); ImOn, Inc. v. ImaginOn, Inc., 90 F. Supp. 2d 345, 350 (S.D.N.Y. 2000) (delay of eighteen weeks weighed against a finding of irreparable harm); The Comic Strip, Inc. v. Fox Television Stations, Inc., 710 F. Supp. 976, 981 (S.D.N.Y. 1989) (delay of at least three months weighed against a finding of irreparable harm).

Ana vaguely alludes to her lack of sophistication as an excuse for delay but even if the Court were to credit this, Ana retained counsel sometime before May 14, the date Ana's first lawyer sent a demand letter to the Mikhlyns. Ignoring Ana's year long delay to May 2008 stills begs the question of why it took Ana four months to put together an injunction application.

Ana's tactics during the past four months answers the question, and the answer is not good for Ana. Ana actually struck the first legal blow in this dispute. But rather than filing a lawsuit with the broad array of claims in her current pleadings, she commenced arbitrations seeking only control of the two main ABC web sites. Inga Decl. I, Exhibit B. And once Ana obtained control of the ABC sites with Polina's cooperation

(notably, after suing *Polina* in the second of those two arbitrations), Ana sought no further legal relief. Ana's indifference to the relief she seeks now confirms that there is no threat of irreparable injury. It also confirms what plaintiffs said in their moving papers – that the 2 ABC sites represent the lion's share of the business' income. Ana did not think it was worth it to go after the web sites that remained under the Mikhlyns control.

Ana's extraordinarily delay, and her satisfaction with control of the two dominant ABC Sites, shows that this cross-motion is a litigation tactic, not a *bona fide* request for equitable relief.

## III. DEFENDANTS ARE NOT LIKELY TO SUCCEED ON THE MERITS

### A. Ana's Copyright Registration and Copyright Claims are Invalid

Ana cannot prevail on her copyright claims because (a) her copyright registration is invalid as it was obtained by knowingly making numerous false representations of material fact, (b) the presumption of *prima facie* validity of the copyright has been rebutted and (c) Ana fails to make out a *prima facie* case of a copyright violation.

## 1. The Copyright Registration Should be Cancelled Because it was Obtained by Knowingly False Representations and Omissions of Material Fact.

The material omissions and misrepresentations made by Ana in her copyright application include: making knowingly false statements regarding her exclusive authorship and ownership of the "Work", failing to identify and exclude from her copyright claim all of the public domain and other pre-exisitng materials that pervade the Work, failing to identifying the "Work" as a compilation or to otherwise clearly designate that the registration was being sought for a web site, and misrepresenting the dates of completion and first publication of the "Work" by at least several years.

The Copyright registration application Form CO in Section 4 plainly calls for the applicant to disclose and exclude "material in the public domain, or material not owned by this claimant." (See Form CO and General Instructions thereto). Such disclosure is necessary to permit the Copyright Office to determine whether the material being offered does or does not have that degree of originality required for a valid copyright. Russ Berrie & Co. v. Jerry elsner Co., 482 F.Supp. 980, 988 (S.D.N.Y. 1980). Had the Copyright Office been properly advised of the extent to which the "Work" consists of copies of pre-existing works, it may not have issued the registration.

A number of the undisclosed pre-existing works, along with the corresponding designs on the web site, are attached collectively as Exhibit H to the Inga Decl. II. These sample comparisons show that what Ana claims to be her original contributions were nothing more than trivial variations of color shade or dimension resulting mainly from the process of digitizing the pre-existing work. Durham Industries, Inc. v. Tomy Corp., 630 F.2d 905, 910 (2d Cir. 1980) (original aspects of a derivative work must be more than trivial). The evidence also shows that at least some of Ana's alleged creative enhancements to the pre-existence works, such as coloring, were actually done by others. See Inga Decl. II, Exhibit I.

Ana's copyright is not saved by her assertion that it is for the web site as a compilation or collection rather than for the individual designs. Ana should have so indicated by stating "compilation" under "new materials provided" in the copyright registration application. (See Copyright Office Circular 14). More important, although the first version of the Website was launched by Ana October 2003, the Website continued to be updated, rewritten and redesigned by *all* of the partners working together. See Inga Decl. II, ¶ 18-21. The original and later versions of the site also contain a significant number of generic, unprotectible elements that are common to countless commercial web sites. See Inga Decl., II Exhibit J.

