UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
                                             :

Vadim Mikhlyn, Inga Mikhlyn, and    :
ABC All Consulting, Inc.                 :
                                             :
                       Plaintiffs   :
                                             :
             -against-            : 08 CV. 03367(CPS)
                                             :
Ana Bove, Polina Dolginov          : **DECLARATION OF**
Anna Bove Company, LLC,             : **INGA MIKHLYN IN**
Anna Bove Collections, Inc.        : **FURTHER SUPPORT OF**
and Anna Bove Embroidery Supplies, Inc. : **PRELIMINARY INJUNCTION**
                                             : **AND IN OPPOSITION TO**
                    Defendants. : **CROSS-MOTION FOR**
                                             : **PRELIMINARY INJUNCTION**
------------------------------------X

Inga Mikhlyn declares the following to be true under penalty of perjury:

    1.   I am a plaintiff in this action along with my husband, Vadim, and our corporation ABC All Consulting, Inc.  I submit this Declaration in further support of plaintiffs' motion for a preliminary injunction and in opposition to defendants'' cross-motion for a preliminary injunction.

### The Financial Structure of the Company.

    2.   Because a number of different business accounts and have been referred to by both sides, it would be helpful to

explain and chart, briefly, the company's financial structure. Annexed hereto as <u>Exhibit A</u> is a one page chart identifying various accounts of the embroidery design business and how money flowed through them.

3. Every payment from customers went into a PayPal account,[1] or into either of two accounts with 2checkout.com, which is a service that processes credit card payments (each ABC site had a separate 2checkout.com account).

4. Until October of 2005, every dollar that went into the 2checkout.com accounts went out to the personal accounts of Ana and Polina. We agreed to that arrangement to reimburse Ana and Polina for supplies and to give them a profit.

5. In October of 2005, Polina and Ana transferred the 2checkout accounts to ABC ALL Consulting, Inc. ("ABC Inc."). I am the individual account holder of record.

6. ABC Inc also has an account with Gotham Bank, located at 1412 Broadway New York, New York 10018. Vadim and I set this account up in July 2004. Annexed hereto as <u>Exhibit B</u> is a copy of a Bank Account statement from Gotham Bank, dated July 30, 2004. After October 2005, the money in the 2checkout.com accounts was transferred automatically to ABC Inc.'s Gotham Bank account when the balances reached certain preset minimums.

---

[1] The court is probably aware that PayPal is a popular internet based bank.

7. With respect to the Gotham account, and all other business accounts, Ana has it backwards when she says they are really accounts of "Anna Bove Collections, Inc." Anna Bove Collections was a d/b/a name for ABC Inc. As we have already pointed out, and Ana does not dispute, we did not even come up with that d/b/a name until June 2005. All of the business accounts existed long before then.

8. Everyone - Ana, Polina, Vadim and me - had password access to the eBay, PayPal and 2checkout accounts and, a various times, exercised control over them. Annexed hereto as <u>Exhibits C</u> and D are, respectively, a chat log in which Ana asks me if she could pay the Chinese digitizers and the corresponding PayPal record showing the payment made by Anna. Ana did not need me to report to her about the finances of the business. She could have checked herself.

9. There is not the slightest hint of Ana's allegedly repeated demand for an accounting of the companies' finances or profits in any email or chat log during the entire history of our business relationship.

### Capital Contributions

10. Ana's claim that we contributed no capital to the business is flatly contradicted by documentary evidence. My husband and I deposited nearly $200,000 of our income from his

consulting work into the ABC Inc. bank account. Annexed hereto as <u>Exhibit E</u> is a QuickBooks report showing amounts and sources of those deposits and some of the corresponding deposit slips we have managed to pull together. This money became part of the operating capital of the partnership.

11. We do not dispute that Ana and Polina made contributions, but we believe it is questionable for them to characterize a payment as a capital contribution when the payment is reimbursed. *Every single credit card payment received by 2checkout.com until of October of 2005 was passed through to Ana and Polina to reimburse them for buying supplies, and to give them a profit.* See <u>Exhibit F</u>. Likewise, Ana and Polina were directly reimbursed for the payments reflected in the Spanish language documents attached to Ana's first Declaration. See <u>Exhibit G</u>.

**Ana's Alleged Copyright**

12. Ana is not showing the Court (and apparently failed to show the Copyright Office) the full extent of the pre-existing works and contributions of others that went into "her" designs as well as to the overall content and layout of the business web sites.

13. To create the embroidery designs on the web sites, Ana, and sometimes others, including me, simply selected pre-

existing illustrations, which were then "digitized" into embroidery files by contract workers (in China in recent years but also by family members in years past). These digitized files were then uploaded to the web site servers for sale to customers.

14. In some cases, the pre-existing illustrations were in the public domain. In other instances, we paid for the original illustrations. Annexed hereto, collectively, as <u>Exhibit H</u> are a series of pre-existing illustrations and the nearly identical digitized designs we made from those illustrations.

15. When a pre-existing illustration was in black and white, color would be added, but that was a simple and quick act, often done by the contract digitizers, not Ana. Ana never put a pen to paper to create anything. Several days ago, I contacted one of the digitizers (in Israel) who confirmed that she not only digitized at least five of "Ana's" designs but also did the coloring on her own and even selected the images to be digitized Annexed hereto as <u>Exhibit I</u> is a chain of emails between myself and the digitizer, Ludmila Sonkin.

16. As for Ana's supposed creative selection of fabric and threads, these were no more than recommendations to customers, not elements of her alleged designs. The design files are downloaded by customers and placed in an embroidery machine. The customer then chooses the fabric, thread, and colors to use.

The customer turns the two dimensional design into the final embroidery product, not Ana.

17. Even the handful of designs annexed to Ana's second Declaration, among hundreds that have been on the web sites, is not attributable exclusively to her. I created the font that is the last item in Ana's Exhibit D.

18. Ana's claim to a copyright in the overall look and layout of the web sites is even weaker. First, several elements of the website layout are generic and common to countless retail web sites. Examples from other businesses are annexed hereto collectively as Exhibit J. Common elements include the Top Banner, Top Menu, Left Menu with Categories and other links, Right Bar, Buttom Menu with copyright line, And center field for showing the actual products.

19. Ana's registration says that she created the "artwork" and "text" in the web sites, but Ana had no input into the text because of her admittedly minimal English skills. Over the years, the text was written by me and Polina.

20. The layout of the site pages describing the individual products for sale also was created by me. The right side menu of the home page, displaying the "Most Popular" product, was inserted at my insistence, over Ana's objections.

6

21. In sum, the web site as a whole was a joint creative effort.

Dated:  Brooklyn, New York
        September 23, 2008

_____
INGA MIKHLYN