```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
Vadim Mikhlyn, Inga Mikhlyn, and    :
ABC All Consulting, Inc.            :
                                    :
                    Plaintiffs      :
                                    :
         -against-                  : 08 CV. 03367(CPS)
                                    :
                                    :
Ana Bove, Polina Dolginov           : DECLARATION OF
Anna Bove Company, LLC,             : VADIM MIKHLYN IN
Anna Bove Collections, Inc.         : FURTHER SUPPORT OF
and Anna Bove Embroidery Supplies, Inc. : PRELIMINARY INJUNCTION
                                    : AND IN OPPOSITION TO
                    Defendants.     : CROSS-MOTION FOR
                                    : PRELIMINARY INJUNCTION
------------------------------------X
```

Vadim Mikhlyn declares the following to be true under penalty of perjury:

1. I am a plaintiff in this action along with my wife, Inga, and our corporation ABC All Consulting, Inc. I submit this Declaration in further support of plaintiffs' motion for a preliminary injunction and in opposition to defendants' cross-motion for a preliminary injunction.

**The Records of the Embroidery Design Business, Including the Nearly Constant Email and Intern chats Between the Parties, Refutes Ana's Melodramatic Accusations of Wrongdoing**

2. In our respective reply declarations, my wife and I address Ana's specific assertions.

3. As a general matter, however, Ana's dramatic accusations about how we froze her out of the business and seized the company web sites is not supported by, and is wholly contradicted by, the heavily documented course of communications between and among the partners during the years we worked together.

4. During those years, the parties were in nearly constant communication with each other via email and real time internet "chat." Included herewith as <u>Exhibits A and B</u> are printed logs of our voluminous chats from 2004 to 2008.

5. I have already shown how specific emails and chat logs document crucial facts – such as Polina's resignation, buyout and voluntary transfer of the ABC Site passwords to me, and Polina's admission that Ana resigned in March leaving my wife and I as the remaining principals of the business.[1] I respectfully suggest that the Court rely on the emails and chat logs to determine what did, and what did not, happen between the parties. The Court should be especially suspicious that Ana's more serious allegations about our theft of the business and our repeated refusal to account to her about money are not even

---

[1] More documented evidence that Polina left the company in June 2007: On June 30, 2007, Ana wrote to Inga asking that we stop sending her money via a particular PayPal account because Polina was using it for her new business. Exhibit C.

hinted at in emails and chat logs right up until the day Ana quit the business.

### Our Alleged Salary

6. Ana points to a handful of $1000 wire transfers to us to demonstrate that we (or Inga) received a salary. Ana wants the Court to infer that these $1000 payments represent a pattern. Those payments were not regular or a salary.

7. First, there is an overarching falsehood, by omission, in Ana's description of transfers out of her personal PayPal account. To take money from her PayPal account for any reason, Ana had to first transfer money to a U.S. or Canadian based account because, at least at that time, a person could not make withdrawals from a PayPal account in other places (like Israel). Also, after 2001, a resident here on a tourist visa could not have a U.S. bank account.

8. Turning to the alleged salary payments, those finite $1000 payments represent Ana's reimbursement to us for our payment of her tuition at an Israeli college and money she wanted us to pass through to her parents. The latter is confirmed by an email Polina accidentally copied to us in which she says that payments in January of 2004 were for Tsigelman Natalia, Ana's mother. <u>Exhibit D</u> hereto. If the $1000 transfers

3

are merely examples of salary payments, as Ana claims, there should be hundreds more. Where are they?

9. Also, "payment" is not synonymous with "salary". One can receive payment as a partner, a shareholder, a contractor or an employee. As the Court knows, salary payments are, and legally must, be subject to tax and Social Security withholdings and documented by W2 forms (and other reporting requirements). If Ana was our employer, where is the evidence of withholdings and other legally required documentation of salary payments?

10. Consistent with our status as owners and not mere employees, Inga and I did not receive *any* money from the business until mid 2005, and yet we paid company expenses in 2004 totaling $5,401.49 for items such as Yahoo advertising, Google advertising, and website hosting with our personal credit cards. Annexed hereto as Exhibit E are Credit Card statements showing payments from Vadim and Inga's personal credit card for business expenses. As set forth in Inga's Reply Declaration, we also invested nearly $200,000 of our own money in the embroidery business. Ana needs to explain what kind of employee works to lose rather than make money.

**Our Alleged Frauds And Fabrications**

11. Every single insinuation of fraud and forgery on our part is demonstrably false and, in most cases, remote from the material facts. I will deal with each as briefly as possible.

