# VAL MANDEL, P.C.

**Val Mandel**
Member of NY, NJ and DC Bars
e-mail:   vm@valmandelpc.net

**Eric Wertheim**
Member of NY and NJ Bars
e-mail:   ew@valmandelpc.net

**Daniel Akselrod**
Member of NY Bar
e-mail:   da@valmandelpc.net

80 Wall Street, Suite 1115
New York, NY 10005
(212) 668-1700
Fax (212) 668-1701

September 25, 2009

<u>VIA ECF</u>
Honorable Ramon E. Reyes
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   **Vadim Mikhlyn, Inga Mikhlyn and ABC All Consulting, Inc. v. Ana Bove, Polina Dolginov, et al.
Docket No.: 08 CIV. 3367**

Dear Judge Reyes:

    Plaintiffs respectfully submit this letter memorandum in opposition to defendants' blanket designation of all copyright related material as "attorneys' eyes only."

    The parties' exchange of such materials on September 16 confirms that defendants' blanket labeling of all such materials as "attorneys eyes only" is entirely frivolous and largely incomprehensible.

    This is the third time that plaintiffs have had to expend time and money to force defendants to make full disclosure of the materials at the heart of their copyright counterclaims.   If the Court agrees that defendants' continued intransigence is frivolous, we ask that the Court impose sanctions as Your Honor indicated you would the next time a party advanced a baseless position in a discovery dispute.

## ARGUMENT

    The stipulated protective order in this case allows either party to limit the review of documents containing trade secrets to attorneys. [1]

    A trade secret may consist of any formula, pattern, device or compilation of information used in one's business, and that gives the owner an opportunity to obtain an advantage over competitors who do not know or use it.  A trade secret is something that is used in running the business, it is not the product itself.

---

[1] The words "commercially sensitive" appear in many standard form protective orders and were added at our request.  Based upon the case law, the phrase appears to be synonymous with, or a subset of, "trade secret."

Honorable Ramon E. Reyes, Jr.
September 25, 2009
Page 2

Hudson Hotels Corporation v. Choice Hotels International, 995 F.2d 1173, 1176 (2d Cir. 1993).

Factors considered in determining whether information is a trade secret include (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. Id.

A trade secret must be used secretly and continuously in commerce. Once the business owner markets its concept or creation, it "cannot constitute a protectable trade secret because, from that time forward, it could not be used secretly and continuously in its business." Id. at 1177.

## I. There are no Secrets: The Parties' Productions of Copyright Related Documents are Substantially Identical

We will address, below, specific categories of documents produced by defendants but a broad observation at the outset would be helpful, if not dispositive. Apart from the entirely textual legal copyright documents discussed in Point II, there is no category of design related materials produced by defendant that is not also found in plaintiffs' production. Both productions contain (a) an identical set of digitized designs, (b) an overlapping if not identical set of pre-existing, public domain artwork that the copyrighted designs were derived from, and (c) voluminous emails with the outside contractors who digitized the artwork.

This cannot be a surprise to defendants because, until their unfortunate falling out, the parties worked and lived together in the same house (plaintiffs' house), did all of their work on the same computer servers, received and sent e-mail through a common mail inbox open to all, and e-chatted with each other on a daily basis about digitizing and all other aspects of the business. In fact, months before the Court ordered September 16 exchange, we produced hundreds of emails between the company and outside contractors who digitized the artwork. Defendants cannot assert any good faith basis for designating as "attorneys eyes only" documents that they know were and are in plaintiffs' possession.

## II. The Copyright Status Documents have no Competitive Value and are Available to Plaintiffs at the Copyright Office

Defendants produced 137 copyright certificates, 5 copyright assignments, and a partnership agreement between defendants Ana Bove and Polina Dolginov.

Honorable Ramon E. Reyes, Jr.
September 25, 2009
Page  3

None of these documents contains anything that could be remotely construed as a trade secret.  They contain no "formula, pattern, device or compilation of information used in [defendants'] business, they contain nothing "that gives [defendants'] an opportunity to obtain an advantage over competitors."  The copyright certificates briefly and simply identify, by name and category, copyrighted works and who purports to own or have rights in them.  Defendants' formal copyright documents are not only competitively valueless but available as a matter of law to plaintiffs and everyone else in the world in the Copyright Office.  See 17 U.S.C. § 705.

