**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
VADIM MIKHLYN, INGA MIKHLYN,
and ABC ALL CONSULTING, INC.,

                        Plaintiffs,

          -against-

ANA BOVE, POLINA DOLGINOV,
et al.,

                        Defendants.

-------------------------------------------------------X

**REPORT &**
**RECOMMENDATIONS**

08-CV-03367 (ARR)(RER)

**RAMON E. REYES, JR., U.S.M.J.:**

      Vadim Mikhlyn ("Vadim"), Inga Mikhlyn ("Inga"), and ABC All Consulting, Inc. ("ABC,

Inc.") (collectively, "Plaintiffs") brought this action against Ana Bove ("Ana"), Polina Dolginov

("Polina"), Anna Bove Company, LLC, Anna Bove Collections, Inc.[1] and Anna Bove Embroidery

Supplies, Inc. (collectively, "Defendants") for trademark infringement, unfair competition, and related

common law claims.  Ana and Anna Bove Company, LLC asserted counterclaims against Plaintiffs

for, *inter alia*, copyright infringement, trademark infringement, cybersquatting, breach of contract and

conversion.

      On June 30, 2010, Plaintiffs filed a motion for sanctions pursuant to Rule 37.  (Docket No.

130.)  The Honorable Allyne R. Ross referred the motion to me for a report and recommendation

---

[1]  According to the parties, Anna Bove Collections, Inc. is a DBA for ABC, Inc., and was mistakenly sued in this matter.  (Transcript for January 4, 2011 Hearing ("Hearing Tr."), dated Jan. 11, 2011, at 71-72.)  Accordingly, the caption should be amended to remove Anna Bove Collections, Inc. as a defendant.

pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket No. 133.)[2] For the reasons set forth below, I respectfully recommend that Plaintiffs' motion for sanctions be granted to the extent provided below.

## BACKGROUND

The parties have been engaged in very contentious litigation for over two years. The alleged facts giving rise to the claims and counterclaims asserted in this action are fully set forth in the Memorandum and Order of the late Honorable Charles P. Sifton granting in part and denying in part Plaintiffs' request for a preliminary injunction, and denying Defendants' request for a preliminary injunction. (Docket No. 44.) The motion before me, however, does not relate to the underlying factual claims, but primarily to events happening throughout the course of discovery, so in the interest of time and brevity, I will focus on the course of litigation to date and rely on Judge Sifton's Memorandum and Order for recitation of the substantive claims.

## I.      Preliminary Injunction Proceedings

From the outset of this litigation, the parties difficulty cooperating. For example, Defendants sought Plaintiffs' consent for an eight-day extension of time to file a response to and cross-motion for a preliminary injunction, but the discussions devolved into an email fight over whether notice could be sent to Plaintiffs' customers advising them of the lawsuit in exchange for consent to the extension. (Docket Nos. 9 and 10.)[3] Less than a month later, Judge Sifton granted Plaintiffs' preliminary

---

[2] At the same time, Plaintiffs filed a motion for default judgment pursuant to Rule 55 against the corporate defendants. On the record at the January 4, 2011 hearing on the sanctions motion, I recommended that Judge Ross deny Plaintiffs' motion for default judgment against the corporate defendants since the Levisohn Berger firm had since made an appearance on the corporate defendants' behalf. Judge Ross adopted this recommendation and denied this part of Plaintiffs' motion. (Docket No. 188.)

[3] In the email chain provided in their opposition to the extension, Plaintiffs insisted that Defendants consent to the disclosure "of the pendency and procedural posture" of litigation to

injunction in part and prohibited Defendants from "a. alleging that plaintiffs' sales of designs from the ABC Sites are unlawful; b. claiming exclusive ownership of and right to use the 'ABC' and 'Anna Bove' family of trademarks." (Docket No. 45.) Plaintiffs filed a letter requesting court intervention within three weeks of the order claiming, *inter alia*, that Defendants were in violation of the Court's injunctive order due to language on their website. (Docket No. 49.) Defendants responded that they viewed Plaintiffs' initial request as overreaching the parameters of the injunctive order, and on this occasion indicated their willingness to come to an agreement regarding language which would satisfy both parties. (Docket No. 51; *see also* Docket No. 49 (letter submitted with Plaintiffs' request evidencing Defendants' intent to curb website language).) Judge Sifton denied the request for intervention, without prejudice to the filing of a motion seeking contempt if appropriate.[4] (Docket Entry, 11/13/2008.) These disputes took place before the initial conference had even been scheduled and are not detailed herein as discovery misconduct, but to provide context for the inevitably harrowing discovery process that followed.

## II.    Discovery Proceedings

On November, 20, 2008, the proceedings before me began with an initial conference during which discovery was set to close May 18, 2009. (Docket Entry, 11/20/2008; Docket No. 55.) By the first status conference of January 27, 2009, Rule 26 disclosures were complete and document discovery was proceeding. (Docket Entry, 1/27/2009.) The parties soon sought court intervention

---

their customer base; Defendants responded that such consent was unnecessary since either party was free to disclose to their customers information that was a matter of public record, but cautioned that Plaintiffs be careful what they disclosed "lest [they] run the risk of defamation." (Docket No. 10.) Judge Sifton ultimately granted the extension, and reminded Plaintiffs of their recourse of a Temporary Restraining Order (Docket No. 11) in the light of what Plaintiffs referred to as "truly urgent circumstances" that the Court hear the preliminary injunction without delay. (Docket No. 10.) The TRO was ultimately denied. (Docket No. 20.)

