**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
VADIM MIKHLYN, INGA MIKHLYN,
and ABC ALL CONSULTING, INC.,

                                Plaintiffs,

           -against-

ANA BOVE, POLINA DOLGINOV,
et al.,

                               Defendants.
-------------------------------------------------------X

<u>NOT FOR</u>
<u>PRINT OR ELECTRONIC</u>
<u>PUBLICATION</u>

<u>REPORT &</u>
<u>RECOMMENDATION</u>

08-CV-03367 (ARR)(RER)

**RAMON E. REYES, JR., U.S.M.J.:**

       Plaintiffs brought this action against defendants for trademark infringement, unfair competition, and related common law claims. Defendants asserted counterclaims against plaintiffs for, *inter alia*, copyright infringement, trademark infringement, cybersquatting, breach of contract, and conversion. Following two years of contentious litigation and multiple discovery disputes, plaintiffs moved for sanctions pursuant to Rule 37 seeking default judgment. On February 3, 2011, I issued a report and recommendation to the Honorable Allyne R. Ross ("First R&R"), recommending that defendants be sanctioned, but that attorneys' fees and costs be awarded in lieu of the requested default judgment.

       The primary purpose of this second report and recommendation regarding plaintiffs' sanctions motion is to address the defendants' assertion that their former counsel alone is responsible for discovery misconduct and to consider the reasonableness of plaintiffs' fee calculation. For reference of the facts underlying discovery that led to sanctions, I refer back to the First R&R. (Dkt. No. 189.)

# I. Procedural History Relevant to the Motion for Reconsideration

Boris Kogan & Associates (the "Kogan Firm") initially represented both individual and corporate defendants in this matter. Due to the nature of the claims and counterclaims, Levisohn Berger LLP ("Levisohn Berger") also served as counsel on intellectual property issues. The Kogan Firm always represented to this Court that it was lead counsel, with Levisohn Berger's representation being limited to intellectual property issues. Shortly before plaintiffs filed the motion for sanctions, the Kogan firm moved to withdraw as counsel. (Dkt. No. 102.)[1] Levisohn Berger also chose to withdraw its representation, rather than serve as substitute lead counsel. (Dkt. No. 106.) Levisohn Berger later re-entered the case in a limited role as counsel for the corporate defendants, who could not proceed pro se. (Dkt. Nos. 173.) However, the individual defendants continue to defend this action, pursue their counterclaims, and defend the motion for sanctions in a pro se capacity.

In the First R&R, I respectfully recommended that plaintiffs' motion be granted in part and denied in part, finding that defendants' discovery misconduct was not so egregious as to warrant a default judgment, but that plaintiffs instead be awarded costs associated with certain discovery motions and the motion for sanctions. In response to the First R&R, pro se defendants filed objections asserting that it was the Kogan Firm who was truly to blame for all the enumerated discovery misdeeds, and arguing that the Kogan Firm alone should be sanctioned and pay plaintiffs' costs.[2] (Dkt. No. 191.) Judge Ross construed the objections as a motion for

---

[1] Boris Kogan did not appear for the withdrawal hearing. He instead sent his associate, David Binson, who had not worked on the case in months. Kogan failed to give Binson any update on the status of the case, other than the firm's reasons for seeking withdrawal. Discussions regarding the Kogan Firm's withdrawal were off-the-record and in camera; however, the Kogan Firm's position generally at the time was that the remaining discovery issues and their withdrawal resulted from the defendants' conduct alone.

[2] In response, though plaintiffs disagreed with some of my factual findings and reasoning, they did not object to my recommendation that attorneys' fees and costs be awarded,

reconsideration and referred the matter back to me. (Dkt. No. 193.) Since then, pro se

defendants and the Kogan Firm have submitted affidavits and other documentary evidence to

clear up the matter of who—client or former attorney—should be held responsible for the

sanctionable conduct. For purposes of the motion for reconsideration, attorney-client privilege

was deemed waived as to communications dealing with discovery.[3] Additionally, in light of

some evidence received during the briefing process, plaintiffs filed a motion for discovery,

requesting that I expand the earlier sanctions recommendation to include the newly discovered

information.[4] (Dkt. No. 223.)

## II.    Both Former Counsel and Defendants Share Fault in Discovery Misconduct

### A.    Clarification of Sanctions Award

First, plaintiffs' motion was not based on one free-standing, egregious act by defendants

or their former counsel. Rather, plaintiffs' motion was predicated on defendants' and their

counsel's persistent pattern of evasive and dilatory behavior throughout the entire course of

discovery, in addition to the failure to produce e-communications and certain financial

documents.