"'The authors of a joint work are co-owners of copyright in the work,' 17 U.S.C. § 201(a), and each is entitled to distribute the joint work. . . . Moreover, a joint copyright holder cannot bring an infringement action against the co-author." <u>Weissmann v. Freeman</u>, 868 F.2d 1313, 1317-18 (2d Cir. 1989).

Even Ana's representations about the years of completion and publication are materially false. The registration says the year of completion is 2008, and the date of first publication was March 25, 2008. Yet, as Ana herself says, the basic look and layout of the site has been the same for years and many, if not all, of the designs and have been published on the site for years. In fact, every page of the file /abc/2co_footer.html" on the CD Rom that Ana deposited with the Copyright Office, Ana Decl., <u>Exhibit 2</u>, contains a footer which states "Copyright © 2003 ABC-embroidery-designs.com, All rights reserved." Other files on the disc also show publication dates years prior to March 25, 2008.

"It has been consistently held that a plaintiff's knowing failure to advise the Copyright Office of facts which might have led to the rejection of a registration application constitutes grounds for holding the registration invalid and incapable of supporting an infringement action." <u>Masquerade Novelty v. Unique Industries, Inc.</u>, 912 F.2d 663, 667 (3d Cir. 1990).

The Court can and should cancel the Bove copyright registration. <u>Langham Fabrics v. Samsung America, Inc.</u>, 997 F.Supp. 479 (S.D.N.Y. 1998). Without a valid copyright registration, Bove is precluded from maintaining a copyright claim altogether.

### 2. The Evidence Rebuts the Presumptive Validity of Ana's Copyright

The presumption of the validity of a registered copy-right may be overcome by "simply offer[ing] some evidence or proof to dispute or deny the plaintiff's *prima facie* case of infringement." <u>Entm't Research Group v. Genesis Creative Group</u>, 122 F.3d 1211, 1217 (9th Cir. 1997). Inga's reply declaration and the exhibits attached thereto easily rebut any presumption of copyright ownership based on the registration certificate.

### 3. Ana Fails to Make Out a Prima Facie case of a Copyright Violation

In support of her copyright claims, Ana provides the Court with (a) general ruminations about her creative process and (b) a small sampling of the designs she claims as her own. Ana never specifically identifies her contribution to the majority of designs, which are admittedly based on pre-existing works.

Particularly in the context of a preliminary injunctive application, relief must be denied where, as here, plaintiff fails to show with specificity what elements of the works are original. Providing the Court with nothing more than

conclusory, general and contested allegations of originality is not sufficient. <u>Funrise Canada (Hk) Limited V. Zauder Bros., Inc.</u>, 1999 U.S. Dist. LEXIS 22431 (E.D.N.Y. 1999).

**B.    The Trademark Claims**

Little more need be said about the trademark claims and counterclaims.  The parties are in agreement on the acquired distinctiveness of the "abc" domain names and "Anna Bove" as trademarks.  The trademark issue is subsumed in the question of who owns the trademarks.

Ana's characterization of Vadim and Inga as "junior users" is unsupported.  The Mikhlyns did not suddenly adopt these trademarks and domain names after the falling out between them and Ana.  The trademarks were used and advertised during the period the parties were business together.  The only evidence of secondary meaning in the record is from the period Vadim and Inga became involved in the business.

**IV.    THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN PLAINTIFFS' FAVOR**

Defendants' actions and inactions confirm what was said in our moving papers.  That control of the two original ABC sites is tantamount to control of the business.  In addition to the reasons already cited, defendants' control of the vast majority of the business shows that the balance of hardships tips decidedly in plaintiffs' favor.  Ana is in de facto control of

the business, and her vicious daily attacks are destroying plaintiffs' good will such that a favorable judgment after trial will prove to be a hollow victory.

## V.   ANA'S REQUEST FOR ATTACHMENT IS FRIVOLOUS

Ana's request for attachment is frivolous and unacceptable. The request for attachment consists of (a) the text of the attachment statutes without any discussion of how those statutes have been interpreted (b) the assertion of "facts" that are disproven by public records and thus should never have been cited and (c) an obvious distortion of plaintiffs' purported admission that they owe Ana money.

Under New York law, a party is entitled to an order of attachment where (1) it has stated a claim for a money judgment; (2) it has a probability of success on the merits; (3) the defendant 'with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts;' and (4) the amount demanded from the defendant is greater than the amount of all counterclaims known to the party seeking attachment. JSC Foreign Economic Association Technostroyexport v. International Development and Trad Services, Inc., 306 F. Supp. 2d 482, 484-85 (S.D.N.Y. 2004).