12. The start date of the ABC All Consulting Quicken reports: Ana is correct that ABC Inc. was not formed until June 2004. That is why there are no *entries* until after that time. January 1, 2004 is simply the beginning of the first calendar year, as well as the first fiscal year of ABC Inc. The key fact is that actual transactional entries are accurate.

13. The Invoice reflecting the Separation Payout to Polina: The invoice, as with others just like it, is an internally generated document for tax purposes. It was created when *Ana* negotiated the separation payment deal with Polina. Similar invoices from the business going back to 2006 have the same address for Polina. Annexed hereto as <u>Exhibit F</u> is an invoice dated July 10, 2006, showing the same address in Israel. As for the supposedly suspicious Brooklyn address, we have had that address, 2536 Harway Ave, as a legal business address since December 2006, before the invoice was prepared. Annexed hereto as <u>Exhibit G</u> is an invoice dated December 28, 2006, showing the 2536 Harway Ave address. The key fact, of course, is that the invoice corresponds to a reality that Polina does not deny - she

left the company in June of 2007 in exchange for $30,000, to be paid in installments.

14. The origin of ABC All Consulting: Ana is partly correct about the word "Consulting" in the corporate name. When we first set the corporation up, my wife and I still operated my consulting business (from which we invested nearly $200,000 into the embroidery business) and anticipated that the corporation would be used, in part, for the consulting business. The "ABC" part of the name, of course, refers to the ABC embroidery design business, which by the summer of 2006, was the exclusive activity of ABC Inc.

15. Domains by Proxy: Domains by Proxy no longer protects my identity in connection with the domains registered in my name. That is because, *after* the events described in my initial Declaration, I decided the service was not worthwhile and cancelled it. Annexed hereto as <u>Exhibit H</u> are e-mails from GoDaddy.com confirming cancellation of Private Registration Services.

**The Alleged Grounds for Attachment**

16. Ana's Assertions about our misappropriation or dissipation of assets are not only false but disturbing. They are disturbing because Ana knows they are false and, at least

with respect to our homes, Ana's attorneys should know they are false because the facts are a matter of public record.

17. The Poconos home was bought in *2003*, before we were even involved in the embroidery business. Ana, my cousin, knew this, and Ana's attorneys did not bother to look at public real estate records to educate themselves about this. Annexed hereto as <u>Exhibit I</u> is the Truth in Lending Disclosure statement, dated July 30, 2003, and received in connection with the mortgage obtained to finance the purchase of the Poconos home.

18. The Brooklyn house was purchased with a loan secured buy a mortgage and a down payment that came from Inga's mother. Annexed hereto as <u>Exhibit J</u> is the recorded Mortgage in the amount of $536,000.00. Annexed hereto, collectively, as <u>Exhibit K</u> are three checks from Elena Leyderman, Inga's mother, for the total amount of $82,000.00, representing the down payment for the Brooklyn house. As with the Poconos home, Ana's lawyers did not bother to check public records before implying that we recently bought two houses with hundreds of thousands of dollars siphoned from the embroidery business. We bought the Brooklyn house because our apartment was not big enough to house our immediate family of four, Ana, Ana's parents and much of the equipment and supplies of the business.

19. The statement that we acknowledge owing Ana money is based on twisted logic and a distortion of my first declaration.

When Ana quit, we believed she was entitled to a buyout of her ownership interest in the partnership, just as Polina was. We were not referring to some fixed profit share that she was entitled to, then or now. Because there is no written partnership agreement governing this situation, we hired a lawyer to handle negotiations with Ana, and suggested that Ana do the same.

20. Of course, our belief that Ana was owed a buyout payment was premised upon Ana quitting and leaving us and the business alone, not surreptitiously seizing the business with Polina's cooperation, effectively putting me and my wife out of work, and daily defaming us to customers. Ana cannot seriously contend that *we still* think we owe her a buyout payment under these circumstances. There is no "buy" without the "out". As a result of Ana's actions, we are the ones who are out.

21. I am simply at a loss to understand where the $1.3 million dollar damage figure comes from, especially in light of Ana's repeated claim that we kept her in the dark about profits.

22. We did not "give away" any products. We have conducted two-for-one sales, an extremely common marketing tactic that Ana herself has used.

23. Apart from these false and baseless allegations, we have done nothing to hide, secret, disguise judgment-proof or

8

dispose of any of our assets at any time before we filed this lawsuit or after.

Dated:   Brooklyn, New York
         September 23, 2008

_____
VADIM MIKHLYN