Defendants could not have, for a moment, considered their obligations under Rule 11 and broadly designated these materials as "attorneys' eyes" only.  See Fears v. Wilhelmena, 2003 U.S. Dist. LEXIS 12850 (S.D.N.Y. July 25, 2003)(court will not hesitate to impose sanctions for bad faith "attorneys eyes only" designation).

### III.   The Digitized Artwork is not a Secret

Plaintiffs and defendants exchanged an identical set of digitized designs, which, again, is no surprise.  They are the digitized designs that the parties sold when they were in business together and which they both sell on their competing web sites.  Plaintiffs' possession and sale of these materials is the very reason defendants have advanced copyright counterclaims in this action.
There can be no good faith argument for "attorneys eyes only" treatment of these designs.  Each side (a) has the designs (b) each side knows the other side has them, and (c) anybody who looks at either side's web site can see the designs and copy protectable or unprotectable elements from them if they are so inclined.

### IV.   The Original Artwork is in the Public Domain

Plaintiffs produced many copies of the public domain art work that the disputed designs were derived from, but there may be some originals of pre-existing artwork that Ana took with her of which plaintiffs do not have copies.  These originals of pre-existing artwork, however, cannot be withheld from plaintiffs for several reasons.  First of all, the original artwork was taken from the public domain and is therefore, by definition not a trade secret.   See Hudson Hotels Corporation, 995 F.2d at  1176-77; Kublan v. Hasbro, 1999 U.S. Dist. LEXIS 3226 (S.D.N.Y. March 23, 1999).

Second, defendants' copyrights apply, at most, to anything original they added to the public domain artwork. Plaintiffs cannot determine the protectable (if any) parts of designs they are being accused of copying without seeing the unprotectable part, and plaintiffs cannot explain to their attorneys or testify about how any particular pre-existing artwork was altered or added to without seeing the

Honorable Ramon E. Reyes, Jr.
September 25, 2009
Page 4

artwork in its original form.

Third, the idea that these materials are secret is an after the fact invention. Before this dispute, they were freely available to plaintiffs and no effort was made by Ana to keep them secret or protect them from disclosure to anyone. Not only were they available to plaintiffs but they were routinely sent to outside contractors without any contractual restrictions or secrecy agreements. These outside contractors were hired and paid by ABC All Consulting, Inc., one of the plaintiffs in this case, not Ana Bove personally, and until this dispute arose, ABC was consistently represented by the business to be the holder of any applicable copyrights.

Finally, the copyrighted designs themselves embody the original artwork plus the elements added to them in the digitizing process. These designs have been made public through the defendants' website. Anyone, not just plaintiffs, can copy anything they want from any design by simply looking at it. Whatever (if any) protection may subsist in these designs is copyright protection which does not depend on any kind of secrecy or confidentiality. Ana's alleged concepts and creations have been marketed and are thus no longer trade secrets. See Hudson Hotels Corporation, 995 F.2d at 1176-77.

## V. Communications with Third Party Digitizers Were not and Are not Secret

As already noted, plaintiffs produced hundreds of these e-mails months before the Court ordered exchange. To the extent either side does not have a complete set of such e-mails, it is completely fortuitous.

Even if plaintiffs did not have the e-mails produced by defendants, it is impossible to see what could be construed as a trade secret in them. They are mundane instructions and guidance passed on to the outside contractors who actually created the digitized designs and who were not bound by any agreement to keep the communications secret. To the extent these communications with the outside digitizers led to anything the law recognize as protectable, it is the original (new) parts of the tangible, fixed digitized designs that are in dispute, not Ana's alleged ideas. See Zitz v. Pereira, 2000 U.S. App. LEXIS 22418 (2d Cir. 2000). And again -- it cannot be over-emphasized -- both parties have possession of the tangible, fixed designs and are selling them on their web sites.