[4] No such motion was ever filed.

when Defendants filed an amended answer with amended counterclaims on February 18, 2009. Plaintiffs argued that the amended pleading should be rejected because Defendants were required to file a motion to amend by the scheduling order deadline, and since they did not, they were required to establish good cause to amend their pleading late. (Docket No. 64.) Plaintiffs' argument with respect to the timeliness of the pleading was rejected, and the amended pleading was accepted in part.[5] (Docket Entry, 4/7/2009.)

Less than a week before discovery was initially scheduled to close, the parties again sought court intervention—this time because Plaintiffs complained that Defendants "simply stopped responding" to their communications regarding discovery. (Docket No. 71.) Plaintiffs' April 22, 2009 response to Defendants' April 17 letter indicated that disputes had arisen over the production of certain documents, including financial documents and MSN chat logs, and that Plaintiffs sought to schedule party depositions in light of the impending final pretrial conference. (*Id.*) Plaintiffs' submitted to the Court two letters they sent to Defendants, each indicating that they had received no reply to the first letter. (*Id.*) Additionally, the second letter noted that among other documents, the Defendants' MSN chats and emails were still missing. (*Id.*) In response, Defendants claimed that Plaintiffs were also at fault for the breakdown in communication, and in turn submitted a letter sent to Plaintiffs which listed documents that still had not bee produced to Defendants, including various electronic and financial information. (Docket No. 72.)

At the final pretrial conference that followed, I attempted to address the myriad issues the parties raised. A major concern at the time was discovery of electronically stored information.

---

[5] Plaintiffs also objected to the amended pleadings because they asserted that this Court lacked subject matter jurisdiction over belatedly filed copyrights. (Docket No. 64.) Based in part on this argument, the amended pleading was rejected as to any copyrights not yet filed, but accepted as to all copyrights that were already registered and would be deemed accepted upon registration of those copyrights for which registrations had already been filed. (Docket Entry, 4/7/2009.)

Plaintiffs asserted that they had produced over 1500 pages of MSN chats and hundreds of emails—between parties and/or third parties—whereas Defendants had produced only four pages of chats and no emails "between them" even though several emails between Ana and Polina were discovered and produced by Plaintiffs. (Docket No. 77 at 4-5.) According to Plaintiffs, "there[] [was] no reason why there shouldn't [have] be[en] thousands of chats and emails on one or both of [Ana's and Polina's] computers." (*Id.* at 5.) Plaintiffs recognized at the time that either they would have to get copies of Ana's and Polina's hard drives or "get into spoliation practice." (*Id.* at 5-6.)

Defendants, through then-counsel Boris Kogan & Associates (the "Kogan firm"), explained that the emails and internet chats came from a computer that was still in Plaintiffs' possession, which was where the copies of those files remained.[6] (*Id.* at 6.) Polina's computer had crashed several times, which was why she had little electronic information to produce. (*Id.* at 10.) And finally, Defendants maintained that MSN chats are only logged at the behest of the user, and since they never saw cause to log conversations, they had very few such chats in their possession, as opposed to Plaintiffs. (*Id.* at 7.) Defendants noted that they had provided copious emails to and from customers because those were documents they had made an effort to preserve during the course of regular business. (*Id.* at 9.) Defendants further noted objection to the blanket request for every communication between Ana and Polina, arguing that conversations unrelated to the business had no relevance to the case. (*Id.* at 10-11.) Plaintiffs asserted, however, that seemingly innocuous daily chatter between Ana and Polina may provide subtle information in support of Plaintiffs' theories of the case. (*Id.* at 11-12.)

---

[6] In subsequent depositions and a hearing, Ana has since explained that she erased the hard drive before returning the computer to Plaintiffs; however, this was apparently just a simple deletion of files and not reformatting the hard drive, and so some (if not most) files may have been recoverable on the computer in Plaintiffs' possession. (Hearing Tr. at 31-32; Declaration of Eric Wertheim in Support of Plaintiffs' Motion for Sanctions ("Wertheim Decl."), dated June 11, 2007, Exh. 20 at 235-236.)

I ruled that Plaintiffs are not entitled to *every* communication between Ana and Polina, but those with subtleties of the case were discoverable.  (*Id.* at 13-14.)  At the time, I also indicated that since the hard copies of information on computers were lost, the parties should subpoena the internet service providers ("ISPs") and devise a system for preventing irrelevant and privileged information from being divulged.  (*Id.* at 15, 16.)

At the conference, the parties also argued about the relevance of personal versus business financial documents, redaction of said documents, and relevance of post-separation[7] documents.  (*Id.* at 25-48.)  I ruled that personal financial records were "fair game," with the parties to determine what information should be redacted.  (*Id.* at 36.)  As to whether post-separation financial documents were discoverable, Defendants maintained that such documents were relevant to damages only, and as such argued for bifurcated discovery leaving such documents for "damages" discovery to occur only after a finding of liability.  (*Id.* at 39-44; Docket No. 76.)  Plaintiffs maintained that there was no cause to bifurcate discovery, and so the post-separation documents were discoverable, (Docket No. 78); I agreed, (Docket Entry, 7/7/2009).[8]  At the close of the conference, I instructed the parties that by the next status conference (September 9, 2009) they were to complete document discovery and be ready to take depositions.  (*Id.* at 61.)  The final pretrial conference was rescheduled for December 22, 2009.  (*Id.*)

Prior to the September 9th conference, Plaintiffs again requested court intervention.  (Docket No. 80.)  Plaintiffs alleged, *inter alia*, that Defendants had again stopped communicating with them.