---

rather than default judgment. Rather, plaintiffs argued, *inter alia*, that defendants' latest round of objections was another example of defendants' dilatory tactics.

[3] This waiver was implicit in pro se defendants repeated attempts to use the Kogan Firm as a shield from liability, thus putting directly at issue communications regarding discovery between them and their former attorney. Plaintiff had initially objected to such assertions made in defendants' response to the motion for sanctions as presenting a "sword-shield" problem. In the First R&R, I avoided the "sword-shield" problem noting that Rule 37 allows sanctions against attorneys or their clients, and that clients often suffer the consequences of their attorneys' discovery failings. It seemed prudent to allow defendants to later seek indemnification for the costs they incurred as a result of Kogan's representation, rather than try to determine fault at the time of the First R&R with only pro se defendants' self-serving statements upon which to rely.

[4] In the First R&R, I explained that plaintiffs would be permitted to renew their Rule 37 sanctions motion upon more satisfactory evidence that e-communications were both in existence and improperly withheld. To the extent plaintiffs' application does that, I will consider it as part of the motion for reconsideration.

The non-production of financial documents was found not to be willful based on pro se defendants' representations of earnest yet unsuccessful attempts to obtain the documents from their banks. I found it troubling, however, that issues with production of these documents existed about which defendants knew, yet apparently never communicated to plaintiffs until defending against the motion for sanctions. This went again to plaintiffs' allegations of defendants' and their counsel's pattern of evasive and dilatory conduct during discovery.

Because I was not satisfied that plaintiffs established that e-communications existed but were not produced, I was hesitant to recommend litigation-ending sanctions without further discovery and evidence that defendants had indeed failed to produce such e-communications. Therefore, I recommended discovery be reopened for the limited purpose of imaging the various computer hard drives to explore the alleged missing emails and chats.

Based on the information available at the time of the First R&R, I could not recommend the harshest sanction of default judgment based on failure to produce evidence that was potentially not in existence or not willfully withheld, but found that sanctions were warranted for the "notable, substantial, and recurring" failure to cooperate and communicate with opposing counsel throughout discovery, as well as the resistance and delay in responding to plaintiffs' requests for discoverable material. *Sterling Promotional Corp. v. Gen. Accident Ins. Co. of New York*, 86 Fed. Appx. 441, 443 (2d Cir. 2004) (affirming sanctions of dismissal and attorneys' fees and costs even where the party partially cooperated in discovery); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 113 (2d Cir. 2002) ("District courts should not countenance 'purposeful sluggishness' in discovery on the part of parties or attorneys and should be prepared to impose sanctions when they encounter it.").[5]

---

[5] In addition to the court's power to impose costs pursuant to Rule 37 for violations of discovery orders, the court has inherent power to impose costs and fees "where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sterling Promotional*, 86 Fed. Appx. at 443 n.1 (quotations and citations omitted); *see also Residential Funding*, 306 F.3d at 106-07 ("Even in the absence of a discovery order, a court may impose sanctions on a party for

B.    Partial Reconsideration of Failure to Produce

Although the First R&R explicitly found that plaintiffs failed to show that defendants willfully withheld e-communications, the submissions on this motion to reconsider establish that such documents existed, but were withheld.  I agree with plaintiffs that such newly discovered information should not be ignored in making this second report and recommendation. Accordingly, I have considered plaintiffs' motion and defendants' response.  (Dkt. Nos. 223, 224.)[6]

A document dated February 21, 2010 from Alex Sakirski (president of the corporate defendants) to Kogan ("2/21/10 Letter") references Skype chats not previously produced or mentioned, over 18,000 post-April 2008 emails not produced some allegedly containing "trade secrets," and over 65,000 "documents" between Sakirski, Bove, and Dolginov allegedly all subject to the attorney-client privilege.  (*See* Affirmation in Opposition ("Kogan Aff."), dated Apr. 10, 2011, Exh. 10; Dkt. No. 223.)  This goes a long way to contradict defendants' long-held position that everything they had was produced.  Clearly, as of February 21, 2010, tens of thousands of e-communications were in defendants' possession, known about by counsel, but were never provided to plaintiffs or identified on any privilege log.  More disturbingly, the allegedly privileged communications are not between client and counsel, but rather communications between and among the defendants themselves.  Even assuming some co-defendant/attorney-client privilege exists if discussing case strategy or relaying information from jointly held counsel, it is utterly inconceivable that *every* communication between defendants contained such information.

_____

misconduct in discovery under its inherent power to manage its own affairs.").