The "intent to defraud" prong is applied literally and stringently:

> "Fraud cannot be inferred, it must be proved" ( *Anderson v. Malley*, 191 App. Div. 573, 575). The fact that the affidavits in support of an attachment contain allegations raising a suspicion of an intent to defraud is not enough ( *Mohlman Co. v. Landwehr*, 87 App. Div. 83, 85); it must appear "that such fraudulent intent really existed in the mind of the defendants, and not merely in the ingenuity of the plaintiffs" ( *Thompson v. Dater*, 57 Hun 316, 319). Thus, fraud is never presumed by a mere showing of the liquidation or disposal by a debtor of its business assets ( *Nolan v. Workman Co* , 146 Misc. 99, 100 and cases cited)."

Eaton Factors Co., Inc. v. Double Eagle Corp. and Miriam Meltzer, 232 N.Y.S.2d 901, 903 (1st Dep't 1962); See Nanjing Textiles Imp/Exp Corp. v. NCC Sportswear Corp., 2006 U.S. Dist. LEXIS 56111 (S.D.N.Y. August 11, 2006)(accord).

Ana suggests that plaintiffs have channeled hundreds of thousands of dollars into homes in the Poconos and Brooklyn. But Ana knows, and real property records show, that the Poconos home was purchased in 2003, before the Mikhlyns were even involved in the embroidery business. Vadim Decl. II, Exhibit I. The Brooklyn home was purchased in 2006, but entirely with borrowed money, consisting of a mortgage of $536,000 and the down payment advanced by Inga's mother. Vadim Decl. II, Exhibit J. Mortgages are, of course, also a matter of public record.

As for plaintiffs acknowledgment that they owe Ana money, that was premised on their belief that Ana was quitting leaving them as the sole remaining owners of the business. Because there was no written agreement governing the partnership, the Mikhlyns asked Ana to hire a lawyer so that the parties could negotiate the buyout.[3] Ana surely cannot be heard to say that plaintiffs believe, *today*, that they owe her a buyout payment when she has effectively seized control of the company by taking over the two main ABC web sites.

It is hardly clear that Ana's claims exceed plaintiffs' claims. The source of Ana's damage claim in the amount of $1,300,000.00 is a mystery. Given the unliquidated nature of both sides' claims, plaintiffs have not demanded a specific damage amount. At a minimum, it is clear that defendants are not "entitled" to a judgment of 1.3 million, they just say they are.

Defendant's assertions about plaintiffs paying themselves whatever they want and engaging in "fire sales" are pure hyperbole and do not, in any event, amount to proof of fraud. Defendants have offered no proof of what, if anything, plaintiffs have paid themselves. The dramatically described

---

[3] The Court might wonder what kind of business thieves would encourage their victim to hire a lawyer.

"fire sales" and "give aways" are actually two for one sales, a common retail strategy that Ana herself has engaged in.

Finally, even if defendants made out a *prima facie* case for attachment, "the issuance of relief remains in the discretion of the Court, because attachment is recognized to be a harsh and extraordinary remedy." <u>JSC Foreign Economic Association Technostroyexport</u>, 306 F. Supp. 2d at 485.

<strong>CONCLUSION</strong>

For the foregoing reasons, the Court should deny defendants' cross-motion in its entirety and enter a preliminary injunction a) directing that the most recent transfer of the ABC sites be cancelled, and that the web sites be returned to Vadim control for the benefit of the partnership; (b) prohibiting defendants from using or claiming exclusive ownership of the names "Anna Bove Collections" "ABC-Cross-Stitch-Patterns.com" and "ABC-Embroidery-Designs.com" or any misleading variation thereof; (c) prohibiting defendants from using the above name as keywords in search engines to steer customers to their new sites; (d) prohibiting defendants from selling design files that were taken from the ABC sites and/or created and paid for by ABC Inc.; and (e) prohibiting defendants from alleging that plaintiffs' sales of designs from the ABC Sites are unlawful, pending the trial of this action.

Date: September 24, 2008

Val Mandel, P.C.
*Attorneys for Plaintiffs*
80 Wall Street, Suite 1115
New York, NY 10005

By: _____
Eric Wertheim (EW-3049)