## VI. Defendants' Real Argument has Nothing to Do With Trade Secrets

Defendants' counsel stated his rationale for withholding any or all of these documents from plaintiffs at the conferences held on June 18, 2009 and September 9, 2009. The gist of the argument was that if plaintiffs were allowed to

Honorable Ramon E. Reyes, Jr.
September 25, 2009
Page 5

see Ana's creative documents before a simultaneous exchange, plaintiffs would claim that they had one or more of the creative items all along and that they originated with plaintiffs, not Ana Bove. Defendants' professed concern was addressed by the simultaneous exchange that took place on September 16. Your Honor made clear at the last conference that neither side would be allowed to produce documents evidencing their creative contribution after September 16.

Furthermore, defendants' reasoning has nothing to do with trade secrets and everything to do with honesty. Defendants claim to fear that if plaintiffs are allowed to see their evidence, it will help plaintiffs to shape or create falsehoods about the parties' respective contributions to the disputed designs. Suffice it say that (a) plaintiffs have the same doubts about defendants' veracity as defendants have about theirs, and (b) parties in many cases have the same concern. Full disclosure educates the litigants and helps them prepare their testimony in ways legitimate and sometimes, unfortunately, illegitimate.

Nonetheless, since their adoption in 1938, the Federal Rules of Civil Procedure embody a policy favoring full disclosure rather than the former practice of "trial by ambush." See Ginns v. Towle, 361 F.2d 798, 801 (2d Cir. 1966); Point Prods. A.G. v. Sony Music Entertainment, Inc., 2002 U.S. Dist. LEXIS 24450 (S.D.N.Y. December 19, 2002). That is why plaintiffs have already produced many thousands of pages of documents – from financial records, to designs, to e-mails – without yet designating any as "attorneys eyes only" even though we have the same concerns as defendants, and can point to instances where defendants have already tailored their stories and legal theories to the evidence.

Third, as the Court itself has pointed out, nothing prevents plaintiffs from claiming credit for creative input to any or all of the designs in dispute. At the risk of repeating ourselves *ad nauseum*, plaintiffs have and have always had every design in dispute.

Finally, the voluminous exchanged productions reveal defendants' professed concern about dishonesty to be baseless and insulting to plaintiffs. We challenge defendants to identify any part of the exchanged productions which reveals a single document among the thousands exchanged on September 16 that is fraudulent, a forgery, or even reveals a conflict about any act of creativity underlying the disputed designs.

### VII. Attorneys Eyes Only Treatment Creates Burdens, Expense and Delays for Both Sides

"Attorneys Eyes Only" treatment advances no legitimate purpose but imposes severe burdens on both sides. For one thing, the volume of materials

Honorable Ramon E. Reyes, Jr.
September 25, 2009
Page 6

exchanged on September 16 is massive. We produced 135 discs; defendants produced 52 discs of data plus 137 hard copy registration certificates. Individual discs often have close to 700 megabytes of files. To force attorneys to review it all without the assistance of clients will be extremely expensive and slow.

As noted, there is a substantial overlap between the productions but to be certain of what we have and do not have, it will take many hours of expensive attorney time. The parties know these materials well. The attorneys do not.

The systematically disjointed manner in which defendants produced their copyright material greatly adds to the burden. Defendants did not produce a single digitized design or underlying item of artwork *with* the copyright registration it corresponds to. As a result, there is no obvious, reasonably prompt way to match up the artwork and designs with the registrations that go with them and we, as attorneys, may not be able to do it at all. Among other things, the defendants should be compelled to amend the production to match the artwork and designs with each registration.

Both productions include many images that can only be viewed with special software used by the parties in their businesses. As things stand now, the attorneys for both sides will have to buy the software or tie up one or more of their clients' computers for an indefinite, extended period to review the great volume of images on the discs.

## CONCLUSION

Defendants' labeling of their entire September 16 production as "attorneys eyes only" is baseless and dilatory. Defendants should be compelled to drop the "attorneys eyes only" and, consistent with the Court's warning at the last conference, defendants should be sanctioned. Furthermore, defendants should be compelled to amend their production to include each design and related original artwork along with their corresponding copyright registration.

Respectfully submitted,

Eric Wertheim

EW/da
Encl.

cc: Boris Kogan, Esq. (via fax)
Peter L. Berger, Esq. (via fax)