---

[7]  This refers to the period after Ana moved out of the Mikhlyns' home, and the parties ran competing businesses—beginning in spring 2008.  In their correspondence and conversations with me, the parties sometimes referred to this as the post-divorce or post-marriage period.

[8]  As addressed herein, Plaintiffs assert that this constituted a motion to compel; however, the ruling was made to settle objections to certain document requests.  Although implicitly, once the documents were ruled discoverable, they should have been produced as a matter of course.

(*Id.*)  Defendants lodged similar allegations back at Plaintiffs.  (Docket No. 81.)  I addressed the

parties' disputes at the scheduled September 9, 2009 conference.

At the conference, Plaintiffs asserted that their second request for documents had not been

answered, to which Defendants asserted the delay was due to a lack of protective order.  (Docket No.

86 at 3-4.)  Since the parties agreed to a particular draft of the stipulation and protective order on the

record, I ruled that the documents should be produced within a week.  (*Id.* at 4.)  Discovery of

electronic communications was again a point of contention.  Plaintiffs asserted that Defendants were

not responding to their requests to put a system in place for dealing with the documents subpoenaed

from ISPs, and that ISPs required a court-order or consent before they would release documents.  (*Id.*

at 24-25.)  Defendants objected to the scope of the subpoenas that were already served in that they

would result in the production of attorney-client communications and post-separation

communications, which Defendants asserted were irrelevant.  (*Id.* at 25-27.)  I ruled that pre- and

post-separation communications were all discoverable, with documents produced by ISPs to be

screened by the non-requesting party for privilege.  (*Id.* at 29, 30, 33.)[9]

Pursuant to my order, the parties filed the stipulation and protective order shortly thereafter.

(Docket No. 84.)  However, a dispute arose over "attorneys eyes only" documents disclosed the

following week, necessitating yet another discovery conference before me.  On November 2, 2009,

the parties appeared again; this time Plaintiffs complained about Defendants blanket designation of

documents as attorneys eyes only that did not warrant such protection.  (Docket No. 91.)  After

lengthy discussion, it was determined that not all documents so designated warranted protection, and

Defendants were ordered to go through the documents and separately assert protection only for those

---

[9]  It should also be noted that Defendants took issue at this conference with the manner in
which Plaintiffs responded to interrogatories.  Plaintiffs were admonished for not pointing to
specific documents in response to each interrogatory, and were ordered to go back and answer
the interrogatories appropriately.

documents that warranted it; both parties were admonished that blanket designations should not be made. (Docket No. 93 at 24-25.) Neither party had conducted a single deposition yet, despite the fact that discovery was scheduled to end in less than two months. (*Id.* at 41.) The parties were cautioned to document every phone call, every letter, every request and if necessary, come back with a Rule 37 motion that satisfied me that the discovery delays were due to the other side's "dragging its heels." (*Id.* at 47-48.)

Thereafter, the parties appeared to be working together productively for a time and stipulated to a one-month extension for the close of discovery to January 26, 2010. (Docket No. 95; Docket Entry, 12/15/2009.) Given their newfound ability to cooperate, the parties jointly requested an informal, off-the-record conference to resolve their remaining discovery issues. (Docket No. 96.) At this December 22, 2009 conference, the parties discussed the issue of privileged emails and were attempting to resolve it though no formal solution had been reached. (Docket Entry, 12/22/2009.)

Shortly thereafter, Defendants requested another discovery extension asserting that counsel was unable to complete the necessary depositions for personal reasons, (Docket No. 97); I granted the request over Plaintiffs' opposition, extending the close of discovery to March 5, 2010. (*See* Docket Entry, 1/26/2010; Docket No. 98.) Finding good cause, I granted another extension of discovery due to defense counsel's personal reasons, and set the close of discovery for May 7, 2010. (Docket Entry, 3/6/2010.) I warned the parties, however, that if either side failed to satisfy completely their discovery obligations by the May 7 deadline, the Court would entertain a motion for sanctions and *if appropriate*, recommend dismissal or default judgment against the offending party. (*Id.*) At that time, however, Plaintiffs' objected to the request asserting that they had produced all requested documents, and were merely awaiting Defendants' document production. (Docket No. 101.) Plaintiffs also acknowledged that *none* of the party depositions were complete. (*Id.*)

On May 3, 2010, the Kogan firm moved to withdraw as counsel.[10]  (Docket No. 102.)  Upon

granting the request, the firm was ordered to produce all additional discovery materials in its

possession by May 26, 2010.  (Docket Entry, 5/11/2010.)  The Kogan firm belatedly produced the

discovery materials on June 1, 2010, but improperly designated the entire batch of documents as

attorneys eyes only.  (Docket No. 117.)  I ordered the designation removed from the improperly

designated financial records the day after Plaintiffs brought the matter to my attention.  (Docket Entry,

6/15/2010.)  Plaintiffs filed the instant motion for sanctions on June 30, 2010, but due to various

requests for extensions, the motion was not fully briefed until September 17, 2010.