[6]  I have not, however, considered the letter defendants filed on July 14, 2011, apparently misapprehending the subject of a last-minute telephone conference before me.  (Dkt. No. 226.) The deadline to reply to plaintiffs' letter was explicit, as were the page limits.  Defendants had their opportunity to respond, and they used it.  Plaintiffs filed no reply.  As such, the attempt to file a "surreply" was wholly inappropriate.

There was some discussion at the sanctions hearing about non-production of "post-dispute" communications—that is, communications after the action was filed in August 2008—which ultimately neither party had produced at the time. Yet, it is difficult to believe that all of the communications are from August 2008 and after, when so little purportedly survived from points prior. Indeed, the category of documents discussed in this document spans the entire "post-divorce" period, which began April 2008. So it is fair to infer that at least some of the documents referenced in the 2/21/10 Letter should have been produced much earlier in this litigation. Additionally, defendants admit that pre-2009 Skype chats were deleted, and thus were not produced. (Memorandum in Response to Affirmation of Boris Kogan, dated April 27, 2011, at 34.) I questioned the existence of non-produced emails and chats at the time of the First R&R, but the recent submissions have convinced me that plaintiffs were correct—defendants have not been forthcoming with this Court and have withheld some e-communications.

Plaintiffs' recent discovery motion implicitly asks me to reconsider the recommendation to impose fees and costs instead of default judgment in light of the new information regarding these non-produced e-communications and the lost Skype chats.[7] As discussed in the First R&R, a range of sanctions are available for failure to produce evidence including fees and costs, further discovery, preclusion of evidence, an adverse inference instruction, or default judgment. *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023, 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am.*

---

[7] Plaintiffs also ask me to consider an insufficient response to a subpoena duces tecum issued to Tradeindicator, Inc. ("Tradeindicator"). Sakirski happens to be the president of Tradeindicator; however, neither he, nor Tradeindicator are parties to *this* litigation. Sakirski's involvement here is in his role as officer of the corporate defendants, and the subpoena in question does not relate to his duties as officer of the corporate defendants. Rule 45(e) provides the only authority to impose sanctions against a nonparty for failure to comply with a subpoena duces tecum. *Dunkin' Donuts Franchised Rest. LLC v. Grand Cent. Donuts, Inc.*, No. 07-CV-4027, 2009 WL 973363, at *3 (E.D.N.Y. Apr. 9, 2009). It would be inappropriate to find the individual or corporate defendants at fault for the failure of a nonparty, Tradeindicator, to comply with a subpoena.

*Sec.*, 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010) (enumerating available sanctions for spoliation). Sanctions should: (1) deter future misconduct, (2) ensure that the sanctioned party does not benefit by their misdeeds, and (3) restore the prejudiced party to the same position but for the misconduct. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999); *Update Art, Inc. v. Modiin Publ'g Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988). Accordingly, "the appropriate sanction [must be] based on the relative fault of the party against whom sanctions are sought and the prejudice suffered by the party seeking sanctions." *Klezmer v. Buynak*, 227 F.R.D. 43, 51 (E.D.N.Y. 2005).

As to the chats and emails referenced in the 2/21/10 Letter, plaintiffs are easily put in the position they would be in but for the failure to produce—by compelling production. To the extent that the documents referenced in the 2/21/10 Letter have been requested and not yet produced, defendants represent that Bove has gone through most of the chats and emails for privilege and will be able to produce them in the near future. (Dkt. No. 224.) Therefore, defendants have one month from this R&R to produce them subject to a privilege log.[8] Also, I have already recommended that plaintiffs be awarded attorneys' fees and costs associated with their sanctions motion, which included complaints of non-production of chats and emails, thus remedying any burden placed on plaintiffs in litigating these issues and contemporaneously serving as a deterrent for future misconduct.

As to the pre-2009 Skype chats, these were admittedly lost as a result of defendants' actions during the pendency of this action in direct violation of their duty to preserve.[9]

_____

[8] A separate electronic discovery order to this effect shall be issued.

[9] To award sanctions for spoliation, the court must find: (1) the spoliating party had an obligation to preserve the documents, (2) the spoliating party destroyed the documents with a "culpable" state of mind, and (3) the destroyed evidence was relevant to the moving party's claims. *Zubulake v. UBS Warburg L.L.C.*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004). In the Second Circuit, negligence has been found to be a sufficiently culpable state of mind to warrant the imposition of sanctions. *Toussie v. Cnty. of Suffolk*, No. 01-CV-6716, 2007 WL 4565160, at *7 (E.D.N.Y. Dec. 21, 2007). However, to impose harsher sanctions, such as an adverse inference

Defendants' claim that the loss was inadvertent—based on the need to reinstall Skype to prevent network failures, and the mistaken belief that chats would be saved on a Skype server. Accepting this explanation, the loss of these chats was at least negligent. Defendants do not deny knowledge of the duty to preserve such information, and in fact state their belief at the time that the information would have been preserved elsewhere. The unavailability of Skype chats on a Skype server would have been easily verifiable had defendants bothered to check before reinstalling the program on both Bove and Polina's computers, which were both subject of hot debate in the original sanctions motion and earlier motions to compel.