### III.    Hearing on Motion for Rule 37 Sanctions

On January 4, 2011, I held a hearing to discuss the motion for Rule 37 sanctions.  As

discussed in more detail below, Plaintiffs argue that default judgment is an appropriate sanction

because of general discovery misconduct, dishonesty, and the non-production and suppression of

documents; however, I called the hearing specifically to discuss the issue of missing documents.[11]

Since the arguments regarding non-production of internet communications essentially boiled

down to Plaintiffs claiming things must still exist that have not been produced and Defendants

---

[10] The reasons for counsel's withdrawal are irrelevant.  Suffice it to say that the
withdrawal was appropriate.

[11] On August 20, 2010, Defendants had also filed three motions, requesting (1) removal
of the attorneys eyes only designation from certain financial documents, (2) an "independent
financial" audit and (3) severance of the intellectual property claims from the "financial
infringement" claims.  (Docket No. 145.)  On September 1, 2010, Defendants filed another
motion requesting removal of the attorneys eyes only designation from "PayPal" documents.
(Docket No. 140.)  At the hearing, I rendered my decision on each of these motions: (1) granting
the request to remove attorneys eyes only from financial documents with the caveat that
commercially sensitive information be redacted, (2) denying the request for an independent
financial audit, and (3) recommending on the record that the motion for severance be denied.
(Docket Entry, 1/4/2011.)  In the interim, Judge Ross adopted my recommendation to deny the
motion for severance.  (Docket No. 188.)

maintaining that everything they have has been produced, I told the parties that the report and recommendation on sanctions would be put on hold pending expert hard drive imaging and analysis performed on each relevant computer. The imaging would be used to establish what files exist(ed) on the computers and what files were deleted and when. (Hearing Tr. at 53-56.) I explained that the resulting expert reports would weigh heavily in my recommendations. (*Id.* at 73.)

Regarding the outstanding financial documents, I directed the parties to cooperate in obtaining them from the financial institutions as explained in more detail below. (*Id.* at 62-65.) Finally, upon learning that party depositions were not complete, I directed the parties to submit an iron-clad final deposition schedule within two weeks. (*Id.* at 82-83.)

Three days later, Plaintiffs objected to the course of action ordered at the hearing on the ground that they had already expended a great deal of money litigating the sanctions motion, that further discovery would be costly, and that they generally objected to the reopening of discovery, even for these limited purposes. (Docket No. 185.) In light of Plaintiffs' objections, I granted a stay on all discovery until the Court rules on the motion for sanctions. (Docket Entry, 1/11/2011.)

## DISCUSSION

Plaintiffs request that the Court enter default judgment against Defendants for chronic discovery misconduct, defiance of court orders, and dishonesty. (Memorandum of Law in Support of Plaintiffs' Motion for Sanctions and a Default Judgment ("Pl. Mem."), dated June 11, 2010, at 17.) Plaintiffs offer several factors upon which they argue default is the appropriate sanction: defiance of court orders, repeated discovery extensions and non-compliance with deadlines, repeated warnings of the consequences of non-compliance, and suppression and withholding of evidence.[12] (*Id.* at 18-24.)

---

[12] Plaintiffs also claim to have been prejudiced "by defendants failure to complete depositions," (Pl. Mem. at 22-23); however, their argument in this respect is not clear. They have apparently deposed Ana on multiple days, but have not gotten to the subject of copyrights

In response to Plaintiffs' motion for sanctions, pro se defendants, Ana and Polina, argue principally that they complied to the extent possible with the requests of their former counsel to produce documents and information as required. (Memorandum of Law in Opposition for Plaintiffs' Motion for Sanctions and a Default Judgment ("Def. Opp."), dated Aug. 20, 2010, at 34-36, 38.) They claim that they had no knowledge of any discovery issues or failure to produce, and that they should not be held responsible for any discovery shortcomings of their former attorney.[13] (*Id.*) Defendants also take issue with the characterization that only Defendants were remiss in meeting their discovery obligations. (*Id.* at 36-37.) Finally, they argue that there is no prejudice from the alleged existence of unproduced emails and internet chats. (*Id.* at 45-48.)

Despite Plaintiffs' laundry list of factors that purportedly weigh in favor of granting default judgment, Defendants' behavior during discovery does not rise to the level of extreme misconduct that warrants imposition of litigation-ending sanctions. However, due to the prejudice to Plaintiffs in the delayed discovery process, I recommend lesser sanctions as indicated below.

## I.     Failure to Obey Discovery Orders & Comply with Discovery Obligations

Rule 37 of the Federal Rules of Civil Procedure allows the court to sanction parties for failure to obey discovery orders or comply with discovery obligations. The determination of appropriate

yet. (Hearing Tr. at 82-83.) Defendants, on the other hand, asserted that while they might like additional time to depose Inga, they were willing to go straight to trial. (*Id.* at 83.) As explained at the hearing, to the extent there are party depositions to complete, they should submit a final joint schedule with dates and times. However, nothing alleged in Plaintiffs' papers or at the hearing warrants sanctions against Defendants on this basis. Defendants (at least Ana) have appeared for multiple days of deposition, and are not otherwise alleged to have been uncooperative at these sessions.