However, even now, plaintiffs have not proffered any proof that Skype chats would have been unfavorable to defendants (or inversely, favorable to plaintiffs). Accordingly, the harsh sanction of a default judgment would be inappropriate. *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 291-92 (S.D.N.Y. 2009) (finding at least negligence in failure to preserve documents, but denying adverse inference instruction where moving party offered no extrinsic evidence that the lost documents were unfavorable to spoliating party); *Toussie*, 2007 WL 4565160, at *9 (denying request for default judgment or adverse inference where moving party failed to demonstrate that deleted emails were favorable to its case). Thus, a lesser sanction, as previously recommended, is warranted. The award of costs, including attorneys'

---

or default judgment, the court must find not only that the evidence was relevant, but that it would have been favorable to the moving party (or conversely, unfavorable to the spoliating party). *Zimmerman v. Poly Prep Country Day School*, No. 09-CV-4586, 2011 WL 1429221, at *24 (E.D.N.Y. Apr. 13, 2011). A finding of gross negligence or intent may be enough in some circumstances to warrant an inference that evidence would have been unfavorable to the spoliating party. *Residential Funding*, 306 F.3d at 109. Otherwise, the moving party must provide some evidence from which the court can infer that the evidence would have been favorable to its case. *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 122 (S.D.N.Y. 2008). Where, however, the court finds negligent spoliation in the absence of sufficient proof that the missing documents would have been favorable to the moving party's case, lesser sanctions may be appropriate. *E.g.*, *id.* (shifting cost for further discovery as sanction for negligent spoliation); *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 77 (S.D.N.Y. 1991) (awarding fees and costs in absence of proof that destroyed documents were favorable to moving party).

fees, will serve "to punish the offending part[ies] for [their] actions" and to deter future misconduct. *In re WRT Energy Sec. Litig.*, 246 F.R.D. 185, 201 (S.D.N.Y. 2007). Furthermore, as noted in the First R&R, such an award serves the remedial purpose of compensating the plaintiffs for the reasonable costs incurred in bringing the original motion for sanctions. *Green*, 262 F.R.D. at 292 (awarding fees and costs for spoliation); *Turner*, 142 F.R.D. at 77-78 (same).

The additional information that has come to light during the pendency of the motion for reconsideration serves as further evidence that defendants and former counsel should be sanctioned for myriad discovery violations, including the destruction and withholding of electronic documents. As explained in the First R&R and herein, the appropriate sanction is attorneys' fees and costs. Accordingly, I decline to alter the recommendation that plaintiffs' request for default judgment be denied. The remaining issue is who—counsel or client—was responsible for the excessive delays in production, non-communication, and non-production of the aforementioned e-communications.

C.    Defendants Contributed to the Discovery Misconduct

Defendants' argument is essentially that they gave the Kogan Firm everything for which it asked, and that if things were not produced it was solely the fault of the Kogan Firm for withholding them.[10] Therefore, they argue only Kogan should be liable for sanctions. Defendants, however, cannot feign ignorance of the discovery process in the face of emails and other documents directly to the contrary. The Kogan Firm submitted various emails and documents that establish that defendants were deeply involved in the discovery process, and are to blame for much of the non-production and delay.

---

[10] Pro se defendants also make much of the last two discovery extensions that they neither asked for, nor knew about. But they were not sanctioned for discovery extensions that were timely requested and granted; costs associated with opposing those requests were not included in the award. As I explained in the First R&R, they cannot be sanctioned for my patience. Also, defendants' allegations that the Kogan Firm made inappropriate demands for payment have little or no bearing on the issue before me, and will not be entertained.

For example, in a document prepared by Sakirski, defendants detail the items plaintiffs claimed were missing from production, and give Bove's responses to those missing items. (Kogan Aff., Exh. 12.)  More troubling however, defendants have continually argued that all e-communications they had were timely produced when the Kogan Firm asked for them.  Yet, as discussed above, it is clear from the 2/21/10 Letter that defendants withheld thousands of Skype chats, emails, and communications between them.  (*See* Kogan Aff., Exh. 10.)  Defendants also admit to destroying Skype chats during the pendency of the litigation.  Defendants were well aware of the production problems which plaintiffs continued to raise with this Court, and in fact withheld e-communications that were the subject of the sanctions motion, never once acknowledging their existence to plaintiffs or to the Court.