[13] Additionally, Defendants lodge objections to many of the substantive facts of the underlying claims as set out by Plaintiffs in the instant motion and also Plaintiffs' characterization of Judge Sifton's preliminary injunction order, (Def. Opp. at 4-34); however, resolving these factual disputes has no bearing on the outcome of the motion for sanctions or default judgment.

sanctions is within the court's discretion; however, sanctions may include: ruling certain facts to be established against the disobedient party, precluding the introduction of evidence, or rendering default judgment against the disobedient party. FED. R. CIV. P. 37(b)(2)(A). Instead of, or in addition to, the aforementioned sanctions, the court must order the disobedient party (or his/her attorney) to pay reasonable costs, including attorney's fees, resulting from the failure to comply, unless the failure was justified or other circumstances exist that make such an award unjust. FED. R. CIV. P. 37(b)(2)©. The purpose of such sanctions is three-fold: to ensure that the disobedient party does not benefit by their wrongdoing, to deter future misdeeds by the non-movant, and as a general deterrent to all attorneys to prevent non-compliance with discovery orders. *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639 (1976) (per curiam)).

The most severe of the Rule 37 sanctions, such as dismissal or default judgment, are warranted only when the non-movant acted willfully, in bad faith or was otherwise at fault for his or her failure to comply, and when the non-movant had specific notice that failure to comply could result in litigation-ending sanctions. *Simmons v. Abruzzo*, 49 F.3d 83, 88 (2d Cir. 1995); *Montblanc-Simplo GmbH v. Colibri Corp.*, 692 F. Supp. 2d 245, 251 (E.D.N.Y. 2010) ("Rule 37 . . . does not authorize a sanction terminating the case where the 'failure to comply [with a pretrial production order] has been due to inability, and not to willfulness, bad faith, or any fault' on the part of the party against whom sanctions are sought.") (quoting *Societe Int'l v. Rogers*, 357 U.S. 197, 212 (1958)). Accordingly, in determining whether such a sanction is appropriate, the court should consider: (1) the party's culpability or fault in the failure to comply, (2) the adequacy of notice to the litigant of potential litigation-ending sanctions and (3) the availability and efficacy of lesser-sanctions. *Montblanc-Simplo GmbH*, 692 F. Supp. 2d at 252 (citing *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852 (2d Cir. 1995)). The court may also consider the party's history of non-compliance and amount of time

that the party was given to comply.  *Sony BMG Music Entm't v. Thurmond*, No. 06-CV-1230, 2009 WL 4110292, at *3 (E.D.N.Y. Nov. 24, 2009).  That a party is proceeding pro se does not preclude an award of sanctions generally, or even the harshest sanction of dismissal or default judgment.  *Id.* at *2, 3 (granting default judgment against a pro se defendant and collecting cases where the Second Circuit has upheld sanctions, such as dismissal or default judgment, against pro se litigants).

Plaintiffs first assert that Defendants continually disregarded discovery orders throughout the course of litigation, but point to only one specific instance in which a specific court order was disregarded.  (Pl. Mem. at 18-19.)  Plaintiffs cite the Kogan firm's belated production and blanket designation of documents as attorneys eyes only upon withdrawal from this case as evidence of defiance of court orders.  (*Id.*)  Although it is true that I admonished the parties to not so designate documents, there was no benefit to Defendants in the blanket designation since I promptly responded to Plaintiffs' request to strike the designation from the  financial records.  Moreover, although this was indeed counsel's final act representing Defendants and the failures of counsel are generally attributable to their clients, there is no evidence that the blanket designation was willful or in bad faith, or for that matter any fault of the now pro se individual defendants.

As for Plaintiffs' general attack of Defendants' non-compliance with discovery orders, Plaintiffs cite their request for two conferences before me as evidence of Defendants' "flat out refusal" to cooperate with Plaintiffs throughout the course of discovery.  (Pl. Mem. at 18 (citing Wertheim Decl., Exhs. 12 and 14)).  It should be noted that although Plaintiffs lodge a number of attacks against Defendants' behavior during discovery, Plaintiffs' own behavior has fallen short of exemplary.  With every request for court involvement by Plaintiffs alleging defense counsel's unresponsiveness came a prompt response from Defendants alleging Plaintiffs' discovery deficiencies.  To categorize the entire "long and torturous history of discovery" (Pl. Mem. at 9) as solely the fault of Defendants is misleading, and frankly, unfair.  With that said, I acknowledge that

without court intervention, Defendants repeatedly failed to respond to Plaintiffs' discovery requests, such as attempts to set dates for depositions and to produce certain documents, necessitating discovery motions.  (*See* Docket Nos. 71 and 80.)

Plaintiffs also note that Defendants have had more than sufficient time to comply with their outstanding discovery obligations, since discovery has continued for over 18 months, and that Defendants were warned that failure to comply with my March 6, 2010 order could result in a recommendation for litigation-ending sanctions.  (Pl. Mem. at 19-20.)  Plaintiffs are correct in both regards, and these factors are relevant to the consideration of their request for an award of default judgment as a sanction.  However, even where both of these factors are established, the harsh sanction of default judgment is inappropriate without some showing of willfulness, bad faith or fault.