Levisohn Berger comes to defendants' aid arguing that the Kogan Firm never made clear to the defendants that sanctions could be awarded against them *personally*.  Defendants also assert that they did not know they could be sanctioned for discovery misconduct.  Contrary to Levisohn Berger's and the defendants' claims, the Kogan Firm insists that at some point during discovery, Kogan showed defendants a case in which the court awarded sanctions of both default judgment and costs for discovery violations.

Setting this aside, costs may be awarded against the offending party, counsel, or both unless justice requires otherwise.  Even if defendants were not aware of the consequences during Kogan's representation, it does not excuse their misconduct.  Nor does it lessen the burden on plaintiffs who incurred substantial legal fees trying to get defendants to cooperate, and ultimately had to bring the Rule 37 motion for discovery abuses.  Moreover, defendants were given ample notice as to the factual and legal basis of plaintiffs' motion for sanctions, and the opportunity to defend against those claims prior to my recommendation that sanctions be imposed.  *See Sterling Promotional*, 86 Fed. Appx. at 445 (rejecting party's argument that it was unaware of the possibility of monetary sanctions because Rule 37 specifically contemplates monetary sanctions);

*Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir.1999) ("Due process requires that a party be put on notice and an opportunity to be heard before imposing" sanctions.).

Although the Kogan Firm's submissions satisfy me that the defendants were not merely innocent bystanders in discovery as they contend, the submissions do not satisfy me that defendants alone should shoulder the burden.

### D.    The Kogan Firm Participated in the Discovery Misconduct

The Kogan Firm cannot claim that it played no part in the sanctionable conduct. As explained above, plaintiffs' motion for sanctions was not limited to a single event, but rather a pattern of evasive discovery behavior and abuses including failure to respond to communications of opposing counsel, failure to timely respond to discovery requests, resistance to required production, and (as recognized above) failure to produce emails and chats. Between pro se defendants and counsel, the Kogan Firm unquestionably bears the responsibility for the breakdown in communication with plaintiffs' counsel that occurred regularly throughout discovery, necessitating multiple conferences before me.

The Kogan Firm's failure to communicate and respond to plaintiffs led directly to the multiple requests for court intervention. As plaintiffs' note, I had cautioned all parties that they were to communicate with one another and work out discovery issues before coming to the Court. The Kogan Firm, not the individual and corporate defendants, violated that order. Kogan argues that his firm cannot be sanctioned since there were good faith objections to producing certain documents that were the subject of each dispute. Yet, Kogan ignores the fact that the Firm's unresponsiveness led to court intervention in each instance.[11] The profound and

---

[11]    With the discovery motion filed May 11, 2009, plaintiffs' counsel submitted three letters to which Kogan failed to respond dated April 22, April 29, and May 5. (Dkt. No. 71.) Notably, instead of explaining his failure to respond, Kogan accused plaintiffs of being unresponsive. (Dkt. No. 72.) The communications he submitted, however, did not support his allegations. As proof, he submitted a letter dated April 17, to which plaintiffs directly responded

continued lack of communication throughout discovery, in violation of the Rule 37 mandate to confer prior to raising issues with the court and my direction to the parties to talk (instead of just writing back and forth), hindered the progress of this case tremendously.

The Kogan Firm further claims that it should bear no responsibility for the final motion to remove the blanket "attorneys eyes only" designation. The Kogan Firm says it was pro se defendants' designation to remove. But by Kogan's own admission, he was holding onto these documents at the time of the withdrawal hearing. (Kogan Aff. ¶ 38.) Accepting his contention that the same documents were produced to him by his then clients with the blanket designation, then at the time of the withdrawal hearing, he knew that the documents had an improper blanket designation. Yet, Kogan sent his associate to the hearing without flagging any discovery issues, and did not raise the issue with the Court or alert the plaintiffs to this obvious problem before production.