Although such culpability may be established by a long history of non-compliance in the face of repeated warnings of possible sanctions, cases where default judgment has been granted involve not merely repeated need for court intervention, but court intervention coupled with the offending party ignoring and defying court orders.  *See, e.g.*, *Bambu Sales, Inc.*, 58 F.3d at 853 (affirming default judgment where defendant ignored a court order to submit to deposition for five months and failed to produce documents that were admitted to exist for more than fifteen months); *Valentine v. Museum of Modern Art*, 29 F.3d 47, 48-49, 50 (2d Cir. 1994) (affirming default judgment where pro se party repeatedly failed to show up for court-ordered depositions and told the court he did not show up because he believed he need not follow court orders); *Montblanc-Simplo GmbH*, 692 F. Supp. 2d at 252 (granting default judgment for a party's "wholesale refusal to provide discovery"); *Sony BMG Music Entm't*, 2009 WL 4110292 at *3 (granting default judgment where the pro se defendant failed to appear at no less than 3 conferences, failed to respond to any discovery requests, refused to appear at agreed-upon depositions, and did not respond to messages or the motion for sanctions).

Here, Defendants responded to court intervention. Unlike the litigants in cases cited by Plaintiffs, Defendants did not ignore court orders and gave cause for requests for extensions of discovery deadlines. A chief complaint from Plaintiffs is the "patience" that I have had with Defendants' repeated requests for extensions and other discovery issues that arose, (*see* Hearing Tr. at 79-80; Docket No. 185 at 4), but Defendants cannot be sanctioned for my patience any more than Plaintiffs should be "punished" by my patience, (*see* Docket No. 185 at 4).

In their letter requesting a stay on further discovery, Plaintiffs fairly noted their reliance on my previous orders in expending additional attorney hours and costs in preparing the instant motion. (*Id.*) I am not without sympathy for their plight; however, I cannot recommend that default judgment be imposed as a sanction where Plaintiffs have failed to set forth circumstances under which such a harsh sanction would be appropriate. *See Kansas v. Empire City Subway Co. (Ltd.)*, 692 F. Supp. 2d 316, 319-20 (S.D.N.Y. 2010) (denying sanctions against non-compliant party where the party presented a plausible explanation for non-compliance, there was no evidence of bad faith, all parties could have been more diligent in meeting discovery obligations, and no prejudice resulted). Understanding, however, that Defendants' repeated requests and refusals to cooperate without court intervention unnecessarily prolonged discovery and increased Plaintiffs' litigation costs, an award of costs, including attorney's fees, is appropriate. Given the amount of time spent on this and other motions, the cost to Defendants will likely be substantial and should, therefore, serve the deterrent purposes of Rule 37. As such, I respectfully recommend Plaintiffs be awarded attorney's fees and costs associated with the preparation of this Rule 37 motion and the various discovery motions[14] Plaintiffs filed as a result of Defendants' discovery conduct.

---

[14] Costs incurred in connection with the following motions should be awarded: Rule 37 Motion (Docket No. 130); Motion for Discovery Regarding "Attorneys Eye Only" Designation (Docket No. 117); Motions for Discovery (Docket Nos. 71 and 80).

## II.    Non-Production or Suppression of Evidence

Plaintiffs argue not only that general discovery misconduct warrants sanctions, but rather such conduct coupled with the failure to produce certain internet communications and financial documents should result in a default judgment.  Although I understand that Plaintiffs rest their argument on what they see as a combination of smaller discovery misdeeds that together warrant entry of default, Plaintiffs have not satisfied me that Defendants have willfully, or in bad faith, withheld documents in their possession, custody or control.  At the hearing, I urged Plaintiffs to identify what other action might be appropriate to remedy the deficient production, but Plaintiffs chose to limit their request to default judgment—a request which I see as premature given the record Plaintiffs put forth in their papers and at the hearing.

There were no court orders to produce certain documents that were ignored;[15] however, even in the absence of disobedience of specific discovery orders, "a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs."  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002).  Where the alleged breach of a discovery obligation is a failure to produce evidence, the court again has broad discretion in determining what sanction is most appropriate, including Rule 37(b)(2)(A) sanctions, delaying the start of trial to allow the moving party time to review the previously suppressed evidence, or giving an adverse inference instruction.  *Id.* at 107.  However, when the existence of unproduced documents is

---

[15] At the hearing, Plaintiffs argued that I ordered Defendants to produce all internet communications from the time the litigation was filed to the present and that Defendants failed to comply.  (Hearing Tr. at 57-58.)  The Kogan firm—present at the hearing at my request—disagreed with Plaintiffs' recollection of what my orders were.  Kogan asserted that Defendants were not ordered to produce everything at the conclusion of the conference, but that I said everything was discoverable, but that it was a two-way street.  (*Id.* at 59.)  According to Kogan, Plaintiffs have also failed to produce emails or chats from the same time period, which Plaintiffs did not deny at the hearing.  (*Id.*)  At the parties' joint request, the December conference, where these things were discussed, was informal and off-the-record.  Since it appears neither party has produced this category of documents, no sanction should flow from non-production.

not clear, sanctions are generally inappropriate absent "evasive, abusive, [or] false conduct." *Transatlantic Bulk Shipping Ltd. v. Saudi Chartering S.A.*, 112 F.R.D. 185, 188 (S.D.N.Y. 1986) (imposing sanctions when there was reliable circumstantial evidence that unproduced documents existed contrary to the unsubstantiated assertions of counsel).

Plaintiffs identify two categories of documents that Defendants have failed to produce: (1) emails and internet chats (collectively, "e-communications") and (2) financial documents from foreign banks.