A condition of the Kogan Firm's withdrawal was turning over the outstanding discovery in his possession. (Transcript of May 11, 2010 Conference at 8.) He failed to do so in a timely manner, he failed to alert plaintiffs to the cause of the delay, and he failed to alert the Court as to any potential problem with production by the court-ordered date. Even assuming the individual and corporate defendants were solely responsible for the improper blanket designation when they turned the documents over to the Kogan Firm, the firm had an independent duty to, at the very

---

in their letter dated April 22. One of the emails Kogan submitted, which was from plaintiffs' counsel to Kogan, actually highlighted the Kogan Firm's unresponsiveness. (*See* Dkt. No. 72-4.) In the discovery motion filed August 11, 2009, plaintiffs' counsel accused Kogan of not returning phone calls to discuss outstanding discovery issues. (Dkt. No. 80.) At the hearing that followed, plaintiffs' counsel again raised Kogan's failure to return phone calls as a chief problem in resolving discovery disputes without motion practice. (Transcript of Sept. 9, 2009 Conference at 5-6, 53, 56, 68, 69-70.) Kogan again never denied that he failed to return phone calls. Finally, although not subject of the recommended sanctions, at the November 2, 2009 conference, plaintiffs' counsel complained that the only person at the Kogan Firm who ever communicated with them was Kogan's law clerk—neither Kogan nor his associate would respond. (Transcript of Nov. 2, 2009 Conference at 44-45.) As a direct consequence, plaintiffs found themselves answering for discovery issues that they were not aware of until the conference before me.

least, make the Court and plaintiffs aware of the problem before belatedly dumping the documents, particularly where production was a condition of the Kogan Firm's withdrawal and I previously ruled that blanket designations were improper.

Finally, as to the general problems with production, the emails and documents submitted establish that the defendants played an integral role in the course of discovery, but that does not diminish the Kogan Firm's role. Kogan admits that perhaps he could have done more to gain the cooperation of his "recalcitrant" clients, and I agree.

      E.     <u>Levisohn Berger Should Not Be Sanctioned</u>

In its Reply, the Kogan Firm also made allegations against Levisohn Berger. Levisohn Berger's role during Kogan's representation was limited to consulting on intellectual property issues, and it was clear to me that the Kogan Firm was responsible for discovery. Arguments that Levisohn Berger somehow bore any fault for the ongoing discovery misconduct are unfounded.

As proof that Levisohn Berger is to blame for the discovery delays and misconduct, Kogan asserts that Levisohn Berger spent as much, if not more time, dealing with defendants (because defendants owed Levisohn Berger more money), participated in early motion practice pertaining to intellectual property issues, provided samples of protective orders and simultaneous exchange agreements, prepped defendants for depositions and handled one discovery conference.[12]  None of these allegations establishes that Levisohn Berger was at fault for discovery abuses and unwarranted delays referenced in the First R&R.

Kogan also asserts that Levisohn Berger was aware of the contentious nature of

---

[12]  The discovery dispute that led to the November 2, 2009 conference that Kogan asserts was handled by Levisohn Berger was not included in the sanctions award, but frankly Kogan's assertion that Levisohn Berger handled the entire conference is questionable. Although my memory is not perfect, Levisohn Berger provided an email from the Kogan Firm's law clerk that confirms that the court transcriber mistakenly attributed Kogan's statements to Tuvia Rotberg. (Declaration of Tuvia Rotberg, dated June 14, 2011, Exh. C.)  Moreover, statements explaining a law clerk's role at the Kogan Firm are attributed to Rotberg, which makes no sense in the context of the discussion  (Transcript of Nov. 2, 2009 Conference at 46.)

discovery. Indeed, Levisohn Berger admits as much. It appears that at some point Levisohn Berger tried to intervene to improve communication between plaintiffs' counsel and the Kogan Firm. (Declaration of Jonathan Berger in Reply, dated June 16, 2011, ¶¶ 5-8, Exhs. A, C.) But unsuccessful attempts to smooth over relations do not put Levisohn Berger at fault for discovery misconduct. As such, I recommend that Levisohn Berger share no part in the award of attorneys' fees and costs.

*    *    *

Having viewed and weighed the voluminous materials, communications, and allegations of both defendants and the Kogan Firm, I find that both are responsible for the sanctionable conduct. In the usual case, defendants and counsel would be found jointly and severally liable, and the inquiry would end there. *E.g.*, *Miller v. Midpoint Resolution Grp. LLC*, No. 08-CV-3791, 2009 WL 2001329, at *1 (E.D.N.Y. July 7, 2009) (holding counsel and litigant jointly and severally liable for attorneys' fees and costs); *Alvarado v. Manhattan Worker Career Ctr.*, No. 01 Civ. 9288, 2003 WL 194203, at *3 (S.D.N.Y. Jan. 28, 2003) (holding counsel and litigant jointly and severally liable finding both were involved in the discovery misconduct); *New Pacific Overseas Grp. (USA) Inc. v. Excal Int'l Dev. Corp.*, Nos. 99 Civ. 2436 & 99 Civ. 3581, 2000 WL 377513, at *10 (S.D.N.Y. Apr. 12, 2000) (same). However, I recognize the difficulty posed to this or another Court to parse fault between the Kogan Firm and defendants after plaintiffs have collected their fees from one or the other—not to mention that the same evidence and finger pointing is bound to be at issue. Therefore, it seems prudent to apportion fault now.