### A.    E-communications

Plaintiffs assert that the parties engaged in daily e-communications throughout the course of their business relationships. Despite this daily chatter, Defendants have produced only a small number of chats and no emails between them (Ana and Polina). Plaintiffs, however, have failed to satisfy me, at least at this point, that relevant e-communications exist that have not been produced. At her deposition and the hearing, Ana indicated that upon moving out of the Mikhlyn's home she erased the hard drive of the computer she had used there, and upon which all of the pre-separation e-communications took place. She also said that she made a full back-up before the hard drive was erased.[16]  (Wertheim Decl., Exh. 20 at 235-236.) For her part in production, Polina claims that her personal computers have crashed causing her to lose any of the e-communications that may have existed. (Pl. Mem. at 15.) Plaintiffs argue that her deposition testimony "raise[s] serious doubts about her failure to produce chats and emails." (*Id.*) They argue that she did not establish a clear time line for the computer crash, and that since she apparently salvaged some information, at least some emails and chats should have survived and been produced. (*Id.*)

---

[16]  At the hearing, Ana tried to explain that she copied to the back-up only those files which she needed. (Hearing Tr. at 34-35.) Despite her statements at the hearing, she cannot contradict her deposition testimony in unsworn statements to the Court.

Defendants maintain that they have produced everything in their possession that is responsive. Plaintiffs, in turn, assert that this claim is inherently suspect because Defendants have produced Word and .txt versions of a few, innocuous conversations. (Reply Memorandum in Further Support of Plaintiffs' Motion for Sanctions ("Reply Mem."), dated Sept. 17, 2010, at 10-13.) Plaintiffs argue that the production of these few versions leads to the inference that the native form (.xml) of these conversations still exist (and have not been produced), and that more chats must exist. Plaintiffs similarly argue that the production of some emails and the existence of email accounts from which no emails have been produced leads to the inference that Defendants have other emails in their possession that they are intentionally withholding. (Reply Mem. at 13-16.)

I am not convinced that the inference Plaintiffs advance is supported by the existence of a few non-native format chats and some emails. There have been computer crashes, hard drive erasures, and routine overwriting of files since the parties' course of dealing began. No one disputes that emails and chats existed at some point—the issue is whether they still exist and whether they have not been produced.[17]

At the hearing, I indicated to the parties, particularly Plaintiffs who are now trying to rely on non-expert explanations of data storage and speculation to support a default judgment sanction, that they should have brought in computer experts long ago,[18] especially in light of the importance the parties place on e-communications. The uncertainty surrounding what did and still does exist makes me hesitant to recommend sanctions, especially litigation-ending sanctions, when it seems that further, specific discovery orders may both clarify the issue of who has what, what exists, and whether

---

[17] The parties spent significant time arguing about how, when and where e-communications are saved, though neither party put forth any expert explanation as to the process for storing chats and emails.

[18] Indeed, as discussed at the hearing, I long ago recommended to the parties that they jointly employ a forensic computer expert to examine the various computers to see whether any relevant files remained, and if and when such files were copied or deleted.

anything was inappropriately deleted or not produced. That would also allow all the parties to obtain the information needed to move this case to a resolution on the merits. As I said at the hearing, the nature of the parties' relationship makes the entry of a judgment *on the merits* particularly important. (Hearing Tr. at 46, 56.)

In lieu of entering sanctions for the non-production of e-communications that are not clearly in existence, I recommend that discovery continue in a very limited manner to deal solely with the issues articulated by the parties in this motion. Should limited discovery continue, the parties would be obligated to carry out discovery of the e-communications as outlined at the January 4, 2011 conference. I would further recommend, however, that Plaintiffs be permitted to renew their motion for sanctions if the expert reports reveal that Defendants' computers contain non-produced, relevant e-communications or that Defendants deleted e-communications after the litigation commenced.

### B. Financial Documents

Plaintiffs also allege that financial documents from foreign financial institutions have not been produced. Defendants, however, claim that the requested documents are not in their possession and either do not exist or can only be obtained from the financial institutions at a cost. The status of the missing documentation from foreign institutions is:

(1) One Spanish bank account, with two sub-accounts jointly owned by Polina and Ana. Defendants produced all documentation in their possession; however, the data from 2004 was not available. Defendants have requested the information from the institution, but their requests have been ignored to date. (Def. Mem. at 40.)

(2) Defendants' international credit and debit card accounts. These were combined with the Defendants' checking and savings accounts, as is apparently customary in these foreign institutions. Thus, records of such accounts are part of the checking/savings account records, which Defendants

have produced to the extent such documents were in their possession. For years that were not in their possession, the institutions charge $250 per year for a copy. (*Id.* at 40-41.)

(3) Three Israeli bank accounts. Ana provided documentation from 2006-2009 from her Bank Leumi account. Additionally, Ana and Polina had a joint Bank Hapoalim account and Polina had a personal Discount Bank account; however, Defendants have no statements from these institutions in their possession. Such statements can be obtained, but only for a fee. (*Id.* at 42.)

(4) The United States Benefits Corporation account. Defendants did not receive reports or statements during use of the service, which ended sometime in 2005. U.S. Benefits Corporation has not responded to Defendants' requests for reports or statements. (*Id.* at 42-43.)