It is unquestionably difficult to ascertain from plaintiffs' billing records how much time was spent on each issue raised in their sanctions motion, and thus equally difficult to apportion fees and costs accordingly. However, certain aspects of the discovery misconduct are attributable directly to the Kogan Firm. As discussed above, the firm bears the brunt of responsibility for the communication issues that led to court intervention numerous times, and of which plaintiffs

continually complained.  I respectfully recommend that the Kogan Firm be responsible for the fees associated with the discovery motions referenced in the First R&R.  *See infra* Appendix A (Tables 1-3).  Defendants, on the other hand, bear primary responsibility for the withheld and destroyed e-communications discussed herein and much of the evasive discovery behavior overall.  Accordingly, I recommend defendants be found liable for the remaining fees and costs associated with the sanctions award.  *See infra id.* (Table 4).

### III.   Reasonableness of Plaintiffs' Fee Calculation

Plaintiffs submitted their fee calculation for the recommended sanctions award, seeking a total of $52,455.94.  To determine the reasonableness of fees sought, the court starts by determining a reasonable rate and multiplying that by a reasonable number of hours expended. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of Elections*, 522 F.3d 182, 186 (2d Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  A reasonable hourly rate is determined by looking at the prevailing hourly rates in the district, and the court may take into account other case-specific factors such as the complexity of the factual and legal issues presented, counsel's experience, and rates charged in similar cases. *Id.* at 187-90.  The court should also review the contemporaneous billing records submitted with the application, and exclude any excessive, redundant, or otherwise inappropriate entries. *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

The firm charged plaintiffs $420 per hour for work performed by Val Mandel, $340 per hour for work performed by Eric Wertheim, an attorney with 25 years of commercial litigation experience, $300 per hour for work performed by Daniel Akselrod, an attorney with 5 years of experience, and $120 per hour for paralegal work.[13]  The rates charged by plaintiffs' firm are slightly higher than those routinely awarded in the Eastern District.  *See, e.g.*, *Eu Yu Sang Int'l*

---

[13]  Although not specified in counsel's affidavit, the billing records reflect that $420 per hour was charged for work by "VM."  Presumably, this is Val Mandel.  Similarly not specified are hours charged for work by "PAR."  Presumably, this is for hours billed by paralegals.

*Ltd. v. S & M Enter. (U.S.A.) Enter. Corp.*, No. 09-CV-4235, 2010 WL 3824129, at *7 (E.D.N.Y. Sept. 8, 2010), *adopted by* 2010 WL 3806136 (noting that "hourly rates for attorneys have [normally] ranged from $200 to $350 an hour for partners, $200 to $250 for senior associates, $100 to $150 an hour for junior associates, and $70 to $80 for legal assistants").

Although generally courts look to the rates in the district where they sit, hourly rates approved by the Southern District of New York are sometimes used "as a basis for comparison" in the Eastern District of New York. *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 120 (E.D.N.Y. 2010). Rates closer to that which plaintiffs' firm charges have been approved in a few cases in this District, and higher rates have been approved in the Southern District. *E.g.*, *Unilever Supply Chain, Inc. v. I & I Wholesale Food Inc.*, No. 10–CV–1077, 2011 WL 1113491, at *8 (E.D.N.Y. Feb. 17, 2011), *adopted by* 2011 WL 1099841 (approving rates up to $440 for partner and special counsel and $80-100 for paralegal work); *Lyons P'ship*, 702 F. Supp. 2d at 121 (approving rates up to $440 for a partner "who has been litigating intellectual property cases for almost 2 decades"); *Rahman v. The Smith & Wollensky Rest. Grp., Inc.*, No. 06 Civ. 6198, 2009 WL 72441, at *9 (S.D.N.Y. Jan. 7, 2009) (approving rates between $350 and $440 for senior counsel with 10 to 20 years of experience and $160 for paralegal services). Given the complexity of the sanctions motion, counsel's experience, and the fact that no objection was made to the rates, I find that they are reasonable.