As I noted at the hearing, although a party's bank accounts are technically under their control, the documents in question are not in Defendants' immediate possession. (Hearing Tr. at 62.) Generally, each party is responsible for the costs of discovery they seek; there is no reason to depart from that practice here. If Plaintiffs want bank statements that are not in Defendants' possession, and which can only be obtained for a fee, they should have to pay the costs of retrieving those statements. (*Id.*) To the extent that some of these requested documents do not exist, or that the foreign institutions have ignored Defendants' requests, any outstanding documents cannot be said to have been wilfully not produced. It would be inappropriate to sanction a party for non-production of documents that do not exist, or for which the lack of production is despite the non-moving party's best efforts. *See USA Gateway Inc. v. Spring Travel*, No. 03 Civ. 4026, 2004 WL 3030183, at *4 (S.D.N.Y. Dec. 30, 2004) (Although "defendants had a legal right to the bank records, it does not follow that sanctions are appropriate for their failure to secure such records . . . . In the absence of a prior order that retrieval by the responding party is a necessary and effective resolution, sanctions are not warranted.").

Although at the hearing Plaintiffs conceded that requiring Defendants to execute any necessary paperwork to acquire foreign financial documents with Plaintiffs footing the bill for their production was a reasonable solution to obtaining the financial documents, (*see* Hearing Tr. at 62-65), Plaintiffs are now heard to complain that they play a part in obtaining such records, (Docket No. 185 at 3). However, earlier in this litigation, I directed the parties to exchange lists of bank accounts and credit card companies so that the requesting party could subpoena those institutions. (Docket No. 86 at 61-62.) Neither party objected at the time that they would be responsible for obtaining bank records that are arguably under their adversaries' control, though not in their possession. As such, it would be improper to apply a different principle at this stage.

A related concern, however, is the extent to which the unavailability of these documents, or the lengths required to obtain them, was communicated to Plaintiffs. Defendants assert that their attorneys said that Plaintiffs could subpoena the banks if they wanted the documents; Plaintiffs argue that such argument presents a serious shield/sword problem with respect to relying on attorney-client communications, and that in any event, Defendants' former counsel never informed Plaintiffs of these bank fees or other difficulties obtaining these documents. (Reply Mem. at 7-8; Hearing Tr. at 77-78; Docket No. 185 at 3.) Setting aside the attorney-client communications since they do not weigh in my recommendation, Defendants should have been communicating with Plaintiffs about the defenses they raised regarding the production of financial documents long before this sanctions motion was made. To the extent that such failure to communicate resulted, in part, in this motion for sanctions, I recommend the associated costs be awarded as already discussed above, which should serve the deterrent purposes of sanctions.

Therefore, I recommend that no sanctions be awarded for the non-production of financial documents (apart from an award of costs associated with making this motion as previously

discussed), but rather that discovery remain open for the limited purposes discussed herein, including obtaining foreign financial records as discussed at the hearing.[19]

### III. Misconduct of Counsel Imputed to Defendants

Finally in their pro se opposition, Defendants assert that they did not personally have any knowledge of the failure of the Kogan firm to respond to discovery requests or of the consequences of failure to comply with discovery demands. Even if true, that is irrelevant. Clients are liable for the shortcomings of counsel. *Cine Forty-Second St. Theatre v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 n.10 (2d Cir. 1979) ("The acts and omissions of counsel are normally wholly attributable to the client."). Therefore, a party suffers the consequences of counsel's discovery failures whether it be the imposition of costs or detrimental rulings to the parties' claims. *See* FED. R. CIV. P. 37(b)(2)(A) (listing sanctions available for discovery misconduct, all of which result in detriment to the party's claim); FED. R. CIV. P. 37(b)(2)(c) (directing the court to impose costs on "the disobedient party, the attorney advising that party, or both"); *Perez v. Siragusa*, No. 05-CV-4873, 2008 WL 2704402, at *4 (E.D.N.Y. July 3, 2008) ("[S]anctions may be imposed against a party for her counsel's misconduct."). As discussed, however, default judgment would be inappropriate here, especially where lesser sanctions will deter future improper conduct.

---

[19] Plaintiffs also raised an issue of missing Quickbooks files that were not included in the original motion, but were mentioned in Plaintiffs' reply papers. (*See* Reply Mem. at 8-9; Hearing Tr. at 74-75.) Plaintiffs asserted that upon deposing Defendants' accountant they learned that Quickbooks documents did exist (in the accountant's possession), and such things have not been produced. (Reply Mem. at 9; Hearing Tr. at 74-75.) Defendants admitted that if such documents exist, they should be produced and offered to obtain them from Defendants' accountant. (Hearing Tr. 75-76.)

## CONCLUSION

For the reasons discussed above, I respectfully recommend that Plaintiffs' motion for sanctions be granted in part and denied in part. Specifically, I recommend that Plaintiffs' request for default judgment be denied, but that the Court instead award Plaintiffs' costs as outlined above and reopen discovery for the limited purpose of completing party depositions, obtaining hard drive images for expert analysis, and for obtaining foreign financial records—all done in a manner consistent with the discussions that took place at the January 4, 2011 hearing. I also recommend that Plaintiffs be awarded costs and fees associated with the motion for sanctions.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court and the Honorable Allyne R. Ross within fourteen days of receipt hereof. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989).

**Dated: Brooklyn, New York**
     **February 3, 2011**

*Ramon E. Reyes, Jr.*

**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**