Work on the various motions was done almost exclusively by Wertheim (79.3 hours) and Akselrod (83 hours). Indeed, the vast majority of that time was spent on the sanctions motion itself (68.3 hours by Wertheim and 74.7 hours by Akselrod). Careful review of the billing records, however, reveals that plaintiffs included in their calculations time spent defending against defendants' discovery motions (Dkt. No. 145), which although briefed during the same general time period were not part of the sanctions motion. This time was excluded from my calculations. Otherwise, given the voluminous materials in the record plaintiffs had to wade

through to make this motion and the length of their submissions and those of pro se defendants, I find the total number of hours expended reasonable—72.2 hours by Wertheim, 76.9 by Akselrod, 1.7 by Mandel, and 1.1 paralegal hours, for a total of $48,464.00 in attorneys' fees.

Plaintiffs also seek $292.18 in costs and disbursements. Although I see no issue with the types of costs and disbursements for which plaintiffs seek reimbursement (consisting mostly of postage, printing, and other charges usually subsumed by the client in the course of normal business), I calculate the billing entries for costs as totaling $236.52. I cannot ascertain the source of the discrepancy, but I can only recommend those costs I see reflected in the billing records. Accordingly, I find that $48,700.52 is a reasonable amount of attorneys' fees and costs in bringing the sanctions and related motions, and respectfully recommend plaintiffs be awarded this amount.[14] *See infra* Appendix A for Tables of Fees and Costs.

## CONCLUSION

For all of the foregoing reasons, defendants' motion to reconsider the First R&R is granted in part. Instead of finding defendants solely liable for discovery misconduct, I respectfully recommend that both defendants and the Kogan Firm be held liable for the previously recommended award of sanctions in the form of attorneys' fees and costs, apportioned as discussed *supra*. I further recommend that plaintiffs be awarded reasonable fees and costs in the amount of $48,700.52.

Any objections to this Report and Recommendation must be filed with the Clerk of the

---

[14] I recognize that this figure seems quite high. However, it is not unprecedented. In a recent Southern District of New York case, the court awarded a total of $80,230.44 in attorneys' fees and costs to a party for successfully defending against a motion for sanctions, as well as the related objections, subsequent motion for reconsideration, and preparation of the fee application. *Rahman*, 2009 WL 72441, at *9. The court reasoned that the nature of the motion and the extensive discovery history required the attorneys to spend significant hours on factual development; in fact, a total of over 100 attorney hours were spent solely on opposition to the motion, comprising nearly half of the total fee award. *Id.* at *7, 9. Here too, the extensive record, nature of plaintiffs' motion, and nature of pro se defendants' opposition required significant time for factual development.

Court and the Honorable Allyne R. Ross within fourteen days of receipt hereof.  Failure to file

timely objections may waive the right to appeal the District Court's Order.  *See* 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.

1989).  Counsel for corporate defendants is ordered to serve a copy of this R&R on the Kogan

Firm and pro se defendants.

Dated: August 3, 2011
      Brooklyn, New York


                     *Ramon E. Reyes Jr.*

                  **Ramon E. Reyes, Jr.**
                  **United States Magistrate Judge**

**APPENDIX A**

| Table 1 - Discovery Motion (Dkt. 71) | | | |
|---|---|---|---|
| Attorney | # of Hrs | Rate | Total |
| Wertheim | 6.4 | $340.00 | $2,176.00 |
| Akselrod | 5.4 | $300.00 | $1,620.00 |
| Mandel | 0.3 | $420.00 | $126.00 |
| Total | | | $3,922.00 |

| Table 2 - Discovery Motion (Dkt. 80) | | | |
|---|---|---|---|
| Attorney | # of Hrs | Rate | Total |
| Wertheim | 4.6 | $340.00 | $1,564.00 |
| Akselrod | 2.9 | $300.00 | $870.00 |
| Mandel | 0.3 | $420.00 | $126.00 |
| Costs | | $0.44 | $0.44 |
| Total | | | $2,560.44 |

| Table 3 - Discovery Motion (Dkt. 117) | | | |
|---|---|---|---|
| Attorney | # of Hours | Rate | Total |
| Wertheim | .1 | $340.00 | $34.00 |
| Akselrod | .5 | $300.00 | $150.00 |
| Total | | | $184.00 |

| Table 4 - Sanctions Motion (Dkt. 130) | | | |
|---|---|---|---|
| Attorney | # of Hours | Rate | Total |
| Wertheim | 61.1 | $340.00 | $20,774.00 |
| Akselrod | 68.1 | $300.00 | $20,430.00 |
| Mandel | 1.1 | $420.00 | $462.00 |
| Paralegal | 1.1 | $120.00 | $132.00 |
| Costs | | $236.08 | $236.08 |
| Total | | | $42,034.08 |